1  MICHELE M. DESOER (SBN 119667)
      mdesoer@zuberlaw.com
2  JEFFREY J. ZUBER (SBN 220830)
      jzuber@zuberlaw.com
3  A. JAMES BOYAJIAN (SBN 275180)
      aboyajian@zuberlaw.com
4  **ZUBER LAWLER & DEL DUCA LLP**
   777 S. Figueroa Street, 37th Floor
5  Los Angeles, California 90017
   Telephone:  (213) 596-5620
6  Facsimile:   (213) 596-5621

7  Attorneys for Plaintiff and
   Counterclaim-Defendant Leadership Studies, Inc.

8

9  **UNITED STATES DISTRICT COURT**

10  **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  LEADERSHIP STUDIES, INC., dba CENTER FOR LEADERSHIP STUDIES, a California corporation, | CASE NO. 15cv1831 WQH/KSC |
| 13 | **THIRD AMENDED COMPLAINT FOR:** |
| 14  Plaintiff, | **1. BREACH OF WRITTEN CONTRACT;** |
| 15  v. | **2. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| 16  BLANCHARD TRAINING AND DEVELOPMENT, INC., a California corporation, and Does 1-10, inclusive, | **3. TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT, § 43(A), 15 U.S.C.A. § 1125(A);** |
| 17 | |
| 18  Defendants. | **4. TRADEMARK INFRINGEMENT VIA REVERSE CONFUSION UNDER THE LANHAM ACT § 43(A), 15 U.S.C.A. § 1125(A);** |
| 19 | |
| 20 | **5. FRAUD IN OBTAINING REGISTERED MARKS UNDER 15 U.S.C. §§ 1064(3) AND 1119)** |
| 21  BLANCHARD TRAINING AND DEVELOPMENT, INCORPORATED, | |
| 22  Counterclaim-Plaintiff, | **6. UNFAIR COMPETITION;** |
| 23  v. | **7. COPYRIGHT INFRINGEMENT;** |
| 24  LEADERSHIP STUDIES, INC., | **8. ACCOUNTING; and** |
| 25  Counterclaim-Defendant. | **9. DECLARATORY RELIEF** |
| 26 | **DEMAND FOR JURY TRIAL** |
| 27 | Trial Date:          None Set |

28

**COMES NOW PLAINTIFF**, Leadership Studies, Inc., and for its causes of action alleges as follows:

**PARTIES**

1. Plaintiff Leadership Studies, Inc., dba Center for Leadership Studies ("Leadership Studies" or "Plaintiff") is a corporation organized and existing under the laws of the State of California and doing business and having offices in Cary, North Carolina. Leadership Studies is engaged in the business of teaching and promoting the "Situational Leadership Model," which enables managers, salespeople, peer leaders, teachers, and parents to interface with and influence others more effectively. Leadership Studies conducts workshops and certification processes with its customers, who use its unique curriculum to guide the customers onto the path of becoming more effective leaders.

2. Defendant Blanchard Training and Development, Inc. ("Blanchard") is a corporation organized and existing under the laws of California and doing business and having offices in Escondido, California. Blanchard is engaged in the business of leadership training, which includes development and implementation of leadership training models for businesses that wish to increase productivity and efficiency among their workforces. Blanchard provides training seminars and reading material both on-site and online to its customers.

3. Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Blanchard, in doing the things complained of herein, was acting within the course and scope of such business practices. All acts and omissions alleged to have been done by Blanchard were done by employees, directors, or managers on behalf of Blanchard either at its direction or within the scope of the individuals' actual or apparent authority on behalf of Blanchard.

4. Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 10, inclusive, or any of them, and therefore sues these defendants, and each of them, by

such fictitious names. Plaintiff will seek leave to amend this Complaint when the identities of these defendants are ascertained. (Blanchard and Does 1-10 collectively "Defendants" or each "Defendant.")

5. Plaintiff is informed and believes, and on that basis alleges, that each Defendant conspired and acted in concert with each other to commit the wrongs alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other. Plaintiff is further informed and believes, and on that basis alleges, that in doing the things alleged in this Complaint, each Defendant was acting within the scope of authority conferred upon that Defendant by the consent, approval, and/or ratification of other Defendants, whether said authority was actual or apparent.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter under 28 U.S.C. Section 1331 because two of the claims asserted herein arise under Federal law, the Lanham Act, § 32(1)(a), 15 U.S.C.A. § 1114(1)(a)) and the U.S. Copyright Act, 17 U.S.C.A. §§ 501, *et seq.* This Court has supplemental jurisdiction over the balance of Plaintiff's claims under 28 U.S.C. § 1367 because the other causes of action in the instant complaint are so related to claims over which this Court has original jurisdiction that they form part of the same case or controversy.

7. Venue is proper in this Court because Defendant Blanchard maintains offices, and does business, in Escondido, California, which lies within the Southern District of California. 28 U.S.C. §1391(b)(1).

## GENERAL BACKGROUND

8. The founder of Leadership Studies, Paul Hersey, developed a theory concerning a methodology for leaders to influence others based on their readiness for a particular task. He named the model "Situational Leadership."

9. Ken Blanchard worked with Dr. Hersey as Dr. Hersey developed his theory.

Case 3:15-cv-01831-WQH-KSC Document 43-1 Filed 08/29/16 Page 5 of 41

10. Dr. Blanchard became a partner in Dr. Hersey's company, Center for Leadership Studies.

11. In 1980 Dr. Blanchard sold his interest in Center for Leadership Studies and he was paid thirty thousand dollars ($30,000.00) incrementally through 1981 for his interest in the company.

12. In conjunction with the sale of his interest in Center for Leadership Studies, Dr. Blanchard released any and all rights he had in any materials copyrighted by Center for Leadership Studies including those in which he had any role in preparing.

13. In 1982, Blanchard also assigned to Center for Leadership Studies its interest in then-pending a trademark application before the United States Patent and Trademark Office for the mark "Situational Leadership," including "all right, title and interest in and to said mark, together with the good will of the business symbolized by the mark," bearing serial number 73283537.

14. When Dr. Blanchard decided he wanted to branch out on his own and provide management training through his company, Blanchard, he wanted to use the concepts that he had worked on with Dr. Hersey, and Dr. Hersey agreed to license the right to use the mark "SITUATIONAL LEADERSHIP" with the understanding that Dr. Blanchard's use of the Mark would inure to the benefit of Dr. Hersey's company, Leadership Studies.

15. Accordingly, Leadership Studies and Blanchard entered into a license agreement (the "License Agreement") on or about December 19, 1987, pursuant to which Leadership Studies licensed to Blanchard the right to use Leadership Studies' trademark "SITUATIONAL LEADERSHIP" under the condition that "(1) BLANCHARD shall utilize the mark 'SITUATIONAL LEADERSHIP' only in association with goods and services which meet or exceed a level of quality exemplified by the goods and services presently offered under the mark 'SITUATIONAL LEADERSHIP' . . . ."

16.     In the License Agreement, Blanchard acknowledges Leadership Studies' ownership of the "Situational Leadership®" trademark (the "Mark"). Blanchard further agrees to the additional condition that "In utilizing the mark 'SITUATIONAL LEADERSHIP', BLANCHARD shall at all times use the appropriate statutory notice symbol in conjunction therewith[,]"; with the symbol "®" designated by handwritten note as the requisite "notice symbol."

17.     Blanchard also agrees "to cooperate with Leadership Studies in gathering material on sales, volume, and distribution of 'Situational Leadership' materials to support renewed applications by Leadership Studies for the mark based on distinctiveness acquired by continuous and exclusive use in commerce."

18.     Accordingly, pursuant to the License Agreement, any goodwill created or maintained in the Mark is intended to inure to the benefit of Leadership Studies.

19.     The License Agreement also requires that "BLANCHARD shall inform LEADERSHIP STUDIES of any infringement of the [Mark]."

20.     The License Agreement does not grant Blanchard rights to assign or sublicense the Mark, other than in conjunction with the sale of Blanchard's entire business, in which case Blanchard is required to offer Leadership Studies a right of first refusal.

21.     The Mark "Situational Leadership®" is the subject of a valid trademark registration by Leadership Studies with the U.S. Patent and Trademark Office (Registration No. 3,407,887) for educational kits for improving management skills and employee productivity, primarily composed of training manuals, video tapes, pamphlets, and a board game used as an experience simulator, and for educational services, namely, conducting seminars in the field of management skills. The Mark has been registered by Leadership Studies since April 8, 2008 and is incontestable.

22.     The Mark "Situational Leadership®" also is the subject of a valid trademark registration by Leadership Studies with the U.S. Patent and Trademark Office (Registration No. 4,222,028) for audio and video recordings featuring

educational material in the field of leadership skills and employee productivity, printed educational materials in the field of leadership skills and employee productivity, and educational services, namely, conducting seminars, workshops and online courses in the field of leadership skills and employee productivity. The Mark has been thus registered by Leadership Studies since October 9, 2012.

23.   The Mark has also gained a secondary meaning as referring to a product through which Leadership Studies, and its licensee, Blanchard, provide training materials and seminars in the manner described in Paragraphs 1 and 2, above, respectively. Both Leadership Studies and Blanchard market and sell their products globally.

### MISAPPROPRIATION OF GOODWILL IN THE MARK

24.   Over the years, Blanchard has attempted multiple times to convince Leadership Studies to enter into an agreement whereby the Mark would become jointly owned by Leadership Studies and Blanchard.

25.   Leadership Studies has consistently rebuffed these approaches.

26.   Subsequent to entering into the License Agreement, Blanchard began marketing its product under the name "Situational Leadership® II" (the "Derivative Mark"). Historically, Blanchard has maintained, until recently, that Blanchard uses the Derivative Mark pursuant to its rights under the License Agreement.

27.   In response to Leadership Studies' refusal to relinquish sole ownership of the Mark, and in the face of the plain language in the License Agreement, Blanchard has taken purposeful actions to profit from and shift goodwill in the Mark from Leadership Studies to Blanchard.

28.   In or about August, 2006, Leadership Studies learned that Blanchard had registered the mark "Situational Leadership II" in English in China. Leadership Studies had already registered the mark "Situational Leadership" in Chinese in China. Blanchard had not provided Leadership Studies with notice of its intention to register the Derivative Mark in China, and did so without Leadership Studies'

consent.

29.     To avoid costly litigation, Leadership Studies and Blanchard entered into an agreement pertaining to the use of the Mark solely in China whereby Leadership Studies licensed Blanchard to use the mark "Situational Leadership" in Chinese in China, and Blanchard licensed Leadership Studies the right to use "Situational Leadership" in English in China.

30.     In 2008, in renewed efforts to establish joint ownership of the Mark worldwide, Blanchard proposed that Leadership Studies assign the Mark to a company to be owned jointly by Blanchard and Leadership Studies.  Blanchard's ostensible purpose for this was to facilitate registering the Mark in foreign jurisdictions.  Leadership Studies again rebuffed this approach and insisted upon retaining exclusive ownership of the Mark.

31.     During the course of the surrounding communications, Blanchard continued to acknowledge that Leadership Studies exclusively owned the Mark and that Blanchard's use of the Derivative Mark was pursuant to the License Agreement.

32.     Leadership Studies learned that Blanchard, in violation of the parties' respective rights and duties under the Licensing Agreement, has commenced a pattern and practice of registering the marks "Situational Leadership" and "Situational Leadership II" in other countries.  Defendant has done so in an effort to profit from and gain control of goodwill inherent in the Mark, in violation of the License Agreement.

33.     As a result of Blanchard's trademark registrations of the Mark "Situational Leadership" in other countries, Leadership Studies' attempts to register the Mark were denied in those countries.

34.     Moreover, in late 2014, Blanchard actively opposed Leadership Studies' efforts to register the Mark in other countries.

35.     Blanchard's actions in (a) registering the Mark in other countries and (b) actively opposing Leaderships Studies' efforts to register the Mark violate both

1    the express and implied terms of the License Agreement.

2    36.    Blanchard also began marketing its product as "Situational

3    Leadership® II – the SLII Experience."

4    37.    Leadership Studies previously understood SLII to be a derivative mark

5    acceptable under the Licensing Agreement, with its goodwill inuring to Leadership

6    Studies' benefit.

7    38.    Blanchard subsequently applied to register "SLII" as trademarks with

8    the United States Patent and Trademark Office (Reg. Nos. 1584015; 1586711;

9    1653540; 4382316; 4593439; 4593440; 4795553; and 4606057). This acronym did

10   not trigger any potential conflicting marks with the Patent and Trademark Office or

11   other notice to Leadership Studies that Blanchard claimed ownership of this

12   derivative mark.

13   39.    Upon closer examination of the applications and prosecution records of

14   these respective "SLII" trademark application filings, CLS discovered that

15   Blanchard and its executive officers and attorney of record did not disclose in any of

16   these that Leadership Studies owns the senior Mark that is likely to be confused with

17   the acronym "SLII" (*i.e.*, which is shorthand for Situational Leadership® II); to the

18   contrary, these applications each contain an express declaration by a high-ranking

19   Blanchard executive officer stating that they do not know of any prior existing mark

20   that may be likely to cause confusion with the applied-for mark.

21   40.    Blanchard's marketing materials had, until recently, made clear that it

22   is using SLII as an abbreviation or contraction of "Situational Leadership® II."

23   Recently this attribution has been used inconsistently.

24   41.    Additionally, Blanchard took decisive action to link the Mark and SLII

25   in customers' minds, by including the Mark and "SLII" together on Blanchard

26   products; thereby confirming that SLII is an acronym for "Situational Leadership®

27   II," the Derivative Mark and that both are derivative marks of Situational

28   Leadership®. As with the Derivative Mark, Blanchard has fully intended to use the

0811-1026 / 499245.1

8

"SLII" mark to achieve value through and profit from its association with the Mark, and further Blanchard now asserts that it owns the SLII mark and the goodwill therein.

42.    In March and April, 2015, Blanchard's officer in charge of intellectual property and its outside counsel both informed Leadership Studies that Blanchard now takes the position that its use of "Situational Leadership II" is *outside* of, and not governed by, the License Agreement.  In other words, Blanchard now takes the position that its use of the term "Situational Leadership" is subject to the laws governing the use of Leadership Studies' trademarks by any other non-licensed party.

43.    The derivative junior marks "Situational Leadership II" and "SLII" are confusingly similar to Leadership Studies' registered senior mark, "Situational Leadership®."

44.    Blanchard's use of the derivative junior marks "Situational Leadership II" and "SLII" are likely to cause, and cause, consumer confusion, thereby infringing upon the Leadership Studies' rights to its mark, "Situational Leadership."

45.    In fact, Blanchard markets "Situational Leadership II" ("SLII") as another version of "Situational Leadership," which confirms that it seeks to benefit from the goodwill and secondary meaning associated with the mark, "Situational Leadership®," but now seeks to attribute the goodwill of both the senior and junior marks to Blanchard instead of Leadership Studies.

46.    Blanchard increasingly provides information to prospective clients and on its website that emphasizes the "vast" differences between Situational Leadership and "Situational Leadership II"/"SLII", and now disparages both the foundation and content of Situational Leadership®, all to the detriment of the Situational Leadership® Mark.

47.    Leadership Studies recently has learned that Blanchard also has been marketing multiple new programs with names that are confusingly similar to

"Situational Leadership."

48.     Specifically, Blanchard markets a "Situational suite of programs" that includes, but is not limited to, "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," and "Situational Team Leadership," and "SLII Experience."

49.     Blanchard does not include any attribution to Leadership Studies in its use of these derivative marks and, specifically, does not include the "®" symbol in connection with any of them.

50.     Similarly, Blanchard's current websites omits the "®" symbol in nearly all of its references to "Situational Leadership" and, specifically, as it is obligated in reference to "Situational Leadership® II."

51.     On September 25, 2015, subsequent to the filing of the original complaint in the instant action, and in response to the instant action, Blanchard filed a separate lawsuit against Leadership Studies entitled *Blanchard Training and Development Incorporated v. Leadership Studies, Inc.*, United States District Court for the Southern District of California Case No. 15CV2142 LAB-MDD (the "Blanchard Lawsuit") that asserted claims that are affirmative defenses to the instant action.

52.     The Blanchard Lawsuit alleged that Leadership Studies is precluded from asserting claims against Blanchard related to Leadership Studies' Mark because, *inter alia*, Leadership Studies allegedly did not adequately police *Blanchard*'s use of the Mark and that the License Agreement that has governed Blanchard's use of the Mark since 1987 is a naked license.

53.     In so doing, the Blanchard Lawsuit asserted claims that are barred by the doctrine of licensee estoppel and contains factual judicial admissions supporting Leadership Studies' allegations of breach of contract, bad faith, and infringement in the instant matter.    The Blanchard Lawsuit asserted positions concerning the ownership of the Mark, and the validity of the License Agreement, that are contrary

to the express terms of the License Agreement and the parties' course of conduct pursuant to the License Agreement.

54. The Blanchard Lawsuit also alleged, contrary to Blanchard's express representations in the License Agreement, that Leadership Studies does not have priority in the Mark.

55. On September 30, 2015 Leadership Studies sent a letter to Blanchard terminating the License Agreement on the grounds that Blanchard had materially breached its terms and conditions.

56. Despite the termination of the License Agreement, Blanchard continues to use the Mark, more often than not without attribution.

## FIRST CAUSE OF ACTION

### (Breach of License Agreement Against Blanchard)

57. Leadership Studies hereby repeats and incorporates by this reference the allegations contained in all preceding paragraphs, inclusive, as though set forth here in full.

58. Defendant Blanchard and Plaintiff Leadership Studies entered into, and were at all relevant times bound by, the terms of the License Agreement.

59. The express and implicit purposes of the License Agreement were to, *inter alia*, (a) confirm Leadership Studies' ownership of the Mark, (b) ensure that Blanchard's uses of the Mark would be consistent with preservation of the goodwill in the Mark, (c) ensuring that Blanchard's uses of the Mark would be in connection with materials and services of a consistent quality that would support and build the goodwill in the Mark, and (d) confirm that Blanchard could not assign its license to use the Mark (i) other than in the course of a sale of all its assets and (ii) without providing Leadership Studies a right of first refusal.

60. A licensee's use of a mark inures to the benefit of the licensor-owner of the mark and the licensee acquires no ownership rights in the mark itself.

61. The absence of a term authorizing Blanchard to sub-license the Mark

means that Blanchard was and is not permitted to sub-license the Mark without Leadership Studies' consent.

62.     The absence of a term authorizing Blanchard to use the Mark outside of the United States did not afford it the right to use the Mark outside of the United States.

63.     The use of a mark outside of the terms of a license agreement is both a contractual breach and constitutes infringement of the Mark, as a matter of law.

64.     Blanchard has, materially and willfully breached the License Agreement.  Said breaches include, but are not limited to:

(a)     Registering the mark "Situational Leadership" in foreign countries although Blanchard had no right under the License Agreement to do so, and its doing so diverted goodwill in the Mark to Blanchard, contrary to the terms of the License Agreement;

(b)     Interfering with Leadership Studies' attempts to register its mark "Situational Leadership" in foreign countries although Blanchard had no right under the License Agreement to use or register the Mark in foreign countries, and its interfering with Leadership Studies' efforts to register its own Mark, diverted goodwill in the Mark to Blanchard, contrary to the terms of the License Agreement;

(c)     Interfering with Leadership Studies' Mark by registering the derivative trademark "SLII" in the United States and elsewhere in breach of its obligation to ensure that the goodwill in the Mark inured to Leadership Studies, and not to Blanchard;

(d)     Interfering with Leadership Studies' Mark by using it, outside of the terms of the License Agreement;

(e)     Disparaging the goods and services offered by Leadership Studies under the Mark, in breach of its obligation under the License Agreement and as a licensee to use the Mark only under circumstances which would enhance the goodwill in the Mark to Leadership Studies;

(f)     Using numerous derivative marks without license, permission, or attribution all to the detriment of Leadership Studies' goodwill in the Mark;

(g)     Repeatedly failing to comply with its obligations in paragraph 2 of the License Agreement to "at all times use the appropriate statutory notice symbol ® in conjunction" with "Situational Leadership." *See, e.g.,* http://www.kenblanchard.com/Solutions/Situational-Leadership-Development (as of November 9, 2015 no less than 4 times) and http://www.kenblanchard.com/Solutions/Situational-Leadership-Development/Situational-Leadership-II (as of Nov. 9, 2015 no less than 9 times).

(h)     Purporting to license the Mark and/or the derivative mark "Situational Leadership II" and/or the derivative mark "SLII" and/or other derivative marks to third parties despite the absence of any contractual right to do so and in breach of the terms of its limited license; and

(i)     Allowing its purported licensees to use the Mark without proper attribution and in violation of the License Agreement.

(j)     Working to undermine Leadership Studies' rights in the Mark that Blanchard has used as a licensee since 1987 through cancellation and otherwise.

65.     Leadership Studies also is informed and believes that Blanchard has failed to perform its obligations under paragraph 4 of the License Agreement which provides that "BLANCHARD shall inform LEADERSHIP STUDIES of any infringement of the mark "SITUATIONAL LEADERSHIP."

66.     Blanchard's claim that Leadership Studies lacks priority in the Mark breaches the License Agreement because it is contrary to the express representations in the License Agreement concerning the ownership of the Mark and purports to renounce Blanchard's obligations under the License Agreement.

67.     To the extent that Blanchard asserts that its use of the Mark is not covered by Leadership Studies' trademark registrations, then its uses of the Mark in violation of the License Agreement constitute breaches of the License Agreement.

68. Leadership Studies has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the License Agreement, except those that were excused or waived by Blanchard's conduct.

69. As a direct and proximate result of Blanchard's breaches of the License Agreement, Leadership Studies has suffered and will suffer damages including, but not limited to compensatory damages arising from the above-described contractual breaches.

## <u>SECOND CAUSE OF ACTION</u>

### (Breach of the Covenant of Good Faith and Fair Dealing Against Blanchard)

70. Leadership Studies hereby repeats and incorporates by this reference the allegations contained in all preceding paragraphs, inclusive, as though set forth here in full.

71. Every contract contains an implied covenant of good faith and fair dealing upon each party to the contract that neither party will engage in conduct for the purpose of denying to the other the benefits of the contract.

72. In the context of the Licensing Agreement, the covenant of good faith and fair dealing obligates Blanchard not to take any actions that would (a) undermine Leadership Studies' rights in the Mark in any context, (b) constitute attempts to misappropriate the Mark, and the goodwill associated therewith, in any way, or (c) interfere with Leadership Studies' rights in the Mark including its efforts to register the Mark in other countries.

73. Blanchard's use of the Mark is permitted exclusively through the License Agreement. Blanchard has no other rights in the Mark.

74. A licensee's use of a mark inures to the benefit of the licensor-owner of the mark and the licensee acquires no ownership rights in the mark itself. Pursuant to the License Agreement, the secondary meaning in the Mark accrued and accrues solely to the benefit of Leadership Studies, not Blanchard.

75.     Accordingly, any uses by Blanchard that attempted or attempt to wrest away goodwill from the Mark, or to assert ownership interests in them, or any derivative marks, work to deny Leadership Studies from the benefit of License Agreement.

76.     Leadership Studies recently learned that, as of December, 1987, Blanchard had indicated internally, without disclosing its intentions to Leadership Studies, it wished to avoid efforts to assure its compliance with its legal obligations under the License Agreement including, especially, compromising Leadership Studies' rights in the Mark to the benefit of Blanchard.

77.      Leadership Studies is informed and believes that Blanchard has taken the position it was not required to control the nature and the quality of the use of the Mark or any related or derivative marks.

78.     Blanchard recently has denied Leadership Studies' priority in, or rights to, the Mark.

79.     Blanchard has breached the covenant of good faith and fair dealing contained in the License Agreement by, *inter alia*,

(a)   Interfering with Leadership Studies' rights in the Mark by both (i) registering the Mark in other countries and (ii) affirmatively interfering with Leadership Studies' efforts to register its Mark in other countries, denying Leadership Studies from the benefits of the License Agreement which were, *inter alia*, to confirm its ownership in the Mark, ensure the preservation of goodwill in the Mark, and that all goodwill in the Mark inure to Leadership Studies' benefit;

(b)   Interfering with Leadership Studies' rights in the Mark by asserting that Leadership Studies engaged in naked licensing of the Mark in the context of the License Agreement;

(c)   Interfering with Leadership Studies' rights in the Mark by asserting that Leadership Studies lacks priority in the Mark;

(d)   Claiming that the mark "Situational Leadership II" is not subject

1 to the License Agreement and that it has rights in this Derivative Mark, "SLII," and
2 other derivative marks;

3       (e)  Disparaging the goods and services offered by Leadership Studies
4 under the Mark, emphasizing the "vast" differences between Situational Leadership
5 and Situational Leadership II despite its obligation to ensure that, as a licensee, it do
6 nothing to damage the goodwill in the licensed mark, and that the goodwill in the
7 Mark inure to the benefit of the licensed mark;

8       (f)  Purporting to license the use of the Mark and/or "Situational
9 Leadership II" and/or "SLII" and/or other derivative marks to third parties despite
10 the absence of any contractual or other right to do so;

11       (g)  Registering the derivative mark "SLII" and using it in conjunction
12 with, and as an acronym for, "Situational Leadership II," in order to divert the
13 goodwill in Leadership Studies' Mark, contrary to the purposes of the License
14 Agreement; and

15       (h)  Challenging Leadership Studies' interest in the Mark licensed to
16 Blanchard, asserting that it was not obligated under the License Agreement to
17 control the nature and the quality of the uses of the Mark, claiming that Leadership
18 Studies does not have priority in the Mark, and working to undermine Leadership
19 Studies' rights in the Mark that Blanchard has used as a licensee since 1987 through
20 cancellation and otherwise.

21     80.    Leadership Studies has suffered, and will suffer, damages as a result
22 of Blanchard's breaches of the implied covenant of good faith and fair dealing.

23 **THIRD CAUSE OF ACTION**

24 **(Trademark Infringement Under the Lanham Act,**

25 **§43(a), 15 U.S.C.A. § 1125(a) Against Blanchard)**

26     81.    Leadership Studies hereby repeats and incorporates by this reference
27 the allegations contained in all preceding paragraphs, inclusive, as though set forth
28 here in full.

82. The Mark "Situational Leadership®" is a registered trademark of Leadership Studies with a first use in commerce date of February 1, 1967.

83. Blanchard has been using the mark "Situational Leadership II" in the United States and internationally since some time after the execution of the License Agreement.

84. Until recently Blanchard regularly attributed the ownership of the Mark by titling its derivative product as "Situational Leadership® II."

85. Recently, Blanchard has dropped the "®" in much of its use of the derivative mark "Situational Leadership II."  Solely as an example, on the following webpage, as of November 9, 2015, the mark "Situational Leadership" appeared not fewer than 4 times without including the "®" symbol and/or without attribution to Leadership Studies, and contained numerous derivative marks: http://www.kenblanchard.com/Solutions/Situational-Leadership-Development .

86. Solely as another example, as of November 9, 2015, the following webpage contains no fewer than 9 uses of "Situational Leadership" without including the "®" symbol and/or without attribution to Leadership Studies, and contains numerous other derivative marks: http://www.kenblanchard.com/Solutions/Situational-Leadership-Development/Situational-Leadership-II.Blanchard has also adopted and used several derivative marks as descriptors of its programs without use of the "®" or any other attribution.  These marks are all outside of the uses permitted under the Licensing Agreement.

87. In 2015 Leadership Studies learned for the first time that Blanchard claims that its use of the marks "Situational Leadership II" and "SLII" are outside of, and not subject to, the License Agreement.  To the contrary, Blanchard now claims the rights to use these aforesaid marks based on Blanchard's own use, separate and apart from the License Agreement.

88. Upon information and belief, Blanchard has never attempted to register

1  "Situational Leadership II" as a trademark.  Had it done so, Leadership Studies
2  would have actively opposed these attempts.

3       89.    Blanchard has never sought to obtain a separate license from
4  Leadership Studies in connection with the marks "Situational Leadership II,"
5  "SLII," "Situational suite of programs," "Situational Frontline Leadership,"
6  "Situational Leadership Development," "Situational Self Leadership," "Situational
7  Team Leadership," and "SLII Experience."

8       90.    These marks are being used in connection with the sale, offering for
9  sale, distribution, and advertising of Blanchard's training seminars and materials
10  that are related, and similar, to those provided by Leadership Studies.

11      91.    These uses by Blanchard are likely to cause confusion, or to cause
12  mistake, or to deceive the public as a result of the overall similarity of the marks in
13  sound, appearance and meaning.

14      92.    In fact, Blanchard uses the derivative marks referenced above in
15  connection with goods or services which are both competitive with and related to
16  Leadership Studies' goods and services.

17      93.    Blanchard's uses of the derivative marks infringe on Leadership
18  Studies' Mark in violation of the Section 32(1)(a) of the Lanham Act, 15 U.S.C.A. §
19  1114(1)(a).

20      94.    Blanchard's uses of the derivative marks have been done willfully and
21  in bad faith, with knowledge that these uses are intended to cause confusion, or to
22  cause mistake, or to deceive.

23      95.    In addition, Blanchard's registration of the derivative mark "SLII" was
24  done deceptively and fraudulently because, at the time, Blanchard did not disclose
25  that it intended it to be linked to, and as a replacement for, its use of "Situational
26  Leadership II," nor that it intended to register the mark "SLII" in its own name
27  despite the fact that it is derivative of Leadership Studies' Mark.

28      96.    Leadership Studies is informed and believes that Blanchard has been

                                                    THIRD AMENDED COMPLAINT

engaged in efforts to create a secondary meaning in "SLII" by associating it with the registered Mark, and further that Blanchard intends that such secondary meaning shall inure to the benefit of Blanchard and not Leadership Studies.

97.     Such use is likely to cause confusion, or to cause mistake, or to deceive the public.   In fact, Leadership Studies is informed and believes that Blanchard intends that the public will associate "SLII" with "Situational Leadership."

98.     Leadership Studies seeks damages for Blanchard's use of the "Situational Leadership II" and "SLII" marks because they infringe upon Leadership Studies' Mark.

99.     In addition, because "SLII" is derivative of, and likely to lead to confusion in the public's mind as it is associated with, "Situational Leadership ®," the registration of the mark should be revoked.

100.    On September 30, 2015, Leadership Studies wrote to Blanchard and informed it that Leadership Studies was terminating the License Agreement due to Blanchard's material breaches.

101.    The September 30, 2015 instructed Blanchard to cease and desist from using the Mark.

102.    Blanchard has continued to use the Mark, often without using the ® designation on the internet, and other materials whether in written, video, audio, or other format.

103.    The Mark is being used in connection with the sale, offering for sale, distribution, and advertising of Blanchard's training seminars and materials that are related to, similar to, and competitive with those provided by Leadership Studies.

104.    These uses by Blanchard are likely to cause and have caused confusion, mistake, and deception of the public into believing that Blanchard's materials are related to, and authorized by, Leadership Studies.

105.    In addition, unauthorized uses of the Mark, that is no longer covered by a License Agreement, infringe on Leadership Studies' Mark in violation of the

Section 32(1)(a) of the Lanham Act, 15 U.S.C.A. § 1114(1)(a).

106. As a result, Leadership Studies seeks damages, including statutory damages under the Lanham Act, for (a) infringements during the life of the License Agreement for all unauthorized uses of the Mark and derivative marks, and (b) since the termination of the License Agreement for all uses of the Mark and all derivative marks.

## FOURTH CAUSE OF ACTION

### (Trademark Infringement via Reverse Confusion Under the Lanham Act § 43(a), 15 U.S.C.A. § 1125(a) Against Blanchard)

107. Leadership Studies hereby repeats and incorporates by this reference the allegations contained in all preceding paragraphs, inclusive, as though set forth here in full.

108. Blanchard has built its business largely through its use of the licensed Mark, "Situational Leadership®" and derivative marks that are confusingly similar to the Mark, so as to avail itself of the Mark's and Leadership Studies' goodwill.

109. Upon information and belief, Blanchard, through its aforesaid infringing acts, now has a larger share in the relevant market than Leadership Studies.

110. Blanchard currently seeks to undermine Leadership Studies' goodwill and reputation by seeking to cancel Leadership Studies' rights in the Mark, while maintaining the registration of its derivative junior marks including "SLII."

111. Blanchard has been intentionally confusing consumers with false statements to the effect that Leadership Studies is a licensee of Blanchard's purported intellectual property in order to generate the false impression that Blanchard is the senior or even sole owner of intellectual property related to "Situational Leadership," including of the Mark.

112. Because of these false representations, as well as the fact that Blanchard is a larger business than Leadership Studies at this time, consumers might

be more inclined to infer that Blanchard, not Leadership Studies, is the owner of the senior Mark and any junior derivative and acronym marks that are similar to the Mark.

113. Until recently, Blanchard regularly attributed the ownership of the Mark by titling its derivative products as "Situational Leadership® II."

114. Recently, Blanchard has dropped the "®" in much of its use of the derivative mark "Situational Leadership II." Solely as an example, on the following webpage, as of November 9, 2015, the mark "Situational Leadership" appeared not fewer than 4 times without including the "®" symbol and/or without attribution to Leadership Studies, and contained numerous derivative marks: http://www.kenblanchard.com/Solutions/Situational-Leadership-Development.

115. As another example, as of November 9, 2015, the following webpage contained no fewer than 9 uses of "Situational Leadership" without including the "®" symbol and/or without attribution to Leadership Studies, and contained numerous other derivative marks: http://www.kenblanchard.com/Solutions/Situational-Leadership-Development/Situational-Leadership-II.

116. Blanchard's lack of usage of the ® symbol when referencing "Situational Leadership" and the lack of attribution of "Situational Leadership" as a Leadership Studies' mark reflect Blanchard's intent to undermine the public perception that Leadership Studies owns the Mark and provides its own original, quality services under the Mark.

117. Blanchard markets and advertises materials utilizing derivative marks, products, and services that are confusingly similar to Leadership Studies' Situational Leadership® mark, products, and services.

118. Blanchard's (a) larger size, relative to Leadership Studies', (b) undermining of Leadership Studies' ownership and use of the mark, and (c) misleading advertising have recently generated the negative impression that

Leadership Studies is a licensee of Blanchard's. For example, at least one customer informed Leadership Studies that a Blanchard representative told them that Leadership Studies is a licensee of the Mark, Situational Leadership®. Leadership Studies is informed and believes that other customers and potential customers have been informed and/or led to believe that Leadership Studies is Blanchard's licensee.

119. Blanchard, as licensee, has exacerbated negative impressions of the Mark via active disparagement of Leadership Studies products and services rendered under the Mark.

120. Blanchard, through the use of the derivative junior "Situational Leadership II" and "SLII" marks, highlights its assertions that its products and services under the derivative marks are superior to the products and services offered by Leadership Studies under the Mark.

121. The consumer confusion generated by Blanchard's actions have, and continue to, undermine Leadership Studies' ability to use and benefit from the Mark.

122. Leadership Studies' goodwill, reputation, and business have been, and continue to be, harmed as a result of Blanchard's confusion-inducing activities.

123. Leadership Studies seeks damages, including statutory damages under the Lanham Act, for (a) infringements during the life of the License Agreement for all unauthorized uses of the Mark and derivative marks, and (b) since the termination of the License Agreement for all uses of the Mark and all derivative marks.

124. In addition to damages, Leadership Studies also seeks a court order and decree to the United States Patent and Trademark Office for cancellation of any registered Blanchard trademarks that are confusingly similar to Situational Leadership® and an injunction precluding Blanchard from utilizing such marks; including all "SLII" registrations having the registration numbers enumerated above.

/ / /

/ / /

22

### FIFTH CAUSE OF ACTION

### (Fraud in Obtaining Registered Marks

### Under 15 U.S.C.A. §§ 1064(3) and 1119 Against Blanchard)

125.   Leadership Studies hereby repeats and incorporates by this reference the allegations contained in all preceding paragraphs, inclusive, as though set forth here in full.

126.   According to the online records made available by the United States Patent and Trademark Office (*see* "TSDR" search engine, last visited 8/26/2016: http://tsdr.uspto.gov/), Blanchard is listed as the owner of record for several registered trademarks using the phrase "SLII" with the following Registration Nos.: 1584015; 4382316; 4593439; 4593440; 4795553; and 4606057.

127.   In accordance with 18 U.S.C.A. § 1001, Blanchard submitted the application for each of these federal trademark registrations with a signed oath or declaration in which a senior Blanchard officer stated that no other entity, at the time of the respective application filing, was known to have any superior right to use a mark that is likely to be confused with or mistaken for the applied-for-mark.

128.   These oaths were made as part of the declarations signed on: 2/21/1989 by Marjorie Blanchard (for Registration No. 1584015), 6/11/2012 by Richard Andrews (for Registration No. 4382316), 8/24/2012 by Richard Andrews (for Registration No. 4593439), 8/24/2012 by Richard Andrews (for Registration No. 4593440), 8/24/2012 by Richard Andrews (for Registration No. 4795553), and 8/24/2012 by Richard Andrews (for Registration No. 4606057).

129.   The declarations were filed along with the respective "SLII" trademark applications on: 2/27/1989 (for Registration No. 1584015), 6/12/2012 (for Registration No. 4382316), 8/24/2012 (for Registration No. 4593439), 8/24/2012 (for Registration No. 4593440), 8/24/2012 (for Registration No. 4795553), and 8/24/2012 (for Registration No. 4606057).

130.   In each of these aforesaid oaths, Blanchard, through either its President

Marjorie Blanchard or its Director of Legal Affairs Richard Andrews, made a false representation that it knew of no other entity that had "the right to use" a mark that was (at the time of each respective application filing) "likely" to be confused with the respective applied-for "SLII" mark, even though Leadership Studies owns "Situational Leadership®", which is confusingly similar to "SLII."

131.  Blanchard and its corporate officers, including Marjorie Blanchard and Richard Andrews, knew that these declarations were false representations because they knew that Leadership Studies owned the Mark, that Blanchard's right to use the Mark was pursuant to the 1987 License Agreement, and that the Mark is confusingly similar to "SLII."

132.  Blanchard and the corporate officers who filed the false declarations knew that the Mark is confusingly similar to all of its various "SLII" applied-for-marks for numerous reasons, including the most obvious reasons that; (1) at the time each of these oaths was signed, Blanchard was a licensee of, and had knowledge of, Leadership Studies' ownership of the Situational Leadership® mark; (2) prior to and following these applications, Blanchard designed, offered, and sold "SLII"-branded products and services that are derivative of Situational Leadership®-branded products and services; (3) Blanchard sold these products and services in the same marketplace and in competition to Leadership Studies' Situational Leadership®-branded products and services; (4) numerous specimens of goods and services (*e.g.,* compact discs, advertisements, and other marketing and sales materials) submitted in support of Blanchard's "SLII" trademark applications include express references to how SLII is a derivative acronym or shorthand for "Situational Leadership® II ("SLII")"; and (5) Blanchard's corporate officers knew about actual instances of confusion in the marketplace between the closely related Situational Leadership® and SLII® brands.

133.  In connection with the applications Blanchard's executives knew that the representation that there were no confusingly similar marks and that "SLII" was

an acronym for "Situational Leadership® II" would lead the USPTO examiners to conclude that Blanchard owned the Mark "Situational Leadership®."

134. Blanchard's misrepresentations of fact in these oaths, as to the omission of Leadership Studies' ownership of the Mark, are material misrepresentations because trademarks generally do not issue to an entity if another entity (in this case Leadership Studies) owns a confusingly similar mark and has superior rights to said similar mark.

135. These actions indicate that Blanchard and its representatives, by submitting the sworn affidavits, and by tendering specimens in which SLII was associated with "Situational Leadership® II", intended the USPTO to mistakenly believe that Blanchard owned the Mark "Situational Leadership®", and that SLII was merely an acronym for a phrase used in connection with a mark owned by Blanchard, such that Leadership Studies' ownership of the Mark would not bar Blanchard's "SLII" registrations.

136. When Blanchard attached advertising materials as specimens in support of its SLII marks, the advertisements sometimes indicated that "SLII" is an abbreviation of Situational Leadership® II.

137. Blanchard never disclosed to the USPTO examiner that Blanchard is a licensee of Situational Leadership® through Leadership Studies, another entity.

138. Blanchard intended—via these advertising materials and the omission of ownership attribution to Leadership Studies—to deceptively imply that Blanchard owns the Situational Leadership® mark. Blanchard intended this misrepresentation so that the USPTO Examining Attorney would assume that no other party (including Leadership Studies) had superior rights to marks that would be confusingly similar to Blanchard's applied-for "SLII" marks.

139. Upon information and belief, the USPTO relied on Blanchard's materials to infer that Blanchard owned "Situational Leadership®", such that the Mark was not a bar to Blanchard's "SLII" registrations.

THIRD AMENDED COMPLAINT

140.   Given Blanchard's false oaths in the declarations, which in conjunction with Blanchard's advertising materials, misleadingly suggested that Blanchard owned the Mark, the acronym "SLII" was insufficient by itself to alert the Examining Attorneys at the USPTO to the fact that the prior-existing senior mark Situational Leadership® was owned by a separate entity (Leadership Studies), was likely to be confused with the applied-for-mark.

141.   In fact, the USPTO files regarding the registration of SLII do not include any indication that the Examining Officers were aware of the fact that Leadership Studies, and not Blanchard, owned the Mark "Situational Leadership®."

142.   Under the 1987 Agreement, uses of the Mark "Situational Leadership®" and any derivative marks such as SLII were supposed to inure to the benefit of the Mark, and Leadership Studies, its owner.

143.   Blanchard's false representations effectively denying the existence of the likely-to-be-confused Mark, and failure to inform the USPTO of Leadership Studies' ownership of that Mark, were recently discovered by Leadership Studies.

144.   Upon information and belief, Blanchard intended to defraud the USPTO and the public through its false representations and substantive omissions of facts that Blanchard should have disclosed in its applications, so as to misappropriate the Mark's goodwill and misrepresent Blanchard's ownership rights as to the Mark and the confusingly-similar "SLII" marks.

145.   Upon information and belief, as a result of Blanchard's use of the SLII registered marks, consumer confusion has been, and is, induced, such that Leadership Studies suffers proximate damages reflecting loss of customers and loss of goodwill.

146.   Moreover, Blanchard's use of the registered "SLII" marks, by confusing ownership as to the Situational Leadership® mark, misleads consumers to think that Leadership Studies is a licensee of Blanchard's or junior user of the Mark, such that Leadership Studies' goodwill and reputation are disparaged by

1   Blanchard's "SLII" registration activities.

2       147.   The registrations of the "SLII" marks are null and void ab initio and

3 should be cancelled pursuant to 15 U.S.C. §1064. Leadership Studies also seeks a

4 court directive to the USPTO for cancellation of any Blanchard trademark

5 registrations obtained using false oaths or declarations and an injunction precluding

6 Blanchard from utilizing such marks; including all "SLII" registrations having the

7 registration numbers enumerated above.

8                         **SIXTH CAUSE OF ACTION**

9              **(Unfair Competition Against Blanchard)**

10       148.  Leadership Studies hereby repeats and incorporates by this reference the

11 allegations contained in all preceding Paragraphs, inclusive, as though set forth here

12 in full.

13       149.  California's UCL provides a cause of action for business practices that

14 are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code §§ 17200, *et*

15 *seq.* (the "UCL").

16       150.  In addition, the UCL prohibits false and misleading advertising.  Cal.

17 Bus. & Prof. Code §§ 17500, *et seq.*

18       151.  Defendants' actions, as described herein, are and have been both

19 "unlawful" and "unfair" as proscribed by California's UCL.

20       152.  Specifically, Defendants' actions in connection with their use of

21 "Situational Leadership II," "Situational suite of programs," "Situational Frontline

22 Leadership," "Situational Leadership Development," "Situational Self Leadership,"

23 "Situational Team Leadership," and "SLII Experience" and Blanchard's registration

24 of "SLII" are unlawful because they violate Leadership Studies' rights under

25 Federal trademark law as described above.  Moreover, Blanchard's fraudulent

26 registrations of "SLII" marks violate Federal trademark law.

27       153.  In addition, Defendants' actions in connection with its use of the

28 "Situational Leadership II," "Situational suite of programs," "Situational Frontline

Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," "SLII," and "SLII Experience" marks have been unfair and have been deceptive to both Leadership Studies and the public consumers of Defendants' and Leadership Studies' products, and have caused Leadership Studies competitive harm.

154. In addition, Defendants' uses of the marks SLII, "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," and "SLII Experience" are false and misleading advertising because it informs the public that these marks are affiliated with, and related to, "Situational Leadership®."

155. Moreover, Blanchard's advertising omits information as to Leadership Studies' ownership of the Mark and misleads consumers into believing that (a) Blanchard is the owner of the Mark and that (b) Leadership Studies is a licensee of the Mark. This constitutes misleading advertising that disparages Leadership Studies.

156. Leadership Studies has been damaged by Defendants' violation of California's UCL, and is entitled to its damages and attorney fees resulting therefrom.

157. Blanchard's actions have been unscrupulous because it has used "Situational Leadership II" and "SLII" without previously disclosing that it claimed that their uses were outside the License Agreement, and that Blanchard had a purported right to use these marks without reference thereto.

158. Blanchard also acted unscrupulously by registering the acronym "SLII," a derivative of the Mark, and without disclosing that it intended to use the mark in conjunction with, and as an eventual substitute for "Situational Leadership II," after linking the two marks in consumers' minds as covering the same product.

159. In addition, Leadership Studies will ask this Court for a preliminary and permanent injunction prohibiting Defendants from using "Situational Leadership

II," "SLII," "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," and "SLII Experience," and any other derivative mark, as they infringe upon Leadership Studies' Mark.

## SEVENTH CAUSE OF ACTION

### (Copyright Infringement Under 17 U.S.C.A. §§501, *et seq.* Against Blanchard)

160. Leadership Studies hereby repeats and incorporates by this reference the allegations contained in all preceding paragraphs, inclusive, as though set forth here in full.

161. In or about 1973 the Center for Leadership Studies, a sole proprietorship owned by Dr. Hersey, published an original literary work entitled "Leadership Effectiveness and Adaptability Description" (or "LEAD"). The copyright in this work was with the Center for Leadership Studies, and reflects Dr. Hersey and Dr. Blanchard as authors.

162. LEAD was published with the notation "© Copyright 1973 Center for Leadership Studies," and the copyright inured automatically to the Center for Leadership Studies under the 1909 Copyright Act.

163. The copyright in this work was, in turn, assigned to Management Education & Development, Inc. ("MED"), and to Leadership Studies when MED merged with Leadership Studies, Inc. in 1987.

164. In or about February 1977, MED created a derivative literary work also entitled "Leadership Effectiveness and Adaptability Description" (or "LEAD") (Registration No. TXu 186-155)." On or about August 7, 1987, MED assigned its copyright registration for LEAD to Leadership Studies.

165. Leadership Studies has continuously complied with the copyright laws of the United States with regard to the LEAD publications.

166. Leadership Studies remains the sole proprietor of all rights, title, and interest in and to the LEAD works.

167. Leadership Studies is informed and believes, and thereupon alleges that Defendants have been willfully infringing upon Leadership Studies copyrights in the LEAD work, by publishing and distributing works, without a license, that copy original elements of the LEAD works.

168. "The Situational Leader," is an original literary work written by Dr. Hersey for the Center for Leadership Studies and that was copyrighted and registered with the United States Copyright Office in 1984 by the Center for Leadership Studies.

169. "The Situational Leader" is a book that included certain designs, figures, and diagrams that constituted original copyrighted works belonging to the Center for Leadership Studies.

170. From the creation of "The Situational Leader" until the present, Leadership Studies continuously have complied with the copyright laws of the United States.

171. Leadership Studies remains the sole proprietor of all rights, title, and interest in and to "The Situational Leader," including the original designs, figures, and diagrams contained therein.

172. These designs, figures, and diagrams also were included in the original literary work by Paul Hersey entitled "Situational Selling" that Dr. Hersey and the Center for Leadership Studies registered with the United States Copyright Office in 1985 with copyright Registration No. TX0001655386.

173. From the creation of "Situational Selling" until the present, Dr. Hersey and Leadership Studies continuously have complied with the copyright laws of the United States.

174. "Situational Selling" included original designs, figures, and diagrams in addition to those that were included in the "The Situational Leader," and that had not appeared previously in any published works.

175. Leadership Studies is informed and believes, and thereupon alleges that

Defendants have willfully infringed upon Leadership Studies' copyrights in "The Situational Leader" and "Situational Selling" continuously since in or about 1985, by publishing and distributing works, without a license, that copy original elements of these works including, specifically, the original designs, figures, and diagrams contained therein.

176. "The Essentials of Situational Leadership: Theories, Concepts, Applications: Leader's Guide®" and "The Essentials of Situational Leadership: Theories, Concepts, Applications: Participant's Manual®" (collectively "Essentials Of Situational Leadership Guides") are original literary works written by Dr. Hersey for Leadership Studies that were each copyrighted and registered with the United States Copyright Office in 1980 by the Center for Leadership Studies and assigned to Leadership Studies in or about June 4 and 6, 1987, respectively.

177. "Essentials of Situational Leadership Guides" are manuals that included certain designs, figures, and diagrams that constituted original copyrighted works belonging to the Center for Leadership Studies.

178. From the creation of "Essentials of Situational Leadership Guides" until the present, Leadership Studies continuously has complied with the copyright laws of the United States.

179. Leadership Studies remains the sole proprietor of all rights, title, and interest in and to "Essentials of Situational Leadership Guides," including the original designs, figures, and diagrams contained therein.

180. Leadership Studies is informed and believes, and thereupon alleges that Defendants have willfully infringed upon Leadership Studies' copyrights in "Essentials of Situational Leadership Guides," continuously since in or about 1985, by publishing and distributing works, without a license, that copy original elements of these works including, specifically, the original designs, figures, and diagrams contained therein.

181. Materials prepared and distributed by Blanchard that infringe upon

1  Leadership Studies' copyrights include, but are not limited to, Blanchard's
2  "Situational Leadership® II – Participant Workbook" and attendant materials
3  including the SLII application for mobile devices, the "Situational Frontline
4  Leadership – Participant Workbook and attendant materials, in videos including, but
5  not limited to, the one located at
6  https://www.youtube.com/watch?v=XWXLe4szEko,         Power      Point      slide
7  presentations on "Situational Leadership® II" and "Introduction to Situational
8  Leadership® II," Blanchard's "Leader Behavior Analysis II" or "LBAII" as well as
9  the materials for the scoring and interpretation of the scores, materials provided to
10 trainers and participants in connection with "Situational Leadership® 2" and the
11 "SLII® Model," and brochures and pamphlets that market "Situational Leadership®
12 II," "SLII®," and other derivative or related programs.

13      182.  Leadership Studies is informed and believes that Blanchard also
14 incorporates elements of Leadership Studies' copyrighted works and diagrams,
15 including derivatives thereof that are substantially similar to Leadership Studies'
16 copyrighted works, in all of its materials produced in connection with its
17 "Situational Leadership II," "SLII," "Situational suite of programs," "Situational
18 Frontline Leadership," "Situational Leadership Development," "Situational Self
19 Leadership," "Situational Team Leadership," programs and others.

20      183.  Leadership Studies has been damaged by Defendants' unauthorized
21 infringement upon Leadership Studies' copyrights, and their elements, in violation
22 of 17 U.S.C.A. §§501, *et seq.*

23                    **EIGHTH CAUSE OF ACTION**
24                    **(Accounting Against Blanchard)**

25      184.  Leadership Studies hereby repeats and incorporates by this reference
26 the allegations contained in all preceding paragraphs, inclusive, as though set forth
27 here in full.

28      185.  The amount of money owed to Leadership Studies by Defendants, and

1   each of them, is unknown to Plaintiff and cannot be ascertained without an

2   accounting of Defendants' respective financial affairs.   Therefore, Leadership

3   Studies asks that the Court decree that Defendants, and each of them, account to

4   Leadership Studies for all property and profits owed to it, whether under contract

5   law on the basis of the License Agreement, copyright law, trademark law, or other

6   legal or equitable basis.

7                               **NINTH CAUSE OF ACTION**

8                          **(Declaratory Relief Against Blanchard)**

9       186.   Leadership Studies hereby repeats and incorporates by this reference

10  the allegations contained in all preceding paragraphs, inclusive, as though set forth

11  here in full.

12      187.   An actual controversy has arisen between Blanchard, on the one hand,

13  and Leadership Studies, on the other hand, concerning their respective legal rights

14  and duties under the License Agreement.

15      188.   Blanchard asserts that its use of the marks "Situational Leadership II"

16  and "SLII" are not governed by the License Agreement and, specifically, that it is

17  entitled to use the marks "Situational Leadership II" and "SLII" separate and apart

18  from, and without adherence to, the License Agreement.

19      189.   Leadership Studies asserts that, because Blanchard's use of "Situational

20  Leadership II" is outside of the License Agreement, it is an infringing mark.

21      190.   Blanchard also asserts that it properly registered the trademark "SLII"

22  and that its efforts to associate "SLII" with the Mark are legally proper.

23      191.   Leadership Studies asserts that, the "SLII" mark is a derivative mark

24  that Blanchard was not legally entitled to register and infringes on its Mark.

25      192.   Blanchard asserts that it has the right to license the marks "Situational

26  Leadership," "Situational Leadership II," "SLII," and other derivative marks to third

27  parties.

28      193.   Leadership Studies asserts that none of these purported licenses to third

THIRD AMENDED COMPLAINT

1  parties is permitted under the License Agreement, and that the purported licenses
2  violate and infringe upon Leadership Studies rights in the mark "Situational
3  Leadership®."

4      194.  Leadership Studies also asserts that all uses of the Mark by Defendants
5  violate Leadership Studies' registered trademark rights.

6      195.  Leadership Studies is informed and believes that Blanchard claims that
7  he has the right to use the marks "Situational suite of programs," "Situational
8  Frontline Leadership," "Situational Leadership Development," "Situational Self
9  Leadership," "Situational Team Leadership," and "SLII Experience" outside of the
10 Licensing Agreement and without any requirement of attribution.

11     196. Leadership Studies asserts that "Situational suite of programs,"
12 "Situational Frontline Leadership," "Situational Leadership Development,"
13 "Situational Self Leadership," "Situational Team Leadership," and "SLII
14 Experience" are all derivative marks of "Situational Leadership®" and that
15 Blanchard's use is both outside the terms of the License Agreement and in violation
16 of Leadership Studies' registered trademark rights.

17     197. Leadership Studies further contends that Blanchard's marketing
18 materials and statements to customers and potential customers recently has
19 emphasized "vast" differences between the Situational Leadership® and Situational
20 Leadership® II, and has disparaged Leadership Studies' Situational Leadership®
21 program in derogation of its contractual obligations under the License Agreement.

22     198.  Leadership Studies is informed and believes that Blanchard takes the
23 position that it is entitled to engage in marketing that is derogatory and that damages
24 the goodwill associated with "Situational Leadership®."

25     199.  A judicial declaration of the respective parties' legal rights and duties is
26 necessary.  In the absence of such a decree, Leadership Studies will suffer
27 irreparable injury due to Defendants' ongoing infringement of its Mark.

28     200.  Therefore, Leadership Studies seeks a decree declaring that:

(a) The mark "Situational Leadership II" infringes on Leadership Studies' mark, "Situational Leadership®";

(b) The marks "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," and "SLII Experience" infringe on Leadership Studies' mark, "Situational Leadership®";

(c) The mark "SLII" infringes on Leadership Studies' mark, "Situational Leadership®";

(d) The Court order that Defendants "SLII" mark be cancelled, in whole or in part, or to otherwise rectify the register in accordance with 15 U.S.C.A. § 1119;

(e) That the licenses to use the marks "Situational Leadership®," "Situational Leadership II," "SLII," "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," and "SLII Experience" that Blanchard has purported to provide to any Defendants are void or voidable, as a matter of law, and that Leadership Studies has the right to an accounting of all sums received by Blanchard in connection with such purported licenses; and

(f) Affirming the propriety of the termination of the License Agreement, because Blanchard has materially breached the License Agreement.

## WHEREFORE, Plaintiff Prays for Judgment as Follows:
### ON ALL CAUSES OF ACTION

1. For general and special compensatory damages according to proof;

2. For costs of suit and reasonable attorney's fees incurred herein;

3. For prejudgment interest at the legal rate; and

4. For such other and further relief, including equitable relief, as the court may deem just and proper.

**ON THE FIRST AND SECOND CAUSES OF ACTION**

5.     For declaratory relief that Blanchard materially breached the License Agreement, allowing for termination or rescission by Leadership Studies; and

6.     For declaratory relief that Blanchard materially breached the License Agreement, excusing future performance by Leadership Studies.

**ON THE THIRD AND FOURTH CAUSES OF ACTION**

7.     For statutory damages according to proof;

8.     For damages compensating Leadership Studies for (a) all unauthorized uses of the Mark and  derivative junior marks before and after termination of the License Agreement, and (b) corrective advertising costs that will undo the confusion that Defendants have wrought;

9.     For Defendants' profits in connection with its use of the infringing marks;

10.     For cancellation of any registered Blanchard trademarks that are confusingly similar to Situational Leadership®; and

11.     For preliminary and permanent injunctive relief to bar Defendants from using the marks "Situational Leadership II," "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," "SLII Experience," and "SLII."

**ON THE FIFTH CAUSE OF ACTION**

12.     For statutory damages according to proof;

13.     For cancellation all of Blanchard's "SLII" marks (Registration Numbers: 1584015, 4382316, 4593439, 4593440, 4795553, and 4606057);

14.     For preliminary and permanent injunctive relief to bar Defendants from using its "SLII" marks (Registration Numbers: 1584015, 4382316, 4593439, 4593440, 4795553, and 4606057).

## ON THE SIXTH CAUSE OF ACTION

15.    For preliminary and permanent injunctive relief to bar Defendants from using the marks "Situational Leadership II," "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," "SLII Experience," and "SLII."

## ON THE SEVENTH CAUSE OF ACTION

16.    For preliminary and permanent injunctive relief to prevent or restrain the infringement of the Leadership Studies' copyrighted works including, but not limited to, the materials referenced above;

17.    For an order impounding the publications infringing on Leadership Studies' works including, but not limited to, the materials referenced above, under such terms as the Court finds just;

18.    For Leadership Studies' actual damages and Defendants' profits according to proof and any other damages authorized under 17 U.S.C.A. §§504 & 505;

19.    For an award of statutory damages for all infringements involved in the action, with respect to the "The Situational Leader" and the "Essentials of Situational Leadership Guides" works, under 17 U.S.C.A. §504(c);

## ON THE EIGHTH CAUSE OF ACTION

20.    For a decree of accounting for all gains, profits, property and advantages attributable to or derived by Defendants from their actions, infringements, or relative rights or relationship of the parties;

## ON THE NINTH CAUSE OF ACTION

21.    For a decree that Defendants, and each of them, account to Leadership Studies for all property and profits owed to it

22.    For a declaration that:

(a)    The mark "Situational Leadership II" infringes on Leadership

THIRD AMENDED COMPLAINT

Studies' Mark, "Situational Leadership®";

       (b)  The marks "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," "SLII", and "SLII Experience" infringe on Leadership Studies' Mark, "Situational Leadership®";

       (c)    That the Court Order that Blanchard's "SLII" mark be cancelled, in whole or in part, or to otherwise rectify the register in accordance with 15 U.S.C.A. § 1119;

       (d)    That the licenses to use the marks "Situational Leadership®," "Situational Leadership II," "Situational suite of programs," "Situational Frontline Leadership," "Situational Leadership Development," "Situational Self Leadership," "Situational Team Leadership," "SLII Experience" and "SLII" that Blanchard has purported to provide to third parties are void or voidable, as a matter of law, and that Leadership Studies has the right to an accounting of all sums received by Blanchard in connection with such purported licenses; and

       (e)    Confirming the termination of the License Agreement, because Blanchard has materially breached the License Agreement.

Dated: August 29, 2016          Respectfully submitted:

                   **ZUBER LAWLER & DEL DUCA LLP**
                   MICHELE M. DESOER
                   JEFFREY J. ZUBER
                   A. JAMES BOYAJIAN

              By: */s/Michele M. Desoer*
                 Attorneys for Plaintiff Leadership Studies, Inc.

1

## __DEMAND FOR JURY__

2

Leadership Studies, Inc. hereby demands a trial by jury with respect to all

3

issues so triable.

4

5

Dated: August 29, 2016               Respectfully submitted:

6

**ZUBER LAWLER & DEL DUCA LLP**

7

MICHELE M. DESOER
JEFFREY J. ZUBER

8

A. JAMES BOYAJIAN

9

10

By: */s/Michele M. Desoer*

11

Attorneys for Plaintiff and Counterclaim-
Defendant Leadership Studies, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED COMPLAINT

1

## PROOF OF SERVICE

2

**Leadership Studies, Inc. v. Blanchard Training Development**
**Case No. 15CV1831 WQH-KSC**

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

5

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, CA 90017, USA.

6

7

On November 7, 2016, I served true copies of the following document(s) described as **THIRD AMENDED COMPLAINT** on the interested parties in this action as follows:

8

9

10

11

12

13

14

Steven M. Strauss
Dennis C. Crovella
John Paul Oleksiuk
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Tel: 858-550-6000
Fax: 858-550-6420
Email:  sms@cooley.com
            dcrovella@cooley.com
            jpo@cooley.com
Attorneys for Defendant and Counterclaim-
Plaintiff Blanchard Training and Development,
Incorporated

15

16

17

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

18

19

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

20

Executed on November 7, 2016, at Los Angeles, California.

21

22

s/Debbie J. Ellis
_____
Debbie J. Ellis

23

24

25

26

27

28

THIRD AMENDED COMPLAINT