MICHELE M. DESOER (SBN 119667)
  mdesoer@zuberlaw.com
JEFFREY J. ZUBER (SBN 220830)
  jzuber@zuberlaw.com
A. JAMES BOYAJIAN (SBN 275180)
  aboyajian@zuberlaw.com
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California  90017
Telephone: (213) 596-5620
Facsimile:   (213) 596-5621

NATHANIEL L. FINTZ (*Pro Hac Vice*)
  nfintz@zuberlaw.com
**ZUBER LAWLER & DEL DUCA LLP**
One Penn Plaza, Suite 4430
New York, New York 10119
Telephone:  (212) 899-9830

Attorneys for Plaintiff and
Counterclaim-Defendant Leadership Studies, Inc.

*Counsel for Defendant and Counterclaim-Plaintiff Blanchard Training and Development Incorporated listed on signature page*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

LEADERSHIP STUDIES, INC., a
California corporation,

        Plaintiff,

        v.

BLANCHARD TRAINING AND
DEVELOPMENT, INC., a California
corporation, and Does 1-10, inclusive,

        Defendants.

BLANCHARD TRAINING AND
DEVELOPMENT, INCORPORATED,

        Counterclaim-Plaintiff,

        v.

LEADERSHIP STUDIES, INC.,

        Counterclaim-Defendant.

CASE NO. 15CV1831 WQH-KSC

**REDACTED COPY OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR PRODUCTION 73-78**

***No Oral Argument Unless Requested By The Court***

[Filed Concurrently with Motion Under Seal; Declaration of Nathaniel L. Fintz; Declaration of Tom McKee; Declaration of Richard Andrews; Supplemental Declaration of Jeffrey J. Zuber; and Declaration of John Paul Oleksiuk, Esq.]

Pursuant to L.R. 26.1 and Chambers' Rules, Plaintiff and Counterclaim-Defendant Leadership Studies, Inc. ("CLS") and Defendant and Counterclaim-Plaintiff Blanchard Training and Development, Inc. ("BTD") submit this Joint Motion for Determination of Discovery Dispute on CLS' Requests for Production ("RFPs") 73-78, as well as each parties' incorporated Motion for Monetary Sanctions and costs in relation to this Joint Motion.

# I.   THE DISCOVERY REQUESTS AT ISSUE

**RFP 73:** ALL DOCUMENTS EVIDENCING COMMUNICATIONS between YOU AND anyone employed by OR representing KORN FERRY CONCERNING YOUR alleged rights in the mark "Situational Leadership®."

**BTD's Response to RFP 73:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. Moreover, the Request is overbroad because "DOCUMENTS EVIDENCING COMMUNICATIONS" between Blanchard Training and Korn Ferry are neither relevant nor necessary for Leadership Studies to prosecute this action. Blanchard Training further objects to this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement.

Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party.

**BTD's Amended Response ("AR") to RFP 73:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case, because production of "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" (as those terms are defined by Leadership Studies) would cover duplicative documents and documents of *de minimis* significance. Blanchard Training further objects to this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party. Subject to and without waiving these objections or the General Objections stated above, Blanchard Training will conduct a reasonable search for and produce on a rolling basis relevant, non-privileged, and non-duplicative documents in its possession, custody or control evidencing communications regarding Blanchard Training's alleged rights in "Situational Leadership®" trademark, with redactions of irrelevant content, to the extent such documents exist and have not already been produced. Blanchard Training will make any such documents available to Leadership Studies for outside counsel review at the offices of Cooley LLP, 4401 Eastgate Mall, San Diego, CA 92121, at a mutually agreed-to date and time, after Korn-Ferry has been provided a reasonable amount of time to

1  consider whether it should seek a protective order regarding the production of such documents.

2  **RFP 74:** ANY DOCUMENTS EVIDENCING COMMUNICATIONS
between YOU AND anyone employed by OR representing KORN FERRY
3  CONCERNING the potential acquisition of BLANCHARD by KORN FERRY including the terms AND conditions of ALL proposals AND drafts.

4  **BTD's Response to RFP 74:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to
5  produce "ALL DOCUMENTS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. Moreover, the Request is overbroad
6  because "DOCUMENTS EVIDENCING COMMUNICATIONS" between Blanchard Training and Korn Ferry are neither relevant nor necessary for
7  Leadership Studies to prosecute this action.  Blanchard Training further objects to this Request on the grounds that the request to produce communications with
8  "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard
9  Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the
10  grounds that it seeks information which would be confidential as to a third party.

11  **BTD's AR to RFP 74:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL
12  DOCUMENTS EVIDENCING COMMUNICATIONS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case, because
13  production of "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" (as those terms are defined by Leadership Studies) would cover duplicative documents
and documents of *de minimis* significance.  Blanchard Training further objects to
14  this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the
15  needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-
16  disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party.
17  Subject to and without waiving these objections or the General Objections stated above, Blanchard Training will conduct a reasonable search for and produce on a
18  rolling basis relevant, non-privileged, and non-duplicative documents in its possession, custody or control evidencing communications concerning the potential
19  acquisition of Blanchard by Korn Ferry that specifically relate to the "Situational Leadership®" trademark, with redactions of irrelevant content, to the extent such
20  documents exist and have not already been produced. Blanchard Training will make any such documents available to Leadership Studies for outside counsel review at
21  the offices of Cooley LLP, 4401 Eastgate Mall, San Diego, CA 92121, at a mutually agreed-to date and time, after Korn-Ferry has been provided a reasonable amount of
22  time to consider whether it should seek a protective order regarding the production of such documents.

23  **RFP 75:** ANY DOCUMENTS EVIDENCING COMMUNICATIONS
between YOU AND anyone employed by OR representing KORN FERRY
24  regarding YOUR rights OR obligations under the 1987 LICENSE AGREEMENT.

25  **BTD's Response to RFP 75:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to
26  produce "ALL DOCUMENTS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. Moreover, the Request is overbroad
27  because "DOCUMENTS EVIDENCING COMMUNICATIONS" between Blanchard Training and Korn Ferry are neither relevant nor necessary for
28  Leadership Studies to prosecute this action.  Blanchard Training further objects to

1  this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard

2  Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the

3  grounds that it seeks information which would be confidential as to a third party.

**BTD's AR to RFP 75:** In addition to the General Objections, Blanchard

4  Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" is overbroad, unduly

5  burdensome, oppressive, and not proportional to the needs of the case, because production of "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" (as

6  those terms are defined by Leadership Studies) would cover duplicative documents and documents of *de minimis* significance. Blanchard Training further objects to

7  this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the

8  needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-

9  disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party.

10 Subject to and without waiving these objections or the General Objections stated above, Blanchard Training will conduct a reasonable search for and produce on a

11 rolling basis relevant, non-privileged, and non-duplicative documents in its possession, custody or control evidencing communications specifically relating to

12 the 1987 Agreement, with redactions of irrelevant content, to the extent such documents exist and have not already been produced. Blanchard Training will make

13 any such documents available to Leadership Studies for outside counsel review at the offices of Cooley LLP, 4401 Eastgate Mall, San Diego, CA 92121, at a mutually

14 agreed-to date and time, after Korn-Ferry has been provided a reasonable amount of time to consider whether it should seek a protective order regarding the production

15 of such documents.

16     **RFP 76:** ANY DOCUMENTS EVIDENCING COMMUNICATIONS between YOU AND anyone employed by OR representing KORN FERRY

17 CONCERNING LEADERSHIP STUDIES.

       **BTD's Response to RFP 76:** In addition to the General Objections,

18 Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS" is overbroad, unduly burdensome, oppressive, and

19 not proportional to the needs of the case. Moreover, the Request is overbroad because "DOCUMENTS EVIDENCING COMMUNICATIONS" between

20 Blanchard Training and Korn Ferry are neither relevant nor necessary for Leadership Studies to prosecute this action.  Blanchard Training further objects to

21 this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the

22 needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-

23 disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party.

24     **BTD's AR to RFP 76:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL

25 DOCUMENTS EVIDENCING COMMUNICATIONS" is overbroad, unduly burdensome, and not proportional to the needs of the case, because

26 production of "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" (as those terms are defined by Leadership Studies) would cover duplicative documents

27 and documents of *de minimis* significance.  Blanchard Training further objects to this Request on the grounds that the request to produce communications with

28 "anyone employed by OR representing KORN FERRY" is not proportional to the

needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party. Subject to and without waiving these objections or the General Objections stated above, Blanchard Training will conduct a reasonable search for and produce on a rolling basis relevant, non-privileged, and non-duplicative documents in its possession, custody or control evidencing communications specifically relating to the 1987 Agreement and/or "Situational Leadership," with redactions of irrelevant content, to the extent such documents exist and have not already been produced. Blanchard Training will make any such documents available to Leadership Studies for outside counsel review at the offices of Cooley LLP, 4401 Eastgate Mall, San Diego, CA 92121, at a mutually agreed-to date and time, after Korn-Ferry has been provided a reasonable amount of time to consider whether it should seek a protective order regarding the production of such documents.

**RFP 77:** ALL DOCUMENTS EVIDENCING COMMUNICATIONS between YOU AND anyone employed by OR representing KORN FERRY CONCERNING the above-captioned litigation.

**BTD's Response to RFP 77:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. Moreover, the Request is overbroad because "DOCUMENTS EVIDENCING COMMUNICATIONS" between Blanchard Training and Korn Ferry are neither relevant nor necessary for Leadership Studies to prosecute this action.  Blanchard Training further objects to this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party.

**BTD's AR to RFP 77:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case, because production of "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" (as those terms are defined by Leadership Studies) would cover duplicative documents and documents of *de minimis* significance.  Blanchard Training further objects to this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party. Subject to and without waiving these objections or the General Objections stated above, Blanchard Training will conduct a reasonable search for and produce on a rolling basis relevant, non-privileged, and non-duplicative documents in its possession, custody or control to the extent such documents exist and have not already been produced. Blanchard Training will make any such documents available to Leadership Studies for outside counsel review at the offices of Cooley LLP, 4401 Eastgate Mall, San Diego, CA 92121, at a mutually agreed-to date and time, after Korn-Ferry has been provided a reasonable amount of time to consider whether it should seek a protective order regarding the production of such documents.

**RFP 78:** ALL DOCUMENTS EVIDENCING COMMUNICATIONS

4

between YOU AND anyone employed by OR representing KORN FERRY regarding the value OR valuation of the mark "Situational Leadership®."

**BTD's Response to RFP 78:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case. Moreover, the Request is overbroad because "DOCUMENTS EVIDENCING COMMUNICATIONS" between Blanchard Training and Korn Ferry are not necessary for Leadership Studies to prosecute this action. Blanchard Training further objects to this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party.

**BTD's AR to RFP 78:** In addition to the General Objections, Blanchard Training objects to this Request on the grounds that the request to produce "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" is overbroad, unduly burdensome, oppressive, and not proportional to the needs of the case, because production of "ALL DOCUMENTS EVIDENCING COMMUNICATIONS" (as those terms are defined by Leadership Studies) would cover duplicative documents and documents of *de minimis* significance. Blanchard Training further objects to this Request on the grounds that the request to produce communications with "anyone employed by OR representing KORN FERRY" is not proportional to the needs of the case when considering the impact the Request has on both Blanchard Training and third parties, including by seeking documents subject to a non-disclosure agreement. Blanchard Training further objects to this Request on the grounds that it seeks information which would be confidential as to a third party. Subject to and without waiving these objections or the General Objections stated above, Blanchard Training will conduct a reasonable search for and produce on a rolling basis relevant, non-privileged, and non-duplicative documents in its possession, custody or control evidencing communications specifically relating to the value or valuation of "Situational Leadership," with redactions of irrelevant content, to the extent such documents exist and have not already been produced. Blanchard Training will make any such documents available to Leadership Studies for outside counsel review at the offices of Cooley LLP, 4401 Eastgate Mall, San Diego, CA 92121, at a mutually agreed-to date and time, after Korn-Ferry has been provided a reasonable amount of time to consider whether it should seek a protective order regarding the production of such documents.

## II.   CLS'S STATEMENT

### A.   FED. R. CIV. P. 26(B)(1) REQUIRES COMPLIANCE BY BTD.

BTD must produce the documents requested in RFPs 73-78 (F.D. Exh. 2 pp. 17-18) under FRCP 26(b)(1), which provides that a party

> obtain discovery regarding any nonprivileged matter . . . relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake . . ., the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

1   Here, four of the key issues in this action are: (1) BTD's rights and duties under the

2   CLS-BTD License Agreement of 1987; (2) BTD's rights in the mark

3   "SITUATIONAL LEADERSHIP" (the "Mark") or in marks derivative thereof; (3)

4   the value or valuation of the items listed in point "2"; (3) BTD's rights in CLS'

5   copyrights or derivative works thereof; and (4) the value or valuation of the items

6   listed in point "3." All these issues were central to the recently-contemplated

7   transaction wherein BTD would have sold itself to third party Korn/Ferry

8   International ("KF"). Thus, all these issues would also have been central to the

9   documents associated with that contemplated transaction (the "KF Deal"). It is

10  difficult to imagine how the KF Deal could have been negotiated without a

11  discussion of the IP rights at issue or of the IP's value. These issues have become

12  even more critical because BTD's most recent position is that the Mark is generic.

13  (*See* BTD's 3/30/17 response to CLS' RFA 42, Fintz Decl. ("F.D.") Exh. 23). If

14  BTD truly believed the Mark was generic during the recent KF Deal discussions, the

15  documents sought by RFPs 73-78 would reflect that. Under FRCP 26(b)(1), CLS is

16  entitled to discovery of communications between BTD and KF on all those issues

17  because they are highly relevant to CLS' central claims and BTD's defenses and

18  proportional to the case's needs in light of (i) the vital issues at stake; (ii) the

19  significant amount in controversy; (iii) BTD's easy access to the documents; (iv) the

20  document population's finite nature; (v) CLS' lack of access to the documents; (vi)

21  the low production burden relative to the great benefit of shedding light on key

22  issues; (vii) the documents' importance in resolving key issues; and (viii) the

23  protective order ("PO") addressing any confidentiality or trade secret concerns.

24  **B.     BTD IS DISPLAYING A PATTERN OF BAD-FAITH EVASION.**

25          For six months, BTD has been playing a game of legal "whack-a-mole" with

26  CLS on RFPs 73-78. *Cf. Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-

27  LHK, 2014 WL 252045, at *4 (N.D. Cal. Jan. 21, 2014) (metaphor for new

28

1  arguments endlessly popping up). The pattern here is clear: BTD imposes an

2  obstacle to discovery, CLS fashions a reasonable way to overcome it, then BTD just

3  imposes some other obstacle. (F.D. Exhs. 3-14, 16, 18-22, 24-25). This

4  obstructionist discovery strategy must be stopped.

5        **1.**      **CLS and KF have presented a united front of obstructionism.**

6        CLS also sought the relevant documents from another source, subpoenaing

7  KF directly. (CLS' 7/29/16 subpoena to KF, F.D. Exh. 1). Neither KF nor BTD

8  moved to quash it. Instead, BTD objected to it in a letter (BTD's 11/30/16 letter,

9  F.D. Exhs. 7-8), and KF responded to every one of CLS' RFPs with nonspecific

10  boilerplate objections, copied-and-pasted over and over, and stated that CLS should

11  first seek the documents from BTD. (KF's 1/13/17 RFP responses, F.D. Exh. 15;

12  CLS' 3/10/17 letter to KF, F.D. Exh. 17 p. 2). Notably, KF's boilerplate objections

13  make no mention of the common interest doctrine, discussed further below. (For

14  efficiency purposes, most of the records and correspondence from the meet-and-

15  confer ("M&C") efforts between CLS and KF have been omitted from this motion.)

16        **2.**      **BTD used its amended responses to enhance its obstructionism.**

17        On 9/26/16, BTD objected to CLS' RFPs 73-78 on grounds of alleged

18  irrelevancy, disproportionality, and confidentiality (notwithstanding the PO then in

19  effect, D.I. 41), and refused to produce even a single responsive document. (F.D.

20  Exh. 3 pp. 49-53). After a M&C teleconference and correspondence (CLS' 11/1/16

21  letter, F.D. Exh. 4 p. 13), BTD served amended responses ("ARs") on 11/23/16

22  (F.D. Exh. 6 pp. 33-40). While these ARs for the first time agreed to produce some

23  documents, BTD newly complicated that commitment by (i) defining the scope of

24  its production with ambiguous language; (ii) unilaterally imposing its own

25  limitations on that scope; and/or (iii) not always stating whether it would produce

26  responsive documents. (*Id.*; CLS' 12/27/16 letter, F.D. Exh. 10 pp. 9-10). BTD also

27  introduced more gratuitous obstacles, insisting on the geographic and temporal

28

1  restrictions of in-camera review over 100 miles away from CLS' counsel. (*See id.*).[1]

2  BTD also doubled down on its existing objections (again, despite the PO). (*See id.*).

### 3.   Ignoring both the original and enhanced POs, BTD and KF have improperly cited confidentiality as a basis for obstructionism.

In the presence of an appropriate negotiated PO, confidentiality cannot be a ground for withholding discovery. *See FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15CV1879-BEN (BLM), 2016 WL 6522808, at *12 (S.D. Cal. Nov. 3, 2016). BTD's 11/23/16 ARs (F.D. Exh. 6 pp. 34-40) repeatedly said KF should be "provided a reasonable amount of time to consider whether it should seek a protective order . . . ." Further, KF's 1/13/17 RFP responses (F.D. Exh. 15) said the existing PO insufficiently shielded third parties like KF. To be responsive to BTD's and KF's concerns, CLS drafted a revision of the PO specifically designed to confirm it protected KF. (CLS' 3/6/17 email, F.D. Exh. 16). This revision gave rise to the current enhanced PO (D.I. 62). But this was to no avail. KF remains unmoved. Even worse, within days after the parties' joint motion (D.I. 60) to amend the PO, BTD twice cited FRCP 26(c)(1) as grounds for withholding KF Deal documents. (BTD's 3/13/17 letter, F.D. Exh. 18 p. 2; BTD's 3/27/17 letter, F.D. Exh. 21 p. 1). BTD ignored CLS' 3/15/17 letter (F.D. Exh. 19 pp. 2-3), which noted this rule is irrelevant here because, *inter alia*, "(1) BTD's deadline to file a motion for a protective order on RFPs 73-78 expired long ago; and (2) BTD has not even attempted to file any . . . motion for a protective order on RFPs 73-78 . . . ."

### 4.   CLS sought compromise to allay BTD's disproportionality concerns, but BTD persisted in its obstruction.

---

[1] Previously, in an 11/10/16 teleconference, the parties had discussed the possibility of "some kind of in-camera review or other arrangement" for RFP 74 only. (CLS' 11/11/16 email, F.D. Exh. 9). BTD contended that the discussion of in-camera review had applied to RFPs 70 and 74. (BTD's 11/11/16 email, F.D. Exh. 9). However, BTD's 11/23/16 ARs (F.D. Exh. 6) suddenly expanded in-camera review to encompass RFPs 70 and 73-78. (CLS' 12/27/16 letter, F.D. Exh. 10 p. 9). BTD's 12/28/16 letter (F.D. Exh. 11 p. 5) erroneously claimed that the 11/10/16 discussion of in-camera review had encompassed all of RFPs 73-78. CLS pointed out this discrepancy in a 12/27/16 teleconference. (CLS' 12/30/16 letter, F.D. Exh. 12 p. 5).

1    In a 12/29/16 teleconference (*see* CLS' 12/30/16 letter, F.D. Exh. 12 pp. 5-6),

2   CLS offered that, for RFP 74, if BTD provided "a proposed list of the types of

3   things [BTD] would want to exclude," CLS would consider that.  In a 1/4/17

4   teleconference (*see* CLS' 1/5/17 letter, F.D. Exh. 13 pp. 7-8), CLS again invited

5   BTD to propose document types for exclusion; CLS also volunteered it was not

6   seeking certain types of documents. But BTD did not accept that compromise. (*Id.*).[2]

7   Notwithstanding BTD's intractability, CLS offered a second compromise in the

8   form of a two-step plan: (i) BTD could produce a finite, tailored set of KF Deal

9   documents (namely, the Purchase Agreement and documents identified therein, the

10  Diligence Request Letter and response thereto, and the Data Room Index); and (ii)

11  CLS would use those to narrow the scope, and the parties could talk about what CLS

12  did and didn't need. (CLS' 1/6/17 email, F.D. Exh. 25). But BTD met this gesture

13  with silence. Six days later, after CLS' follow-up (CLS' 1/11/17 email, F.D. Exh.

14  25), BTD rejected all compromise offers, instead reiterating its disproportionality

15  objection and promising a "counterproposal" (BTD's 1/12/17 email, F.D. Exh. 25).

16  Also on 1/12/17 (F.D. Exh. 14), BTD withdrew its insistence on in-camera review.

17  CLS then waited two months for BTD's promised "counterproposal," but received

18  only silence. On 3/13/17 CLS followed up again (F.D. Exh. 25), and that day BTD

19  replied with a letter (F.D. Exh. 18) offering no counterproposal. Instead, after what

20  had been nearly six months of discussion, that letter ***for the first time*** raised a brand

21  new, notably nuanced objection: the common interest doctrine ("CID"). (*Id.* p. 2).

22  BTD's gamesmanship bespeaks little respect for the rules of discovery.

23  **C.    BTD'S UNTIMELY INVOCATION OF THE COMMON INTEREST DOCTRINE IS IMPROPER; THE OBJECTION WAS WAIVED.**

24      **1.    BTD's late attempt to invoke the CID is bad faith and was waived in BTD's initial responses that failed to mention the doctrine.**

25

26

27  [2] Regarding these RFPs, the parties' 1/4/17 teleconference yielded only a minor (and vaguely-worded) concession from BTD: "With regard to RFP Nos 73 and 75 on the [1/5/17] letter, we confirm that BTD is producing communications between [BTD]

28  and [KF] as part of its production." (BTD's 1/11/17 email, F.D. Exh. 20).

1    To "preserve any objections to . . . discovery requests," a party must do so by

2  the response deadline. *Eusse v. Vitela*, No. 3:13-CV-00916-BEN, 2015 WL

3  4641870, at *2 (S.D. Cal. Aug. 4, 2015). Further, a party may not "make its

4  assertions of privilege a moving target." *S.E.C. v. Yorkville Advisors, LLC*, 300

5  F.R.D. 152, 166 (S.D.N.Y. 2014) (". . . the Revised Privilege Log's new privilege

6  claims, *i.e.*, the common-interest privilege, . . . are untimely."). During six months

7  of teleconferences and correspondence, CLS has bent over backwards to limit

8  burdens and safeguard confidentiality, only now to face BTD's brand new CID

9  argument. To call this "too little, too late" is an understatement. If something so

10  nuanced as the CID (or, for that matter, even something less nuanced) were so

11  essential to BTD's responses to these RFPs, then BTD was obligated to raise it

12  clearly and specifically within the individual RFP responses and objections it served

13  on 9/29/16—which made not even a passing mention of CID. Thus, BTD failed to

14  preserve CID-based objections, which are waived.

15    BTD's 9/29/16 responses feature "General Responses" ("GRs"). GR 4 is

16  waived (and even if not, is inapplicable), and thus BTD failed to preserve its CID-

17  based objection. Nonspecific, boilerplate, blanket discovery responses are waived.

18  *See Dowell v. Griffin*, No. 09CV2576-DMS MDD, 2011 WL 2682808, at *2 (S.D.

19  Cal. July 11, 2011) ("Despite the legal requirement to state objections with

20  specificity, the Defendants instead presented a 'preliminary statement' and a list of

21  'general objections' which they incorporated by reference wholesale into each of

22  their responses"); *Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012)

23  (although defendant raised attorney-client and work product privilege objections to

24  an RFP, "she provides nothing more than a blanket assertion. It is unclear what . . .

25  documents qualify as attorney-client communications . . . or how a particular

26  document comes within either description"); *Peat, Marwick, Mitchell & Co. v. West*,

27  748 F.2d 540, 541–42 (10th Cir. 1984) (privilege objection waived where

28

Case No. 15CV1831 WQH-KSC
JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR
PRODUCTION 73-78

1   responding party delayed about six months in specifying the documents for which

2   they had raised a general, blanket privilege objection), *cert. denied*, *Peat, Marwick,*

3   *Mitchell & Co v. West*, 469 U.S. 1199, 105 S. Ct. 983 (1985). BTD's GR 4 states:

4       [BTD] will not produce documents that [BTD] or any other party to this
        litigation deems to embody material that is private, business confidential,
5       proprietary, trade secret, or otherwise protected from disclosure pursuant to
        [CA] Constitution, article I, section 1, or [CA] Evidence Code section 1060.

6   (F.D. Exh. 3 p. 4). GR 4 is generic blanket boilerplate without reference to any

7   particular request whatsoever (and presumably at least one was actually not

8   privileged). Thus, GR 4 is waived; even assuming *arguendo* that it isn't, it makes no

9   mention of the CID and thus cannot support BTD's far-later attempts to invoke that

10  nuanced theory. Nobody reading BTD's responses could have even suspected BTD

11  was attempting to preserve a CID-based objection, which thus cannot be saved.

12      **2.    Even assuming *arguendo* that BTD has not waived its CID-based
                objection, the CID is inapplicable to the documents at issue.**

13          **(i)    *The CID does not apply to any aspect of the BTD-KF
                    relationship.***

14

15  Because the conventional attorney-client privilege ("ACP") "'contravene[s]

16  the fundamental principle that the public has a right to every man's evidence,' . . .

17  [courts] construe it narrowly to serve its purposes." *In re Pac. Pictures Corp.*, 679

18  F.3d 1121, 1126 (9th Cir. 2012). And the CID does not apply "where the attorney-

19  client privilege and work product doctrine do not." *Brill v. Walt Disney Pictures &*

20  *Television*, 243 F.3d 546 (9th Cir. 2000). When CLS objected to BTD's invocation

21  of the CID (CLS' 3/15/17 letter, F.D. Exh. 19), BTD doubled down (BTD's 3/27/17

22  letter, F.D. Exh. 21),[3] simultaneously also serving a highly problematic privilege log

23  _____

24  [3] To make matters even worse, BTD's 3/27/17 letter cites cases that do not truly
25  support BTD's position. (BTD's 2/27/17 letter, F.D. Exh. 21 p. 2; CLS' 3/31/17
    letter, F.D. Exh. 24 pp. 7-8). Also, BTD's 2/27/17 letter (F.D. Exh. 21 p. 2)
26  identifies purported "compromise" measures by BTD that are disingenuous and
    utterly *de minimis*. (*See* BTD's and CLS' respective emails of 3/17/17, F.D. Exh.
27  25; CLS' 3/31/17 letter, F.D. Exh. 24 p. 8). As of 4/10/17, BTD has not responded
    to CLS' 3/31/17 letter (F.D. Exh. 24).

28

1    ("PL") (F.D. Exh. 22) six months after its RFP responses. This PL shows

2

3    REDACTED

4

5

6

7

8

9    In addition to being six months

10   late, this PL is, with very limited exceptions, insufficient to establish that the

11   conventional ACP applies. This precludes the CID's applicability.

12           On top of that, the CID is even narrower than the conventional ACP. A party

13   must surmount numerous hurdles to demonstrate the CID's applicability. First, a

14   true common *legal interest* is necessary—something more than merely "a shared

15   desire to see the same outcome in a legal matter," which "is insufficient to bring a

16   communication between two parties within this [CID] exception." *In re Pac.*, 679

17   F.3d at 1129 (emphasis added). Significantly, the CID "'does not extend [to]

18   communications about a joint business strategy that happens to include a concern

19   about litigation.' [. . .] The fact that the parties may have been developing a business

20   deal that included a desire to avoid litigation 'does not transform their interest and

21   enterprise into a legal, as opposed to a commercial matter.'" *FSP Stallion 1, LLC v.*

22

23   _____

24

25   REDACTED

26

27

28
                                            12

1  *Luce*, No. 2:08-CV-01155-PMP, 2010 WL 3895914, at *18-19 (D. Nev. Sept. 30,
2  2010) (internal citations omitted).

3      Further, "even if parties share a common legal interest, the common legal
4  interest exception requires that the communication at issue be designed to further
5  that legal effort." *Id.*; *see also id.*, at *17 ("The common interest privilege applies
6  where . . . the communication is made by separate parties in the course of a matter of
7  common legal interest . . . [and] that communication is designed to further that effort
8  . . . ."). The CID applies only where "parties with common interests join forces for
9  the purpose of obtaining more effective legal assistance." *Morvil Tech., LLC v.*
10 *Ablation Frontiers, Inc.*, No. 10-CV-2088-BEN BGS, 2012 WL 760603, at *2 (S.D.
11 Cal. Mar. 8, 2012) (internal quotation marks omitted). The CID does not apply in
12 the absence of "evidence that [two parties] had formulated a joint legal strategy . . .
13 or that counsel . . . coordinated its legal efforts with attorneys from [the other
14 parties]." *FSP Stallion 1*, 2010 WL 3895914, at *18. Additionally, there must have
15 been a strategic agreement between the parties: ". . . the parties must make the
16 communication in pursuit of a joint strategy in accordance with some form of
17 agreement—whether written or unwritten." *In re Pac.*, 679 F.3d at 1129. Finally, the
18 CID cannot protect communications even between co-parties "where counsel is not
19 present, or at the very least, where the specific conversations of the co-parties at
20 issue was not expressly directed by counsel." *DeFazio v. Hollister, Inc.*, No.
21 CIVS04-1358 WBS GGH, 2008 WL 4952481, at *2 (E.D. Cal. Nov. 18, 2008).

22      BTD faces all these hurdles to the CID's applicability—and, moreover, bears
23 the burden of showing they are surmounted. *See Sanchez Ritchie v. Sempra Energy*,
24 No. 10CV1513-CAB(KSC), 2015 WL 12912316, at *4 (S.D. Cal. Apr. 6, 2015)
25 (emphasis omitted) ("Mr. Azano does not provide any evidentiary support or a clear
26 explanation as to why he believes the [CID] would apply under the facts and
27 circumstances."); *see FSP Stallion 1*, 2010 WL 3895914, at *20 (alleged holder of

28

privilege "bears the burden of establishing . . . non-waiver."). CLS has expressly
invited BTD to meet this burden. (CLS' 3/15/17 letter, F.D. Exh. 19 pp. 1-2). But
BTD has not done so, and cannot do so, because the circumstances envisaged by the
above hurdles are not present. The KF Deal was an uncompleted, arm's-length
financial transaction. KF's ultimate goal in its talks with BTD would have been to
determine the desirability, from KF's perspective, of purchasing BTD. ***This is a
thoroughly financial interest,*** and certainly not a common one. Indeed, BTD, for its
part, would have been attempting to convince KF that BTD's alleged interests in
certain IP were sufficiently actual and secure to merit a buyout by KF (while KF's
agenda would have been to cast doubt on the representations to obtain a better
price). BTD has not even attempted to identify a purported common interest. This is
fatal to BTD's invoking the CID. *See FSP Stallion 1*, 2010 WL 3895914, at *19 (the
CID "did not apply because, in structuring the credit agreement, the parties' interests
were not identical."). BTD cannot surmount the hurdles.

> *(ii)* ***Even assuming*** arguendo ***that the CID does apply to some
> subset of the BTD-KF relationship, nevertheless the ACP and
> CID are both inapplicable to (a)*** REDACTED
> REDACTED ***(b) any BTD-KF communications that
> occurred after any purported common interest ceased to exist.***

REDACTED

This irreparably
destroyed any ACP or CID protection for those documents. Furthermore, such
obviously disingenuous invocations of the ACP and CID only highlight BTD's
evasive tactics, and suggest BTD is poorly tailoring its withholding of documents.

Additionally, Courts recognize time limits for the CID's applicability based
on changes in the parties' relationship. *See Lincoln Gen. Ins. Co. v. Ryan Mercaldo*

14

Case No. 15CV1831 WQH-KSC
JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR
PRODUCTION 73-78

0811-1026 / 676318.1

1   *LLP*, No. 13CV2192-W (DHB), 2015 WL 12672142, at *2 (S.D. Cal. July 15, 2015)

2   (when a party "disclaimed its duty to defend [an individual]," that terminated the

3   common interest, so from that point their communications were not privileged).

4   Even assuming *arguendo* that at some point in time the CID *was* applicable to the

5   BTD-KF relationship, that applicability would not have lasted forever. Changes in

6   the BTD-KF relationship would determine the CID's applicability. Yet BTD has

7   refused CLS' demands for information about "when, and under what circumstances,

8   KF decided not to acquire BTD" (CLS' 3/15/17 letter, F.D. Exh. 19 p. 2) as

9   somehow "entirely irrelevant to whether the common interest applies" (BTD's

10  3/27/17 letter, F.D. Exh. 21 p. 2). Thus, BTD's chronic stonewalling extends from

11  document production to even sharing its reasoning behind the invocation of the CID.

12  **D.      CONCLUSION**

13          BTD's evasiveness is abusive and sanctionable.  CLS respectfully asks the

14  Court to order BTD to either (i) produce all documents responsive to RFPs 73-78 or

15  conduct an in-camera review sufficient for the Court to ascertain whether the CID

16  could indeed apply. CLS also respectfully requests that BTD and its counsel be

17  ordered to pay sanction equal to CLS' fees and costs for this motion, in an amount

18  to be determined based on the actual costs incurred, subject to Court review.

19  **III.    BTD'S STATEMENT**

20          CLS brought this lawsuit in 2015 alleging pretextual trademark, copyright, and

21  contract claims for activity going back decades, with the improper purpose of

22  disrupting "the recently-contemplated transaction wherein BTD would have sold

23  itself to third party" KF. (*See supra* at 6; Declaration of Thomas McKee ("McKee

24  Decl.") at ¶ 2.) CLS has all but admitted to that motivation in this motion, as it fights

25  to obtain trade secret commercial information in the nature of the draft purchase

26  agreement for BTD and any related documents that may be used to establish a

27  *valuation* of BTD and any *valuation* that KF assigned to the trademarks and

28

15

1  copyrights used by BTD, despite the fact that information and any associated 2015

2  KF Deal documents are not important nor necessary for CLS to attempt to prove

3  alleged trademark, copyright, and 1987 contract-based claims at issue. This

4  information could be used by CLS *only* to discern the extent of any leverage it may

5  have over its competitor BTD as a result of bringing and maintaining this lawsuit, and

6  to identify further opportunities to disrupt BTD's business with strategic litigation.

7  *CLS does not seek the documents for any reason tethered to the alleged*

8  *claims that are actually pending in this lawsuit*—the KF Deal documents *will not*

9  *establish* rights and duties under the CLS-BTD License Agreement of 1987, BTD's

10  rights in any trademarks and copyrights, or the proper measure of CLS' alleged

11  damages incurred or the disgorgement of BTD's profits. The KF Deal documents

12  sought are not important for the issues in the case, and the burden to BTD in sharing

13  such confidential commercial information outweighs its likely benefit considering the

14  issues at stake in the action.

15  BTD hereby seeks a protective order pursuant to Fed. R. Civ. P. 26(c)(1)

16  because good cause exists to issue an order to protect BTD from revealing trade secret

17  and other commercial information in the KF Deal documents.[7] Moreover, CLS'

18  _____

19  [7] CLS argues above (*supra* at 8) that BTD cannot now timely bring a motion for

20  protective order pursuant to Fed. R. Civ. P. 26(c)(1). However, the parties have agreed
    to an ongoing meet-and-confer process with regard to these discovery requests which

21  started with BTD objecting on *9/26/16* to CLS' RFPs 73-78 on grounds of irrelevancy,
    disproportionality, and confidentiality (*supra* at 7), then continued with "*six months*

22  *of teleconferences and correspondence*" (*supra* at 10). Even in the most recent

23  memorialization of the continued agreement of extensions, BTD's position regarding
    proportionality and protection from disclosing trade secret material was explicitly

24  raised and repeated (*See 3/16/17* email attached to Declaration of John Paul Oleksiuk,

25  Esq. ("Oleksiuk Decl.") as Exhibit A*.)* In the event the Court finds this request for a
    protective order untimely on the basis that Magistrate Judge Crawford's Chambers'

26  Rules that require "discovery motions shall be filed no later than 45 days after the

27  event giving rise to the dispute…For written discovery, the event giving rise to the

28

Case No. 15CV1831 WQH-KSC
JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR
PRODUCTION 73-78

0811-1026 / 676318.1

1   request to compel production of the KF Deal documents should not be granted

2   because the documents are not proportional to the needs of the case under Fed. R. Civ.

3   P. 26(b)(1).

4        To be clear, BTD is not seeking to protect all documents from disclosure that

5   might have been otherwise responsive but for being shared with KF as part of the KF

6   Deal. ***BTD has produced responsive documents including <u>1,142 pages</u> constituting***

7   ***the vast majority of documents from the "IP Folder" in the document database (the***

8   ***"Data Room") shared between BTD and KF relating to the KF Deal, as well as***

9   ***documents relating to profits and damages.*** Discovery is ongoing and BTD

10   anticipates that both BTD and CLS will be producing additional financial documents.

11   However, BTD has not produced the documents that relate ***only*** to the KF Deal, such

12   as documents containing proposed KF Deal terms and documents containing

13   discussion of the logistics of the potential sale and the potential legal risks associated

14   with the KF Deal, as this confidential information is not important for litigating the

15   claims and defenses in this lawsuit, and many of these documents are privileged

16   documents that remain protected under the common-interest doctrine.

17   **A.**    **A PROTECTIVE ORDER IS WARRANTED, OR ELSE THE MOTION**
     **TO COMPEL SHOULD BE DENIED, BECAUSE THE KF DEAL**
18   **DOCUMENTS ARE CONFIDENTIAL COMMERCIAL**
     **INFORMATION AND THEIR DISCLOSURE IS NOT**
19   **PROPORTIONAL TO THE NEEDS OF THE CASE**

20        Federal Rule of Civil Procedure 26(b)(1), as amended, provides in part as

21   follows: "Parties may obtain discovery regarding any non-privileged matter that is

22   relevant to any party's claim or defense and proportional to the needs of the case,

23   considering the importance of the issues at stake in the action, the amount in

24

25

26   dispute is the service of an objection, answer, or response, or the passage of a
     discovery due date without response or production," BTD respectfully submits that

27   ***the motion to compel portion of this Joint Motion would also be untimely for the***

28   ***same reason***, and the motion should therefore be denied in its entirety.

Case No. 15CV1831 WQH-KSC
JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR
PRODUCTION 73-78

0811-1026 / 676318.1

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,...including...(A) forbidding the disclosure or discovery;...(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;...(G) requiring that a trade secret or other confidential...or commercial information not be revealed or be revealed only in a specified way...." Fed. R. Civ. P. 26(c)(1).

In crafting protective orders to protect trade secrets from disclosure, courts in the Ninth Circuit must balance the risk to the defendant of inadvertent disclosure of trade secrets to competitors against the risk to plaintiff that protection of defendant's trade secrets impaired prosecution of plaintiff's claims. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (explaining the balancing required when litigants were previously entitled to take discovery under the "reasonably calculated to lead to the discovery of admissible evidence" standard).

With the advent of the "proportionality" standard under the revised Federal Rules, this Court has recently applied the *Brown Bag* balancing test for protecting trade secrets from disclosure in the context of the narrower "proportionality" standard in the amended Federal Rules. *See Cross-Fit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14CV1191-JLS(KSC), 2016 WL 6476306, at *7 (S.D. Cal. Nov. 2, 2016) (M.J. Crawford).  In *Cross-Fit*, the plaintiff argued it needed royalty figures from publishing agreements because they were relevant to the calculation of plaintiff's alleged damages and was "'additional evidence' corroborating defendant's financial motive for unfair competition."  This Court disagreed and found that plaintiff did not establish a "substantial need" for un-redacted copies of the publishing agreements that

1    outweighed defendant's interest in maintaining the confidentiality of its financial

2    arrangements with a third party. The same is true here. CLS's claimed substantial

3    need does not outweigh BTD's interests in maintaining the confidentiality of its

4    protected and confidential information with KF and regarding the KF Deal.

        1.     **KF DEAL DOCUMENTS ARE TRADE SECRET OR OTHER CONFIDENTIAL COMMERCIAL INFORMATION, AND THEIR DISCLOSURE WOULD BE HARMFUL TO BTD**

8         In California, trade secrets include information that (1) derives independent

9    economic value, actual or potential, from not being generally known to the public or

10   to other persons who can obtain economic value from its disclosure or use; and (2) is

11   the subject of efforts that are reasonable under the circumstances to maintain its

12   secrecy. Cal. Civ. Code § 3426.1. The KF Deal documents that are the subject of this

13   motion all include BTD's trade secret or other confidential commercial information

14   which may be protected from disclosure pursuant to Fed. R. Civ. P. 26(c)(1)(g),

15   including details regarding all aspects of BTD's business that would be expected to

16   be discussed in the context of the negotiation for the sale of a business. (McKee Decl.

17   ¶ 4; Declaration of Richard Andrews ¶ 3). The information in the KF Deal documents

18   exchanged by BTD and KF was exchanged under a Mutual Confidentiality

19   Agreement dated March 11, 2015. (McKee Decl. ¶ 5.) It would be harmful for BTD

20   to disclose such confidential information to any of its competitors, but no competitor

21   moreso than CLS, who filed this lawsuit complaining about activities it had tolerated

22   for decades only to disrupt the KF Deal. (McKee Decl. ¶¶ 3, 6.) CLS and its counsel

23   would use the KF Deal documents for its strategic advantage in seeking to obtain a

24   settlement based on the value of BTD, or based on terms that would prevent the future

25   sale of BTD, instead of the merits of any claims or defenses in this lawsuit. (McKee

26   Decl. ¶ 7.)

27

28

Case No. 15CV1831 WQH-KSC

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR PRODUCTION 73-78

1   As addressed below, the KF Deal documents would not establish BTD's rights

2   and obligations under the 1987 Agreement, and they would not establish BTD's

3   ownership or lack of ownership of rights in trademarks and copyrights.

4   To this day, KF and BTD continue to have a shared interest in having the KF

5   Deal documents and any recent correspondence remain shielded from both public

6   view and from CLS and its counsel. (McKee Decl. ¶ 8.)

7   **2.     THE KF DEAL DOCUMENTS ARE NOT IMPORTANT TO**
        **THE CASE OR NECESSARY TO PREPARE THE CASE FOR**
8       **TRIAL**

9   CLS states in its introduction above that documents it seeks regarding the

10   contemplated transaction are relevant and proportional to the needs of the case in the

11   context of CLS seeking information regarding these four issues [*sic* – CLS lists five

12   issues] in this action:

13      (1) BTD's rights and duties under the CLS-BTD License Agreement of 1987;
        (2) BTD's rights in the mark "SITUATIONAL LEADERSHIP" (the "Mark")
14      or in marks derivative thereof;
        (3) the value or valuation of the items listed in point "2";
15      (3) [*sic*] BTD's rights in CLS' copyrights or derivative works thereof; and
        (4) [*sic*] the value or valuation of the items listed in point "3."
16

17   But just as the "royalty rates" in *Cross-Fit* did "not appear to have any

18   connection to [the] lawsuit" the KF Deal documents in this case do not have any

19   connection to the claims in the present lawsuit. *Cross-Fit,* 2016 WL 6476306, at *5.

20   The issues as framed by CLS above **_confirm_** that KF Deal documents are not

21   important to resolve the issues in this case.

22      **a.     KF DEAL DOCUMENTS FROM 2015 DO NOT**
                **ESTABLISH THE RIGHTS AND DUTIES UNDER THE**
23              **1987 AGREEMENT**
24

25   There is no plausible argument that correspondence between BTD and KF in

26   2015, and other 2015 correspondence relating to that potential transaction, is in any

27   way ***important to establish "BTD's rights and duties under the CLS-BTD License***

28   ***Agreement of 1987."*** In order to determine "BTD's rights and duties under the CLS-

20

1   BTD License Agreement of 1987" the Court will review the language of the 1987

2   Agreement. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its

3   interpretation, if the language is clear and explicit, and does not involve an

4   absurdity"); § 1639 ("When a contract is reduced to writing, the intention of the parties

5   is to be ascertained from the writing alone, if possible"). To establish "BTD's rights

6   and duties under the CLS-BTD License Agreement of 1987" the Court and parties

7   must look at the contract itself—not the 2015 KF Deal documents. Even if the

8   intention of the parties is not clear from the writing in the 1987 Agreement, the

9   conduct between the parties over the ensuing 28 years is immeasurably more relevant

10  than private correspondence between BTD and KF.

11          **b.      KF DEAL DOCUMENTS FROM 2015 DO NOT
12                  ESTABLISH BTD'S RIGHTS IN ANY TRADEMARKS OR
13                  COPYRIGHTS THAT CLS MAY CLAIM TO
                  RIGHTFULLY OWN**

14          Similarly, whatever BTD said or did not say to KF in 2015, or elsewhere in

15  2015 in the context of the potential transaction, ***will not establish "BTD's rights in***

16  ***the mark 'SITUATIONAL LEADERSHIP' or in marks derivative thereof" nor***

17  ***"BTD's rights in CLS' copyrights or derivative works thereof."*** Again, proportional

18  discovery on these issues would focus on the respective use and registration of alleged

19  trademarks over the years, authorship and registration of CLS' alleged copyrights,

20  and correspondence and agreements between CLS and BTD relating to trademarks

21  and copyrights, and any quality control exercised by CLS over BTD's use of any

22  trademarks. *See generally* 17 U.S.C. § 201 ("Copyright in a work protected under this

23  title vests initially in the author or authors of the work. The authors of a joint work

24  are coowners of copyright in the work"). CLS must prove its authorship or the chain-

25  of-title showing ownership of the claimed copyright, and the KF Deal documents

26  could have no relevance here. Nimmer on Copyright § 5.01 ("the person claiming

27  copyright must either himself be the author, or he must have succeeded to the rights

28

21                                          Case No. 15CV1831 WQH-KSC
JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR
PRODUCTION 73-78

0811-1026 / 676318.1

1  of the author"). Similarly, it is difficult to imagine how the KF Deal documents is

2  relevant to CLS's burden to prove its rights to the trademark. *See* McCarthy on

3  Trademarks and Unfair Competition § 16:35 (4th ed.) ("Trademark ownership inures

4  to the legal entity who is in fact using the mark as a symbol of origin"); § 18:38 ("A

5  trademark or service mark can be validly licensed to another to use but only if the

6  licensor exercises control over the nature and quality of the goods and/or services sold

7  by the licensee under the licensed mark. The law imposes on the trademark licensor

8  the affirmative duty to police the mark as used by licensees. If the licensor fails to

9  fulfill this duty, it may lose some or all rights in the mark").

10      BTD's rights in any trademarks or copyrights would not be established nor

11  refuted on the basis of any correspondence between BTD and KF in 2015, and other

12  2015 correspondence relating to that potential transaction.

13      c.      **EVEN IF KF DEAL DOCUMENTS FROM 2015 COULD**
              **ESTABLISH THE "VALUE" OR "VALUATION" OF**
14            **TRADEMARKS AND COPYRIGHTS USED BY BTD IN**
              **ITS BUSINESS, THAT VALUE WOULD NOT BE**
15            **IMPORTANT FOR RESOLVING ANY ISSUES IN THIS**
              **CASE**
16

17

18      *The "value or valuation" of trademarks and copyrights is not an issue in this*

19  *litigation*. CLS' justification that KF-related documents should be produced in order

20  to establish the value or valuation placed on trademarks or copyrights is the most

21  transparent indication yet of CLS' true motivations and behavior.

22      If CLS were to prevail on all of its claims in the lawsuit, CLS may seek

23  compensation for its ***damages***, i.e., its lost sales, and CLS may also seek disgorgement

24  of BTD's ***profits*** from the allegedly improper use of trademarks and copyrights. *See*

25  17 U.S.C. § 504 (remedies for copyright infringement) and 15 U.S.C. § 1117

26  (remedies for trademark infringement). But ***under no theory or claim could CLS***

27  ***recover the "value or valuation" that a third party would place on an acquisition of***

28

1    ***BTD's business or the use of trademarks and copyrights as part of that business.***

2 This would amount to an award of the net present value of future profits anticipated

3 by a third party acquirer that have not yet occurred, and would never occur if CLS

4 prevails in its request for injunctive relief prohibiting BTD from using certain

5 trademarks and copyrights. A calculation of damages and profits would be properly

6 based on the financial records kept by BTD and CLS in the ordinary course of

7 business, not based on the terms for a potential acquisition of BTD or any value placed

8 by a potential third party acquirer on BTD's business.

9       Accordingly, the KF Deal documents are not important for resolving any of the

10 five issues identified by CLS in this motion.

11 **C.**    **THE COMMON INTEREST DOCTRINE AVOIDS WAIVER OF**
**PRIVILEGE FOR MANY OF THE KF DEAL DOCUMENTS**

12

13       The Southern District of California has held that the common interest privilege

14 applies in merger/acquisition discussions because parties to a potential merger have a

15 shared legal interest in "in avoiding or reducing litigation," including the common

16 legal interest in whether a parties' products infringed third party IP, "and the

17 communications addressing the scope of IP [are] "certainly designed to further that

18 interest." *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, No. 10-CV-2088-BEN BGS,

19 2012 WL 760603 (S.D. Cal. Mar. 8, 2012). The court held as follows:

20     Medtronic and AFI were contemplating the wholesale acquisition of AFI
by Medtronic. The legal interests of AFI and Medtronic in evaluating

21 these legal interests were aligned as both parties were committed to the
transaction and working towards its successful completion. AFI and

22 Medtronic shared common legal interests in whether the products that
AFI and Medtronic would market infringed third party IP, and the

23 communications addressing the scope of the IP certainly were designed
to further that interest. The Court finds that this mutual interest in valid

24 and enforceable patents fits within the confines of the common legal
interests doctrine.

25

26     *Id.* (internal references omitted).

27

28

23
Case No. 15CV1831 WQH-KSC
JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE ON PLAINTIFF'S REQUESTS FOR
PRODUCTION 73-78

0811-1026 / 676318.1

1    BTD and KF and their counsel communicated under a Mutual Confidentiality

2   Agreement regarding the common legal interest in whether third parties, including

3   CLS, could have claims against BTD. These communications are privileged. *See e.g.*

4   *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, No. 10-CV-2088-BEN BGS, 2012 WL

5   760603 (S.D. Cal. Mar. 8, 2012) (common interest privilege applied as disclosures

6   were subject to a "strict confidentiality agreement"); *Microban Sys., Inc. v. Skagit Nw.*

7   *Holdings, Inc.*, No. C15-932-MJP, 2016 WL 7839220, at *1 (W.D. Wash. Aug. 17,

8   2016) (plaintiff and the third party "took steps specifically to maintain the privilege

9   under the circumstances, exchanging the communications pursuant to a

10   confidentiality agreement."). Furthermore, *In re Pac. Pictures Corp.*, 679 F.3d 1121,

11   1129 (9th Cir. 2012), the case cited by CLS above, suggests an even a lower standard

12   – that the common interest privilege can be implied. As shown above in BTD's

13   discovery responses, and repeated many times including in BTD's March 13, 2017

14   letter, BTD has consistently objected to the production of privileged documents and

15   said that it would only produce *non-privileged* documents.[8]

16

17   _____

18   [8] BTD has carefully reviewed the documents at issue and considered CLS' positions

19   regarding the common interest doctrine articulated in this joint motion. BTD provided

20   CLS on April 18, 2017 an amended version of the privilege log at issue. BTD has

     removed from the log many of the documents contained Fintz Decl. Ex. 22: the

21   privilege and common interest designation is removed for the following categories of

22   documents: (1) draft purchase agreements and disclosures schedules to draft purchase

     agreements shared with KF counsel, accountants, and advisors; (2) task lists prepared

23   by or shared with KF counsel, accountants, and advisors; (3) selected issues lists

24   drafted by or shared with KF counsel, accountants, and advisors; (4) term sheets

     drafted by or shared with KF counsel, accountants, and advisors; (5) emails from

25   individuals to themselves; and (6) emails with the investment bankers in the

26   distribution. ***But the proportionality objections and request for protective order still***

     ***apply to these documents containing confidential commercial information, so BTD***

27   ***will not produce them unless directed by the Court to do so over BTD's objections***.

28

1     In any event, as BTD stated its initial objections ***over six months ago*** to the

2    requests seeking KF Deal documents and repeatedly since then, BTD should not be

3    required to produce KF Deal documents because they are trade secret and confidential

4    commercial documents that are not important for resolving the issues in the case,

5    which are therefore not proportional to the needs of the case.[9] KF has similarly made

6    repeated objections ***over three months ago*** on January 13, 2017 on the basis of

7    privilege and on the basis that CLS was improperly seeking "disclosure of

8    confidential commercial information" and "disclosure of trade secrets." (Fintz Decl.

9    Ex. 15 at *passim*.)

10   **D.   CLS' PORTION OF THIS JOINT MOTION SEEKING TO COMPEL PRODUCTION IS REPLETE WITH MISREPRESENTATIONS AND**
11   **CONTINUING EFFORTS TO HOLD BTD TO A DOUBLE-STANDARD**

12    While it would be a waste of this Court's time for BTD to refute every

13  misleading statement by CLS in this motion, as many misrepresentations are not

14  material to the outcome in this motion, the more egregious and indefensible

15  misrepresentations in their section of this Joint Motion include the following:

16    &bull;  CLS states, "BTD ignored CLS' 3/15/17 letter" (*supra* at 8.) In fact, BTD

17       responded initially on 3/16/17 confirming an extension of the deadline to

18       file a motion "regarding the applicability of the common interest privilege

19       to the Korn-Ferry production (CLS' RFPs 73-78), and regarding the

20       proportionality and trade secret/confidentiality concerns relating to these

21

_____

22  [9] Notwithstanding BTD's objections, BTD produced KF Deal documents on March

23  14, 2017, including all non-privileged documents that were provided by BTD to KF in connection with the potential transaction in the "Intellectual Property" folder of the

24  Data Room. These ***1,142 pages of documents*** were produced in a good faith effort to

25  reach a compromise on this discovery dispute, providing CLS with the non-privileged KF Deal documents that have ***some relationship*** to the claims in this lawsuit. Indeed,

26  most of those documents produced on March 14, 2017 had already been produced

27  during BTD's search for responsive documents in locations outside of the transaction Data Room. Oleksiuk Decl. ¶ 4.

28

documents." (Oleksiuk Decl. Ex. A.) Mr. Fintz acknowledged this email on 3/16/17. (*Id.*) BTD followed up with a privilege log and substantive response letter on 3/27/17 that explicitly referred to and addressed the 3/15/17 letter. (Fintz Decl. Ex. 21.) ***Despite claiming BTD ignored the letter on page 8 above, CLS goes on at page 11 above to discuss BTD's 3/27/17 response to the 3/15/17 letter.***

- CLS argues that BTD has made an "untimely invocation" of the common interest doctrine with a privilege log that is "six months late." (*supra* at 9, 12.) But CLS itself has done 10 volumes of production since October 7, 2016 and not updated their "working draft privilege log" which was identified by CLS' counsel as "by no means a complete privilege log." Oleksiuk Decl. Ex B. CLS told BTD that they will update their log after they finish their "rolling production" but they have not finished their rolling production nor updated their privilege log despite the vast majority of their production having occurred after CLS' October 7, 2016 "working draft privilege log." (Oleksiuk Decl. ¶ 5.) CLS is in no position to complain about the alleged "delay" in obtaining BTD's log.

- CLS writes "These issues have become even more critical because BTD's most recent position is that the Mark is generic. (*See* BTD's 3/30/17 response to CLS' RFA 42, Fintz Decl. ("F.D.") Exh. 23)." In doing so, CLS misleads the Court with a suggestion that BTD took up this position just in the last two weeks—perhaps to justify its delay in filing this motion. ***But ever since this dispute started in 2015, BTD has had a claim or counterclaim pending seeking cancellation of the trademark registration for SITUATIONAL LEADERSHIP on the basis that it is generic.*** See, e.g., Counterclaim for cancellation of trademark based on genericness filed

1    April 27, 2016, Dkt. 28; Complaint in Related Case No. 3:15-cv-2142 filed

2    here in the S.D. Cal., September 25, 2015, Dkt. 1).

3    •  CLS says "the protective order ("PO") address[es] any confidentiality or

4       trade secret concerns." (*supra* at 6.) ***But CLS has unilaterally redacted and***

5       ***withheld trade secret information and holds BTD to a double-standard.***

6       (Oleksiuk Decl. ¶ 7.)

7    Unfortunately, these misrepresentations and efforts to hold BTD to a double-

8    standard are part of a larger pattern in this litigation. *See, e.g.*, Oleksiuk Decl. Ex. C

9    (letter dated December 28, 2016 providing numerous side-by-side examples of CLS

10   complaining about allegedly improper discovery conduct by BTD that CLS believed

11   appropriate for itself.)

12   **E.    CONCLUSION**

13       ***This is an improper fishing expedition.*** This motion confirms that CLS filed

14   this lawsuit for the improper purpose of disrupting the KF Deal. CLS would use KF

15   Deal documents to further its strategy in attempting to extract a maximum toll from

16   BTD for selling its company, ***but not in order to prove any of the specific claims at***

17   ***issue in this case or use the documents as evidence of CLS' damages***. The claims in

18   the lawsuit all relate to allegations of infringement of CLS' trademarks and

19   copyrights, and allegations of breaches of a 1987 Agreement. But the potential sale

20   of BTD to KF—and associated documents—simply are not important for litigating

21   those claims. Moreover, privilege in many of those documents is not waived due to

22   the common interest doctrine, and all of the documents at issue are protected trade

23   secrets as internal confidential information or information shared only under strict

24   confidentiality obligations that derives independent economic value from not being

25   known to CLS who can obtain economic value from its disclosure or use. If BTD is

26   required to produce documents regarding the KF Deal, even designated as "OUTSIDE

27   COUNSEL ONLY" under the Amended Protective Order, not only would that

28

1   eviscerate the common interest doctrine that this District recently recognized among

2   the buyer and seller of intellectual property in evaluating a potential third party claims,

3   but ***CLS would be afforded a double-standard and rewarded for filing these claims***

4   ***with the improper purpose of disrupting the KF Deal. CLS would likely seek to***

5   ***leverage its largest competitor's most sensitive documents for improper reasons***

6   ***other than preparing to take the claims in this lawsuit to trial***.

7         Accordingly, BTD hereby requests the CLS' motion to compel be denied, or in

8   the alternative that BTD be granted a protective order against the production of KF

9   Deal documents. BTD further requests its reasonable expenses incurred in opposing

10   the motion, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5)(B).

11

12   Dated: April 19, 2017                 Respectfully submitted,

13                             **ZUBER LAWLER & DEL DUCA LLP**

14                             MICHELE M. DESOER

                            JEFFREY J. ZUBER

15                             A. JAMES BOYAJIAN

16                             NATHANIEL L. FINTZ

17               By:  *s/ Jeffrey J. Zuber*

18                             Attorneys for Plaintiff and Counterclaim-

19                             Defendant Leadership Studies, Inc.

20   Dated: April 19, 2017                 Respectfully submitted,

21                               **COOLEY LLP**

22                             STEVEN M. STRAUSS (99153)

23                             DENNIS C. CROVELLA (190781)

                            JOHN PAUL OLEKSIUK (283396)

24

25               By:  *s/ John Paul Oleksiuk*

26                             Attorneys for Defendant and Counterclaim-

27                             Plaintiff Blanchard Training and

                            Development, Incorporated

28

*CONTINUATION OF LIST OF COUNSEL FROM FIRST PAGE CAPTION*

COOLEY LLP
STEVEN M. STRAUSS (99153)
sms@cooley.com
DENNIS C. CROVELLA (190781)
dcrovella@cooley.com
JOHN PAUL OLEKSIUK (283396)
jpo@cooley.com
4401 Eastgate Mall
San Diego, CA 92121
Telephone:   (858) 550-6000
Facsimile:   (858) 550-6420

Attorneys for Defendant / Counterclaim-Plaintiff
BLANCHARD TRAINING AND
DEVELOPMENT, INCORPORATED

0811-1026 / 676318.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **FILER'S ATTESTATION**

Pursuant to this Court's Electronic Case Filing Administrative Policies and Procedures, Section 2, Subparagraph f(4), the undersigned attests that all parties have concurred in the filing of this Joint Motion for Determination Of Discovery Dispute on Plaintiff's Requests for Production 73-78.

Dated: April 19, 2017                              Respectfully submitted,

                                                 **ZUBER LAWLER & DEL DUCA LLP**
                                                 MICHELE M. DESOER
                                                 JEFFREY J. ZUBER
                                                 A. JAMES BOYAJIAN
                                                 NATHANIEL L. FINTZ

                                    By:    *s/ Jeffrey J. Zuber*
                                           _____
                                           Attorneys for Plaintiff and Counterclaim-Defendant Leadership Studies, Inc.

1

2

## PROOF OF SERVICE

**Leadership Studies, Inc. v. Blanchard Training Development**
**Case No. 15CV1831 WQH-KSC**

3

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4

5

6

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, CA 90017, USA.

7

8

9

10

On April 19, 2017, I served true copies of the following document(s) described as **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE; DECLARATION OF NATHANIEL L. FINTZ; DECLARATION OF TOM MCKEE; DECLARATION OF RICHARD ANDREWS; SUPPLEMENTAL DECLARATION OF JEFFREY J. ZUBER; AND DECLARATION OF JOHN PAUL OLEKSIUK, ESQ.** on the interested parties in this action as follows:

11

12

13

14

15

16

17

18

Steven M. Strauss
Dennis C. Crovella
John Paul Oleksiuk
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Tel: 858-550-6000
Fax: 858-550-6420
Email: sms@cooley.com
        dcrovella@cooley.com
        jpo@cooley.com
Attorneys for Defendant and
Counterclaim-Plaintiff Blanchard
Training and Development,
Incorporated

19

20

21

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

22

23

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

24

Executed on April 19, 2017, at Los Angeles, California.

25

26

*s/ Imelda Aparacio*
Imelda Aparacio

27

28

0811-1026 / 676318.1