MICHELE M. DESOER (SBN 119667)
 *mdesoer@zuberlaw.com*
JEFFREY J. ZUBER (SBN 220830)
 *jzuber@zuberlaw.com*
A. JAMES BOYAJIAN (SBN 275180)
 *aboyajian@zuberlaw.com*
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California  90017
Telephone: (213) 596-5620
Facsimile:   (213) 596-5621

Attorneys for Plaintiff and
Counterclaim-Defendant Leadership Studies, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADERSHIP STUDIES, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLANCHARD TRAINING AND DEVELOPMENT, INC., a California corporation, and Does 1-10, inclusive,<br><br>Defendants.<br><br>BLANCHARD TRAINING AND DEVELOPMENT, INCORPORATED,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>LEADERSHIP STUDIES, INC.,<br><br>Counterclaim-Defendant. | CASE NO. 15CV1831 WQH-KSC<br><br>**DECLARATION OF JEFFERY J. ZUBER IN SUPPORT OF LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION TO DISMISS TRADEMARK CLAIMS (THIRD, FOURTH, AND FIFTH CAUSE OF ACTION) PURSUANT TO FED.R. CIV. P 12(B) (1), AND IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**<br><br>**[Filed Concurrently With Leadership Studies, Inc.'s Opposition to Blanchard Training's Motion to Dismiss Trademark Claims (Third, Fourth, and Fifth COA), And In the Alternative Motion for Summary Judgment**<br><br>Date:  May 22, 2017<br>Judge: Hon. William Q. Hayes<br><br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# DECLARATION OF JEFFREY J. ZUBER

I, Jeffrey J. Zuber, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Zuber Lawler & Del Duca LLP, attorneys of record for Plaintiff and Counterclaim-Defendant Leadership Studies, Inc. ("CLS"). I have personal knowledge of the facts stated herein and, if called to testify to these facts, I could competently do so.

2. All documents bearing a Bates label in the footer starting with "CLS" are true and correct copies of documents produced by Leadership Studies in this litigation, and all documents bearing a Bates label in the footer starting with "BLANCHARD" are true and correct copies of documents produced by Blanchard Training and Development, Inc. ("BTD") in this litigation.

3. The "1982 Agreement" refers to the letter agreement signed by John Myers of Leadership Productions, Inc. circa May 1982.

4. The "1987 License" refers to the license agreement entered into by CLS and BTD on or about December 19, 1987.

5. "BTD's MPA" refers to the memorandum of points and authorities filed by BTD in connection with the motion referenced in the caption hereto. [D.E. 65-1]

6. "CLS' MPA" refers to the memorandum of points and authorities filed by CLS concurrently herewith in opposition to the motion referenced in the caption hereto.

**BTD's Desperately Attempts To Conjure A Discovery Cover-Up Conspiracy To Legitimize Its Late Reliance On The Lifeless 1982 Agreement**

7. I reviewed the BTD's MPA at D.E. 65-1, p.13 l.19 to p.18 l.11. This section of the MPA constitutes over four pages devoted to manufacturing an elaborate CLS discovery cover-up conspiracy (the "Discovery Conspiracy"). Under this Discovery Conspiracy, CLS ostensibly intended to obscure publicly available

information concerning a moot defense.  I also reviewed John P. Oleksiuk's supporting declaration (the "Oleksiuk Decl.").

8. To the contrary, as discussed herein, BTD's new "theory" that the 1982 Agreement somehow overrides the 1987 License is one concocted by its counsel in the course of this litigation, but one that is contradicted by the trail of documents produced by both sides.  BTD's current lawyers in this action apparently stumbled upon and are attempting to resurrect this lifeless 1982 Agreement, and accordingly concocted this Discovery Conspiracy to attempt to gloss-over years of adherence to the 1987 License as the sole contract governing the ownership and use of the Mark.

9. Most importantly, for reasons set forth in detail in the papers filed herewith, ***CLS never considered the 1982 Agreement relevant because it was superseded by the 1978 License***.

10. As set forth in the Declaration of Maureen Shriver ("Shriver Decl."), CLS' Chief Executive Officer, filed and served concurrently herewith, CLS had no knowledge of (a) the fact that LSP changed its name to Leadership Studies, and later Leadership Studies, Inc. or (b) the existence of the 1982 Agreement until those documents turned up in the course of discovery.  *See* Shriver Decl. ¶¶2, 14.

11. Likewise, no one at CLS, had reason to believe that the 1982 Agreement had any bearing on the parties' relationship with regard to the Mark, particularly since both Kenneth Blanchard and Richard Andrews confirmed to Ms. Shriver that the only agreements in that regard were the 1987 License, and an August 8, 2006 one-page agreement concerning use of the parties' marks in China. *See* Shriver Decl. ¶¶ 25-33.

12. The 1987 License discusses the history of the relationship between Dr. Hersey, Dr. Blanchard, the Mark, and the relevant companies, spanning the 1960s to the present (Dec. 19, 1987), ***but does not mention the 1982 Agreement let alone its ongoing relevance***.  BTD's eleventh-hour argument that the 1987 License was intended to be an extension of the 1982 Agreement is desperate and poorly

considered.

13.   Instead, as discussed at length in CLS' MPA, and as set forth in the documents referenced therein, in the Response to the Statement of Undisputed Material Facts ("RSUMF"), and in the Declaration of Michele M. Desoer ("Desoer Decl.") all submitted herewith, as the parties negotiated in advance of the 1987 License, they took into account the existence of LSP, and the drafts of what ultimately became the 1987 License reflected the change in the relevant entities' names.

14.   BTD's Answer to Leadership Studies' Third Amended Complaint finally identified the 1982 Agreement as a possible defense over a year after the lawsuit started.  (D.E. 52, p.32 ¶ 31 to p.33 ¶ 32).  No prior pleading mentioned it.

## CLS Produced The So-Called "Obscured" Information To BTD
### *In Initial Disclosures On August 3, 2016*

15.   BTD's MPA and the Oleksiuk Decl. completely misrepresent the timing of the production of documents that readily disclosed the relationship between LSP and CLS.

16.   On August 3, 2016, CLS produced its initial disclosures to BTD consisting of documents Bates numbered CLS-00000001 to CLS-00005745.  A true and correct copy of the cover letter effecting the production is attached to RSUMF as Exh. 52.

17.   The information that BTD implies it figuratively beat out of CLS, revealing that MED disappeared when it merged into the surviving entity Leadership Studies, was **already produced to BTD months earlier in initial disclosures**.  The language on this *publicly filed and publicly available* "Agreement of Merger" is clear and unambiguous concerning the merger of MED into Leadership Studies, the survival of Leadership Studies, and the disappearance of MED.  A true and correct copy of this Agreement of Merger is attached to RSUMF as Exh. 22 (CLS-00005252-5256).

18. BTD also falsely claims that the "smoking gun" documents it needed to finally understand the evolution of Leadership Studies Productions, Inc. ("LSP") to Leadership Studies, and then to Leadership Studies, Inc., were first obtained from (*again publically available*) documents filed with the California Secretary of State on Nov. 28, 2016—three months later than CLS' initial disclosures. BTD's MPA at D.E. 65-1, p.15 l.21 to p.16 l.6; Oleksiuk Decl. ¶¶ 14 and 15 and Exh. L at 231-42.

19. However, the information disclosed in BTD's "smoking gun" documents *was already disclosed by CLS,* in a U.S. Copyright Office 'Form CA', when **produced to BTD over three months earlier in initial disclosures**. This document unequivocally states that, on July 15, 1985, LSP changed its name to Leadership Studies, and that in July 2009, Leadership Studies changed its name to Leadership Studies, Inc. The document also made clear both times that there was no transfer of ownership, simply a change in title. A true and correct copy of this document is attached to RSUMF as Exh. 42 CLS-00000568.

20. Compounding the absurdity of BTD's Discovery Conspiracy accusations, another 'Form CA' document, also **already produced to BTD months earlier in initial disclosures**, contained the same information and disclosed the name changes from LSP to Leadership Studies to Leadership Studies, Inc. A true and correct copy of this document is attached to RSUMF as Exh. 42 at CLS-00000645.

21. Accordingly, to the extent that CLS had attempted to "obscure" evidence from BTD, it was doing so extremely poorly because it repeatedly, starting in its initial disclosures, produced documents that disclosed the facts it supposedly attempted to conceal. Every single shred of corporate information that BTD claims CLS attempted to hide in this great Discovery Conspiracy was in fact produced with redundancy *on the first day of discovery,* in CLS's initial disclosures.

**CLS's Discovery Responses Were Truthful, Complete, And Transparent**

22. After reading BTD's four page accusation of CLS' supposed unethical

efforts to hide relevant information from BTD, I reviewed the relevant discovery responses complained of in the motion papers and sought to reconcile them with BTD's parade of accusations. Although I knew that there had been no consideration whatsoever by CLS of avoiding questions on the 1982 Agreement, an agreement the parties long-ago treated as irrelevant, I was concerned that possibly, through inadvertence, a response might have been misleading.

23.   I confirmed that all of the relevant responses were consistent with CLS's corporate documents that were produced in the initial disclosures.

24.   The more precise information on corporate history (essentially, the two items in ¶¶ 17-18, *supra*) learned in BTD's *tortuous "hunt for the truth"* were available to BTD from these documents produced in CLS's initial disclosures.

25.   In its motion, BTD accuses CLS of claiming

> that MED 'merged with Leadership Studies Productions, Inc. to form 'Leadership Studies,' the entity later renamed 'Leadership Studies, Inc.' (a.k.a. CLS), as the surviving entity,' (Oleksiuk Decl. Ex. K at 216.) But Leadership Studies also stated in the same document that 'Leadership Studies was the surviving entity of the 1985 merger between MED and Leadership Studies Productions.' (Oleksiuk Decl. Ex. K at 213.) Once again, the verified responses were incomplete and misleading.

BTD's MPA at D.E. 65-1, p.15:10-20. Both of these statements in CLS's responses were pulled directly from the corporate document Bates numbered CLS-00000645, *supra*, which states that "Management, Educations & Development, Inc. (M.E.D.) ***merged with*** Leadership Studies Productions, Inc. (L.S.P.) on September 30, 1985 ***to form Leadership Studies***, a California Corporation."[1] (Emphasis added.) Thus, the responses were derived from company documents already shared with BTD.

26.   Because the explanation of corporate history in the document was complete on its face, CLS reasonably relied upon it and didn't seek further documents that might differently describe the MED merger or name changes.

---

[1] See the last section on this page, third paragraph from the bottom.

27. CLS did not order publicly available documents concerning its corporate history because it had no reason to deem them relevant beyond what CLS had already produced, and which already disclosed the corporate history of the relevant entities.

**BTD's Production Of Redundant Publically Available Documents Had Zero Effect On CLS's Amended Responses Of Jan. 11, 2017**

28. BTD later requested additional discovery specifically related to the 1982 Agreement, after which CLS performed a subsequent document search and prepared responses. On Jan. 10, 2017, CLS located another copy of the "Agreement of Merger". A true and correct copy of this later produced copy of the already-produced Agreement of Merger is attached to the RSUMF as Exh. 23 (CLS-00022444-45).

29. When reviewing this document, CLS realized that the prior discovery responses needed to be amended to explain that MED merged into Leadership Studies, with MED disappearing and Leadership Studies surviving. These responses were quickly amended, verified, and served the very next day, January 11, 2017 as confirmed in BTD's MPA at D.E. 65-1, p.16 l.27 to p.17 l.8 (BTD's SUMF ¶ 2).

30. CLS produced the additional copy of the Agreement of Merger on March 8, 2017 with Bates numbers CLS-00022444-45. This was duplicative of the document produced by CLS in initial disclosures on Aug. 3, 2017 as set forth above.

31. BTD used these benign circumstances to recklessly prop up its Discovery Conspiracy theory, pointing out that CLS's amended responses served Jan. 11, 2017 followed BTD's production of publicly available corporate documents on Nov. 29, 2016. BTD' MPA at D.E. 65-1 p.15 l.21 to p.17 l.8. BTD's self-serving fill-in-the-blanks accusation process is once again false.

32. I have worked on this litigation since its inception, but I have rarely performed first-level document review. When I was supervising the preparation of CLS's Jan. 11, 2017 amended discovery responses, I was not even aware that we

had received any CLS corporate documents from BTD. If they had been reviewed and coded by that time, they were not presented to me as anything worth second-level review. The first time I was even aware that BTD produced these documents was when they were identified as the silver bullet in BTD's Discovery Conspiracy theory in the present motion papers.

33. CLS never thought that BTD would accuse CLS of withholding information on this non-issue and, as CLS's disclosures demonstrate, the *information had in fact been produced to BTD in the very first document production*. BTD is the only party obscuring the record here, attempting to explain why the 1982 Agreement had been forgotten for so long. This not a CLS cover-up, this is a desperate BTD eleventh-hour resurrection ceremony aimed at raising the 1982 Agreement from the dead.

### CLS's RFA Responses Were Amended
### Only After Discussions with John Myers

34. BTD also argues that the CLS "evaded" BTD's third set of Requests for Admission ("3rd RFAs") due to furtherance of the Discovery Conspiracy. BTD's MPA at D.E. 65-1, p.16 ll.7-14, p.17 l.9 to p.18 l.7. Again, this is nonsense.

35. CLS served responses to BTD's 3rd RFAs on January 17, 2017. These responses correctly responded to the requests posed. Specifically, John Myers was LSP's President from 1979 to 1983, is no longer affiliated with CLS, and has not been for many years. Declaration of John Myers ("Myers Decl.") ¶¶ 1-2.

36. As before, CLS delved further into information not presently within CLS' knowledge to provide thorough discovery responses. We contacted John Myers to authenticate his signature on the 1982 Agreement, and whether he had *general authority to sign these types of agreements* (which was the request posed, *not whether he had authority to sign the 1982 Agreement, specifically*).

37. CLS's amended responses to RFAs served on February 6, 2017 reflect the information obtained from Mr. Myers, an individual who has had *no affiliation*

*with CLS for over thirty (30) years.* CLS further confirmed that Mr. Myers had authority to sign the 1982 Agreement.

**BTD's Discovery Responses *Admit Its Use of Mark Was Under 1987 License***

38. BTD's responses and amended responses to Requests for Admission numbers 6 and 7 have consistently admitted that its use of the "Situational Leadership®" (the "Mark") has been pursuant to the 1987 Agreement. A true and correct copy of this record is attached to the RSUMF as Exh. 53.

39. Nothing in BTD's amended responses has ever indicated that it has used the Mark pursuant to the 1982 Letter Agreement. *See, e.g., id.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of May, 2017, at Los Angeles, California.

_____
Jeffrey J. Zuber