FILED

17 JUN 28 AM 10: 01

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:    AJS    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADERSHIP STUDIES, INC., a California corporation,<br><br>          Plaintiff,<br><br>v.<br><br>BLANCHARD TRAINING AND DEVELOPMENT, INC. a California corporation,<br><br>          Defendant. | Case No.: 15cv1831-WQH(KSC)<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE (PLAINTIFF'S DOCUMENT REQUEST NOS. 73-78)**<br><br>**[Doc. Nos. 70 and 72.]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute. [Doc. Nos. 70 and 72.][1] In the Joint Motion, plaintiff seeks an order compelling defendant to produce documents in response to Request for Production of Document Nos. 73 through 78. [Doc. No. 72, at p. at p. 2-6.] Alternatively, plaintiff wants the Court to conduct an *in camera* review to determine whether defendant's privilege claims are valid under the common interest doctrine. [Doc. No. 72, at p. 16.]

---

[1]    Doc. No. 70 refers to the redacted version of the parties' Joint Motion that appears in the public record. Doc. No. 72 refers to the un-redacted version of the parties' Joint Motion.

Defendant argues that plaintiff's request for an order compelling production of all documents responsive to Request Nos. 73 through 78 should be denied, because it has already produced responsive documents that are non-confidential and non-privileged. [Doc. No. 72, at p. 16-18.] As to responsive documents that purportedly include trade secrets or confidential commercial information, defendant argues that the Court should not order them produced to plaintiff, who is defendant's competitor, because they are not important to resolving matters at issue in the case and because production would be harmful to defendant's business interests. Defendant also requests a protective order pursuant to Federal Rule of Civil Procedure 26(c) precluding the production of certain confidential documents. As to other responsive documents, defendant argues that its assertion of the attorney-client privilege is appropriate based on the common interest doctrine. Both parties seek monetary sanctions against the other for costs and fees related to resolving their dispute. [Doc. No. 72, at p. 16, 29.]

For the reasons outlined more fully below, the Court finds that plaintiff's request for an order compelling defendant to produce all documents responsive to Request Nos. 73 through 78 must be DENIED as untimely and because relevance and/or proportionality have not been demonstrated under Federal Rule 26(b)(1). In addition, plaintiff's request for an *in camera* review is DENIED as unnecessary and inappropriate under the circumstances presented. Defendant's request for a Federal Rule 26(c) protective order as to confidential documents exchanged with a third party is also DENIED as untimely and because defendant did not make the required showing. Finally, the Court finds that the parties' mutual requests for monetary sanctions must be DENIED.

### *Background*

The operative Third Amended Complaint was filed on November 7, 2016 and includes nine causes of action for: (1) breach of written contract; (2) breach of the covenant of good faith and fair dealing; (3) trademark infringement in violation of the Lanham Act; (4) trademark infringement via reverse confusion under the Lanham Act;

2

1  (5) fraud in obtaining registered marks; (6) unfair competition; (7) copyright

2  infringement; (8) an accounting; and (9) declaratory relief. [Doc. No. 49, at pp. 1, 11-

3  38.] Since two of plaintiff's claims are asserted under Federal law, jurisdiction in this

4  case is based on Title 28, United States Code, Section 1331. [Doc. No. 49, at p. 3.]

5       Plaintiff Leadership Studies, Inc., doing business as Center for Leadership Studies

6  ("CLS"), represents in the Third Amended Complaint that it "is engaged in the business

7  of teaching and promoting the 'Situational Leadership Model,' which enables managers,

8  salespeople, peer leaders, teachers, and parents to interface with and influence others

9  more effectively. [Plaintiff] conducts workshops and certification processes with its

10  customers, who use its unique curriculum to guide the customers onto the path of

11  becoming more effective leaders." [Doc. No. 49, at p. 2.] Defendant is essentially

12  involved in the same type of business. [Doc. No. 49, at p. 2.]

13       Plaintiff's founder, Paul Hersey ("Dr. Hersey"), developed the "Situational

14  Leadership Model" methodology while working with Ken Blanchard ("Dr. Blanchard"),

15  and the two became partners in CLS. [Doc. No. 49, at p. 4.] Dr. Blanchard later sold his

16  interest in CLS, released his rights to any of CLS's copyrighted materials, and assigned

17  his interest in a pending trademark application for the mark "Situational Leadership" to

18  CLS. [Doc. No. 49, at p. 4.]

19       Next, Dr. Blanchard decided to open his own company, apparently known as

20  Blanchard Training and Development, Inc., the defendant in this action. [Doc. No. 49, at

21  p. 2, 5.] Defendant entered into a License Agreement with plaintiff in 1987 to use the

22  trademark "Situational Leadership." [Doc. No. 49, at p. 4.] According to the Third

23  Amended Complaint, the License Agreement only permitted the use of the Situational

24  Leadership trademark "in association with goods and services which [met] and

25  [exceeded] a level of quality exemplified by the goods and services presently offered

26  under the mark 'Situational Leadership.'" [Doc. No. 49, at p. 4.] Under the License

27  Agreement, defendant was also obligated to cooperate with plaintiff in maintaining the

28

3

1  viability of the trademark and was required to use the "appropriate statutory notice
2  symbol" (*i.e.*, Situational Leadership®). [Doc. No. 49, at p. 5.]

3      In 2006, plaintiff learned that defendant "registered the mark 'Situational
4  Leadership II' in English in China." [Doc. No. 49, at p. 6.] To avoid litigation, plaintiff
5  and defendant entered into an agreement allowing defendant to use the "Situational
6  Leadership" mark in English in China. [Doc. No. 49, at p. 7.] However, defendant then
7  "commenced a pattern and practice of registering the marks 'Situational Leadership' and
8  'Situational Leadership II' in other countries" in violation of the License Agreement
9  [Doc. No. 49, at p. 7.] As a result of defendant's actions, plaintiff has been denied the
10  ability to register the mark in these other countries. [Doc. No. 49, at p. 7.]

11      Plaintiff also claims that defendant began marketing its product as "Situational
12  Leadership® II – the SLII Experience" and then applied to register "SLII" as a
13  trademark. [Doc. No. 49, at p. 8.] The acronym "SLII" did not "trigger any potential
14  conflicting marks with the Patent and Trademark Office or other notice to [plaintiff] that
15  [defendant] claimed ownership of this derivative mark." [Doc. No. 49, at p. 8.] In
16  addition, plaintiff claims that defendant did not disclose the existence of a senior mark
17  (*i.e.*, Situational Leadership®) in its trademark application even though "SLII" is
18  shorthand for "Situational Leadership® II." [Doc. No. 49, at p. 8.] According to the
19  Third Amended Complaint, defendant's position is that its use of "Situational Leadership
20  II" falls outside of and is not governed by the License Agreement. [Doc. No. 49, at p. 9.]

21      Plaintiff further alleges in the Third Amended Complaint that "Situational
22  Leadership II" and "SLII" are "confusingly similar" and are "likely to cause, and cause,
23  consumer confusion, thereby infringing upon [plaintiff's] rights to its mark, 'Situational
24  Leadership.'" [Doc. No. 49, at p. 9.] Other allegations in the Third Amended Complaint
25  are that defendant is marketing its products in a manner that is detrimental and
26  disparaging to plaintiff. [Doc. No. 49, at pp. 9-11.] Plaintiff represents that it terminated
27  the License Agreement in a letter to defendant on September 30, 2015. [Doc. No. 49, at
28  p. 11.]

## Discussion

### I. *Timeliness.*

Defendant argues that plaintiff's request for an order compelling production of documents responsive to Request Nos. 73 through 78 and plaintiff's alternative request for an *in camera* review should be denied as untimely. [Doc. No. 72, at p. 17 n.7.] As with prior Scheduling Orders [Doc. Nos. 43 and 53], the Second Amended Scheduling Order in this case states as follows:

> 1. . . . *All discovery motions must be filed within 45 days of the service of an objection, answer, or response which become the subject of dispute, or the passage of a discovery due date without response or production*, and only after counsel have met and conferred and have reached an impasse with regard to the particular issue. . . . In any case, the event giving rise to a discovery dispute is not the date on which counsel reach an impasse in meet and confer efforts. If the discovery dispute concerns written discovery requests, the parties shall submit a joint statement entitled, "Joint Motion for Determination of Discovery Dispute" with the Court. (For further information on resolving discovery disputes, see Judge Crawford's 'Chambers' Rules' which are accessible via the Court's website at www.casd.uscourts.gov.) A failure to comply in this regard will result in a waiver of a party's discovery issue. *Absent an order of the Court, no stipulation continuing or altering this requirement will be recognized by the Court.*
>
> * * * *
>
> 15. The dates and times set forth herein will not be modified except for good cause showing.

[Doc. No. 59, at p. 2 (emphasis added).]

Federal Rule of Civil Procedure 16(b)(4) also states as follows: "A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4).

On September 26, 2015, defendant served plaintiff with objections to Document Request Nos. 73 through 78 and declined to produce any responsive documents. [Doc.

5

No. 72, at p. 8.] Defendant then served plaintiff with amended responses/objections to these requests on November 23, 2016 and agreed to produce some documents. [Doc. No. 72, at p. 8.] The parties' Joint Motion was not filed until April 19, 2017, long after the 45-day deadline expired. [Doc. No. 72.] Apparently, the parties did not follow the Court's Scheduling Orders and informally agreed to "an ongoing meet-and-confer process" that continued over an extended period of time. [Doc. No. 72, at p. 16 n.7.] The parties did not seek, and the Court did not grant, a request for an extension of time for the parties to present their discovery. Accordingly, the Court finds that plaintiff's request for an order compelling defendant to produce documents in response to Document Request Nos. 73 through 78 and plaintiff's alternative request for *in camera* review must be denied as untimely and because plaintiff's requests are unsupported by a showing of good cause for extending the time for the parties to present their discovery dispute to the Court.

## II. *Procedural Background Relevant to the Parties' Discovery Dispute.*

Plaintiff's Document Request Nos. 73 through 78 all seek documents related to a "recently-contemplated transaction" between defendant Blanchard Training and Development, Inc. and third party Korn/Ferry International ("Korn/Ferry"). [Doc. No. 72, at p. 7.] Although the parties' papers indicate the transaction was not completed, Korn/Ferry considered purchasing defendant. [Doc. No. 72, at pp. 7, 16-17.] Document Request Nos. 73 through 78 seek production of "[a]ll documents" showing communications between defendant and Korn/Ferry concerning: (1) defendant's "alleged rights" in the mark "Situational Leadership®" (Req. No. 73); (2) Korn/Ferry's potential acquisition of defendant (Req. No. 74); (3) defendant's rights under the 1987 license agreement (Req. No. 75); (4) plaintiff (Req. No. 76); and (5) this litigation (Doc. No. 77). [2] [Doc. No. 72, at pp. 2-6.]

---

[2] On July 29, 2016 plaintiff also attempted to subpoena the same documents directly from Korn/Ferry, but Korn/Ferry also objected to the requests and declined to produce

On September 26, 2016, defendant objected that Document Request Nos. 73 through 78 are overly broad, unduly burdensome, and disproportional to the needs of the case. Defendant also objected because the requests seek third party, confidential documents that are "subject to a non-disclosure agreement." [Doc. No. 72, at pp. 2-6.] At this time, defendant declined to produce any responsive documents. [Doc. No. 72, at p. 8.]

After meeting and conferring, defendant served plaintiff with amended responses on November 23, 2016. [Doc. No. 72, at p. 8.] These amended responses repeated the same general objections included in defendant's initial responses and added that the requests seek "duplicative documents." [Doc. No. 72, at pp. 2-6.] However, at this time, defendant agreed to conduct a search and produce "non-privileged and non-duplicative" Korn/Ferry documents or communications "with redactions of irrelevant content" that specifically relate to: (1) defendant's alleged rights in the Situational Leadership® trademark; (2) the 1987 license agreement; (3) this litigation; and (4) the value or valuation of Situational Leadership. [Doc. No. 72, at pp. 2-6, 8.]

Later, on March 27, 2017, defendant served plaintiff with a privilege log. [Doc. No. 72, at pp. 12-13.] In addition, during meet and confer sessions, plaintiff claims that defendant raised a new objection based on the common interest doctrine. [Doc. No. 72, at p. 10.]

On April 19, 2017, the parties filed their Joint Motion. [Doc. No. 72.] In the Joint Motion, defendant made the following representations:

---

any responsive documents. [Doc. No. 72, at p. 8.] One of Korn/Ferry's objections was that the Stipulated Protective Order entered to govern the exchange of confidential information between plaintiff and defendant did not sufficiently protect the rights of third parties. [Doc. No. 72, at p. 9, citing Doc. No. 41.] As a result, a Stipulated Amended Protective Order was entered that was "specifically designed" to protect Korn/Ferry. [Doc. No. 72, at p. 9, citing Doc. No. 62.] However, Korn/Ferry still declined to produce any responsive documents. [Doc. No. 72, at p. 9.]

1       ***[Defendant] has produced responsive documents including 1,142***
2   ***pages constituting the vast majority of documents from the 'IP Folder' in***
    ***the document database (the 'Data Room') shared between [defendant] and***
3   ***[Korn/Ferry] relating to the [Korn/Ferry] Deal, as well as documents***
4   ***relating to profits and damages.*** Discovery is ongoing and [defendant]
    anticipates that both [defendant] and [plaintiff] will be producing additional
5   financial documents. However, [defendant] has not produced the documents
6   that relate ***only to*** the [Korn/Ferry] deal, such as documents containing
    proposed [Korn/Ferry] Deal terms and documents containing discussion of
7   the logistics of the potential sale and the potential legal risks associated with
8   the [Korn/Ferry] Deal, as this confidential information is not important for
    litigating the claims and defenses in this lawsuit, and many of those
9   documents are privileged documents that remain protected under the
10  common-interest doctrine.

11  [Doc. No. 72, at p. 18 (emphasis in original).]

12      On April 18, 2017, one day before the parties' Joint Motion was filed, and after

13  "carefully" reviewing plaintiff's arguments in the Joint Motion, defendant served

14  plaintiff with a revised privilege log. [Doc. No. 72, at p. 25 n.8.] The revised privilege

15  log reflects defendant's decision, after "carefully" reviewing plaintiff's arguments, to

16  withdraw its privilege claims as to several categories of documents. As to the following

17  categories of documents, defendant removed privilege and common interest

18  designations: "(1) draft purchase agreements and disclosures scheduled to draft

19  purchase agreements shared with [Korn/Ferry's] counsel, accountants, and advisors; (2)

20  task lists prepared by or shared with [Korn/Ferry's] counsel, accountants, and advisors;

21  (3) selected issues lists drafted by or shared with [Korn/Ferry's] counsel, accountants,

22  and advisors; (4) term sheets drafted by or shared with [Korn/Ferry's] counsel,

23  accountants, and advisors; (5) emails from individuals to themselves; and (6) emails

24  with the investment bankers in the distribution." [Doc. No. 72, at p. 25.] However, as to

25  all of these categories of documents, defendant still seeks to protect them from

26  disclosure based on relevance, proportionality, and confidentiality concerns since the

27  documents contain confidential commercial or trade secret information. [Doc. No. 72, at

28  p. 25.] Defendant has not produced these remaining documents, because plaintiff is a

8

competitor and defendant believes that its business interests would be harmed if it

disclosed confidential trade secret and commercial information to plaintiff. [Doc. No.

72, at pp. 16-18, 20-21, 25-26 n.8.] In support of its decision to withhold these

documents from production, defendant submitted a copy of a Mutual Confidentiality

Agreement and a Declaration by its chief executive officer. The Declaration states that

these documents include trade secret and/or confidential commercial information that

was only disclosed to Korn/Ferry pursuant to the Mutual Confidentiality Agreement and

that defendant believes its business interests would be harmed if the documents are

produced to plaintiff. [Doc. No. 70-27, at p. 2; Doc. No. 70-28, at pp. 1-7.]

In sum, defendant has represented that in response to document Request Nos. 73

through 78 it has produced all non-confidential and non-privileged documents.

However, defendant continues to withhold responsive documents that are privileged or

that include confidential commercial information or trade secrets.

### III.  _Standards Governing the Scope of Discovery._

Effective December 1, 2015, the scope of allowable discovery under Federal Rule

of Civil Procedure 26(b)(1) is as follows: "Parties may obtain discovery regarding any

non-privileged matter that is relevant to any party's claim or defense and proportional to

the needs of the case, considering the importance of the issues at stake in the action, the

amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit. Information within

this scope of discovery need not be admissible in evidence to be discoverable."

Fed.R.Civ.P. 26(b)(1).

The 2015 amendments to Rule 26 "eliminated the 'reasonably calculated' phrase as

a definition for the scope of permissible discovery." _In re Bard IVC Filters Products_

_Liability Litigation_, 317 F.R.D. 562, 564 (D. Ariz. 2016). "The test going forward is

whether evidence is 'relevant to any party's claim or defense,' not whether it is

'reasonably calculated to lead to admissible evidence.'" _Id._ at 564.

9

"The 2015 amendments also added proportionality as a requirement for permissible discovery. Relevancy alone is no longer sufficient – discovery must also be proportional to the needs of the case. . . . [¶]The inquiry to be conducted under the proportionality requirement . . . requires input from both sides." *Id.* In this regard, the advisory committee notes for the 2015 amendments state in part as follows:

> This change reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections. [¶][T]he proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations.
>
> Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes. . . .
>
> The parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding. A party requested to provide discovery may have little information about the importance of the discovery in resolving the issues as understood by the requesting party. . . . A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination. *A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.* The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

Fed. R. Civ. P. 26(b) advisory committee's note (2015 amendments) (emphasis added).

Plaintiff's portion of the Joint Motion includes only conclusory, unsupported arguments as to why it believes it is entitled to an order compelling defendant to produce all of the confidential Korn/Ferry documents that are responsive to Request Nos. 73 through 78. According to plaintiff, "key issues" in the case are: (1) defendant's rights

and duties under the 1983 License Agreement; (2) defendant's rights in the mark "SITUATIONAL LEADERSHIP" or marks derivative thereof; (3) defendant's rights in plaintiff's copyrights or derivative works; and (4) the value or valuation the marks or copyrights. [Doc. No. 72, at p. 7.] Plaintiff's theory is that these topics would also have been "central to the documents" exchanged between defendant and Korn/Ferry as part of their acquisition discussions and would reveal "a discussion of the [intellectual property] rights at issue or of the [intellectual property's] value." [Doc. No. 72, at p. 7.] Plaintiff also states that this information is "critical" because defendant has recently taken the position that one of the marks at issue is "generic," and if defendant really believes the mark is "generic" it would be reflected in the Korn/Ferry documents. [Doc. No. 72, at p. 7.] As a result, plaintiff argues that it is entitled to discover any and all communications between defendant and Korn/Ferry that relate to these topics. In conclusory fashion, plaintiff argues that the Korn/Fern documents are "highly relevant" to its claims and should be produced because of the "vital issues at stake," the significant amount in controversy, the "low production burden" to defendant; the importance of the documents in resolving key issues; and the existing Protective Order governing the exchange of confidential information between the parties. However, plaintiff cites no supporting statutory or case law and does not explain how the information it expects to uncover in the confidential Korn/Ferry documents relates to the parties' claims or defenses.

According to defendant, it produced the above-cited 1,142 pages of responsive documents "in a good faith effort to reach a compromise" on the parties' discovery dispute and because these documents "have *some relationship* to the claims in this lawsuit." [Doc. No. 72, at p. 26 (emphasis in original).] However, defendant states that "most of these [same] documents" were produced previously because they were also found "in locations outside of the transaction Data Room."[3] [Doc. No. 72, at p. 26.]

---

[3] A supporting Declaration by counsel further states as follows: "In [defendant's] production of documents to [plaintiff] on March 14, 2017, [defendant] produced all non-

1  Defendant argues that plaintiff seeks disclosure of the confidential and/or
2  privileged Korn/Ferry Deal documents for an improper purpose and not because they are
3  important or necessary to prove plaintiff's trademark, copyright, or contract-based
4  claims or to refute defendant's defenses thereto. [Doc. No. 72, at pp. 16-18.] Citing
5  relevant statutory and case law, defendant argues convincingly that the subject
6  documents are not "highly relevant" or "important to the issues at stake in the action,"
7  because they are not the type of evidence necessary to establish defendant's rights and
8  duties under the License Agreement of 1987, defendant's rights in any of the subject
9  marks, or plaintiff's alleged damages should it prevail on its causes of action. [Doc. No.
10  72, at p. 17.]

11  First, citing California contract law, defendant contends, and plaintiff does not
12  dispute, that the Court will look to the language of the 1987 agreement and possibly the
13  conduct of plaintiff and defendant over the course of their relationship to establish
14  defendant's rights and duties under the 1987 agreement. [Doc. No. 72, at p. 22.] There
15  is nothing to indicate that the confidential Korn/Ferry Deal documents plaintiff seeks in
16  response to Request Nos. 73 through 78 contain any direct evidence of the relationship
17  between plaintiff and defendant that would be necessary for plaintiff to prove an alleged
18  breach of the 1987 agreement.

19  Second, defendant cites copyright and trademark law and argues that the
20  confidential Korn/Ferry Deal documents would not be able to establish any rights to the
21  subject marks and copyrights. Rather, defendant contends, and plaintiff does not
22  dispute, that evidence relevant to these causes of action would be found in "the
23  respective use and registration of alleged trademarks over the years, authorship and

24

25

26  privileged documents that were provided by [defendant] to [Korn/Ferry] in connection
27  with the potential transaction in the "Intellectual Property" folder of the Data Room."
28  [Doc. 70-32, at p. 2.]

15cv1831-WOH(KSC)

registration of [plaintiff's] alleged copyrights, and correspondence and agreements between [plaintiff] and [defendant] relating to trademarks and copyrights, and any quality control exercised by [plaintiff] over [defendant's] use of any trademarks." [Doc. No. 72, at p. 22.] Thus, without more, there is nothing to suggest that the confidential Korn/Ferry Deal documents plaintiff seeks in response to Request Nos. 73 through 78 include the type of direct evidence that could be used by plaintiff to establish the parties' rights to the subject marks and copyrights.

Third, defendant cites statutory law setting forth remedies for copyright and trademark infringement and argues that the "value or valuation" of the trademarks and copyrights that plaintiff seeks to discover from production of the confidential Korn/Ferry documents cannot establish the types of damages plaintiff could potentially recover if it prevails on its infringement causes of action. [Doc. No. 72, at p. 23.] Instead, defendant argues, and plaintiff does not dispute, that plaintiff may seek lost sales and disgorgement of profits. According to defendant, there is no theory or claim that would allow plaintiff to recover the "value or valuation" of a trademark or copyright that was reached by other parties during a proposed acquisition. [Doc. No. 72, at p. 23.] Rather, "[a] calculation of damages and profits would be properly based on the financial records kept by [defendant] and [plaintiff] in the ordinary course of business" and not "on the terms for potential acquisition of [defendant] or any value placed by a potential third party acquirer of [defendant's] business." [Doc. No. 72, at pp. 23-24.] Thus, without more, it does not appear that the confidential Korn/Ferry Deal documents that plaintiff seeks in response to Request Nos. 73 through 78 include the type of documents that could be used to establish plaintiff's alleged damages for trademark or copyright infringement. [Doc. No. 72, at p. 7.]

Defendant also believes plaintiff seeks disclosure of confidential "valuation" documents "only to discern the extent of any leverage it may have over [defendant, its competitor]" and "to identify further opportunities to disrupt [defendant's] business with strategic litigation." [Doc. No. 72, at p. 17.] In support of this contention, defendant

submitted an uncontested Declaration by its chief executive officer which states as follows: "I have concern that [plaintiff] and its counsel would use the [Korn/Ferry] Deal documents for its strategic advantage in seeking to obtain a settlement based on the value of [defendant's business], or based on terms that would prevent the future sale of [defendant's business], instead of the merits of any claims or defenses in this lawsuit." [Doc. No. 70-27, at p. 3.]

Based on the foregoing, plaintiff's conclusory arguments about relevance and proportionality are not enough to convince the Court that it is entitled to an order compelling defendant to produce all of the confidential Korn/Ferry documents that are responsive to Document Request Nos. 73 through 78. Without more, this Court cannot conclude that the confidential Korn/Ferry documents defendant continues to withhold from production are necessary or even especially important to resolving the issues in this case. The Court acknowledges it is possible that the confidential Korn/Ferry Deal documents include some information that may be indirectly relevant to this case. However, defendant submitted evidence indicating that in connection with the proposed acquisition it only disclosed confidential information with Korn/Ferry subject to a confidentiality agreement and that it continues to have a strong interest in maintaining the confidentiality of this information. Defendant also submitted a Declaration by its chief executive officer expressing concern that plaintiff would use confidential information in the Korn/Ferry documents to harm defendant's business interests. Although the Declaration is somewhat short on supporting factual details, it is sufficient to tip the balance of interests in defendant's favor, particularly given the bare, conclusory arguments presented by plaintiff on the issues of relevance and proportionality. Thus, based on the record as presented, this Court cannot conclude that the confidential Korn/Ferry documents defendant is withholding from production meet the relevance and proportionality standards set forth in Federal Rule 26(b)(1). Therefore, even if the parties presented their discovery dispute in a timely manner, the

///

1  Court would not have granted plaintiff's request for an order compelling production of

2  all documents responsive to Document Request Nos. 73 through 78.

3  ### IV.  *Defendant's Request for a Protective Order.*

4  In the Joint Motion, defendant requests that the Court issue a protective order

5  shielding the confidential Korn/Ferry documents from disclosure to plaintiff and from

6  public review. [Doc. No. 72, at p. 21.] As mentioned above, defendant represents that

7  these documents include trade secret and/or or confidential commercial information

8  exchanged with Korn/Ferry pursuant to a Mutual Confidentiality Agreement. Defendant

9  also represents that the parties to this agreement continue to have a shared interest in

10  maintaining the confidentiality of these documents. [Doc. No. 72, at pp. 20-21.]

11  Under Rule 26(c)(1), "[a] party or any person from whom discovery is sought may

12  move for a protective order. . . . The court may, for good cause, issue an order to protect

13  a party or person from annoyance, embarrassment, oppression, or undue burden or

14  expense, including one or more of the following: (A) forbidding the disclosure or

15  discovery; (B) specifying terms ... for the disclosure or discovery; (C) prescribing a

16  discovery method other than the one selected by the party seeking discovery;

17  (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or

18  discovery to certain matters; . . . (G) requiring that a trade secret or other confidential

19  research, development, or commercial information not be revealed or be revealed only in

20  a specified way . . . ." Fed.R.Civ.P. (c)(1). Federal Courts have "broad latitude to grant

21  protective orders to prevent disclosure of materials for many types of information. . . ."

22  *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

23  A party claiming there is good cause for a protective order under Federal Rule

24  26(c)(1) has the burden of demonstrating that "each particular document" in question

25  contains trade secrets or confidential commercial information and that "specific prejudice

26  or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins.*

27  *Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "Broad allegations of harm, unsubstantiated by

28  specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman*

15

1  *Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), quoting
2  *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986).

3      When a Court is asked to determine whether to issue a protective order to preclude
4  or limit the disclosure of a party's trade secrets or other confidential commercial
5  information, conflicting interests are at stake.  While parties requesting discovery are
6  generally entitled to disclosure of "any non-privileged matter that is relevant to any
7  party's claim or defense" under Federal Rule 26(b)(1), opposing parties are likewise
8  entitled to protection under Federal Rule 26(c) against an "undue burden," such as the
9  misuse of their trade secrets or confidential information by competitors.  *Brown Bag*
10  *Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  Therefore, if defendant
11  meets its burden of demonstrating that "specific prejudice or harm will result if no
12  protective order is granted" (*Foltz*, 331 F.3d at 1130), the Court must then balance the
13  risk of inadvertent disclosure of defendant's trade secrets or confidential commercial
14  information to competitors against the risk that protection of any such information could
15  impair plaintiff's ability to prosecute its case. *Brown Bag*, 960 F.2d at 1470.

16      Plaintiff argues that defendant has improperly cited confidentiality for refusing to
17  produce all documents responsive to Request Nos. 73 through 78, because the Stipulated
18  Amended Protective Order in this case [Doc. No. 62] is sufficient to address any
19  confidentiality concerns.  [Doc. No. 72, at p. 7, 9.]  This Stipulated Amended Protective
20  Order governs the exchange of confidential documents and information between the
21  parties to this case.  Under the Stipulated Amended Protective Order, a producing party
22  may designate "sensitive" documents or information as "confidential" or "confidential –
23  for counsel only."  [Doc. No. 62, at p. 4.]

24      Ordinarily, confidentiality concerns can be adequately protected by a stipulated
25  protective order and such concerns are not usually enough to justify a party's failure to
26  produce documents in response to discovery requests.  *See, e.g., A. Farber & Partners,*
27  *Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006).  In the Joint Motion, defendant
28  does not explain why it did not simply designate the confidential Korn/Ferry documents

as "confidential" or "confidential – for counsel only" and produce them subject to the Stipulated Amended Protective Order. [Doc. No. 62, at p. 4.] Based on the information presented, the Court suspects defendant's reluctance to do so may be because it considers plaintiff a competitor [Doc. No. 72, at p. 17, 20, 29] and because, as mentioned above, it believes that plaintiff and its counsel would use these documents "for its strategic advantage" to obtain a settlement of this case that is not based on the merits of the parties' claims and defenses but on the "value" of defendant's business and on terms which could prevent a future acquisition. [Doc. No. 72, at p. 20.]

To support its request for a protective order, defendant submitted a supporting Declaration by its chief executive officer stating that the Korn/Ferry Deal documents that have not been produced to plaintiff include trade secrets and/or confidential commercial information, such as "details regarding all aspects of [defendant's] business that would be expected to be discussed in the context of the negotiation for the sale of a business." [Doc. No. 70-27, at p. 2.] The chief executive officer's uncontested Declaration also states as follows: "I have concern that [plaintiff] and its counsel would use the [Korn/Ferry] Deal documents for its strategic advantage in seeking to obtain a settlement based on the value of [defendant's business], or based on terms that would prevent the future sale of [defendant's business], instead of the merits of any claims or defenses in this lawsuit." [Doc. No. 70-27, at p. 3.] In addition, the Declaration confirms that defendant's trade secrets and confidential commercial information were exchanged with Korn/Ferry pursuant to a "Mutual Confidentiality Agreement" dated March 11, 2015. [Doc. No. 70-27, at p. 2.] A copy of this agreement is attached as Exhibit A to the Declaration. [Doc. No. 70-28, at pp. 1-7.] The agreement clearly precludes both defendant and Korn/Ferry from disclosing confidential or proprietary information to third parties. [Doc. No. 70-28, at pp. 1-7.]

In the Joint Motion and the supporting Declaration, defendant did identify a specific harm or prejudice that it believes would result if the Court does not issue a protective order precluding production of the confidential Korn/Ferry documents.

However, this specific harm or prejudice appears to be based on speculation and fear. Based on the papers submitted, it is unclear whether defendant has a factual basis for its fear and speculation. Accordingly, if defendant made a timely request, a protective order would not have been granted based on this information alone. On the other hand, for the reasons outlined in the previous sections, the Court has also denied plaintiff's request for an order compelling the production of these confidential documents. As a result, it does not appear that a protective order is necessary. Therefore, the Court finds that defendant's request for a protective order precluding production of the confidential Korn/Ferry documents must be denied as untimely and for failure to make the required showing of need.

## VI. *Attorney-Client Privilege/In Camera Review.*

Plaintiff argues that defendant waived any objections based on the attorney-client privilege and/or the common interest doctrine when it failed to assert these objections in its initial responses to Document Request Nos. 73 through 78. [Doc. No. 72, at pp. 10-11.] Plaintiff has not cited, and this Court was unable to locate, any controlling authority that would support a waiver of the attorney-client privilege and/or the common interest doctrine under the circumstances presented in the parties' papers. *See, e.g., Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (rejecting "a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30–day time limit" and applying a reasonableness standard based on a number of factors to determine whether a privilege is waived because of untimeliness). In addition, as outlined above, the Joint Motion itself is untimely, and defendant did not act diligently in seeking the Court's assistance in resolving the parties' discovery dispute over Request Nos. 73 through 78. In other words, it is apparent that neither party to this dispute was diligent in protecting or pursuing its rights with regard to the challenged discovery. Under these circumstances, it would be unreasonable for the Court to find that defendant waived the attorney-client privilege because of "untimely invocation." [Doc. No. 72, at p. 10.]

1          Plaintiff also argues for various reasons that the attorney-client privilege and

2 common interest doctrine are "inapplicable" to any of the Korn/Ferry documents that

3 defendant is withholding as privileged, so the Court should order them produced. [Doc.

4 No. 72, at pp. 12-16.] Alternatively, plaintiff requests that the Court conduct an *in*

5 *camera* review "to ascertain whether the [common interest doctrine] could indeed apply."

6 [Doc. No. 72, at p. 16.] In opposition, defendant contends that the attorney-client

7 privilege and the common interest doctrine do apply to some confidential

8 communications made during its negotiations with Korn/Ferry, because the parties to a

9 potential merger or acquisition have a "shared legal interest." [Doc. No. 72, at pp. 24-

10 26.]

11          "An eight-part test determines whether information is covered by the attorney-

12 client privilege: (1) Where legal advice of any kind is sought (2) from a professional

13 legal adviser in his capacity as such, (3) the communications relating to that purpose,

14 (4) made in confidence (5) by the client, (6) are at his instance permanently protected

15 (7) from disclosure by himself or by the legal adviser, (8) unless the protection be

16 waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). "When determining

17 whether a document seeks legal advice, courts have examined the nature, content, and

18 context in which the document was prepared." *LightGuard Systems, Inc. v. Spot Devices,*

19 *Inc.*, 281 F.R.D. 593, 593 (D. Nevada 2012).

20          "[T]he "common interest" or "joint defense" rule is an exception to ordinary

21 waiver rules designed to allow attorneys for different clients pursuing a common legal

22 strategy to communicate with each other." *In re Pacific Pictures Corp.*, 679 F.3d 1121,

23 1129 (9th Cir. 2012). "[T]he parties must make the communication in pursuit of a joint

24 strategy in accordance with some form of agreement—whether written or unwritten." *Id.*

25 For the reasons outlined more fully below, it is unnecessary for the Court to decide at this

26 time whether the common interest doctrine applies to any of the documents listed on

27 defendant's current privilege log. However, the Court notes that there is at least some

28 support in case law for defendant's contention that certain communications between

19

defendant and third party Korn/Ferry that were exchanged during negotiations about the proposed acquisition are protected from disclosure by the attorney-client privilege and the common interest doctrine. *See, e.g. Microban Systems, Inc. v. Skagit Northwest Holdings, Inc.*, (No. C15-932-MJP) 2016 WL 7839220, at *1 (W.D. Wash., Aug. 17, 2016) (finding that the common interest doctrine protected documents exchanged between parties prior to an acquisition because their interests were aligned in an attempt to determine the value of intellectual property and determine whether litigation would be required to secure the full value of those rights); *Morvil Technology, LLC v. Ablation Frontiers, Inc.*, (No. 10-CV-2088-BEN BGS) 2012 WL 760603, at pp. 1-3 (S.D. Cal., March 8, 2012) (holding that documents containing a "shared legal analysis" of intellectual property matters authored by outside counsel and exchanged between the parties to a proposed acquisition during their negotiations pursuant to a confidentiality agreement were protected from disclosure by the attorney-client privilege and the common interest doctrine); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D.Cal.1987) (concluding that attorney-client communications shared with a third party business that was in the process of acquiring part of the defendant's business was preserved under the common interest doctrine because there was a common legal interest).

"'[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication.'" *United States v. Graf*, 610 F.3d at 1156, quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir.2009). "To meet this burden, a party must demonstrate that its documents adhere to the essential elements of the attorney-client privilege adopted by [the Ninth Circuit]. [Citation omitted.] In essence, the party asserting the privilege must make a *prima facie* showing that the privilege protects the information the party intends to withhold." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–1071 (9th Cir. 1992).

According to the Ninth Circuit, an adequate privilege log is one way in which a party can satisfy this burden. *Id.* A privilege log that includes the following information is "sufficient to establish the attorney-client privilege:" (1) the identity of the attorney and client involved; (2) the nature of the document (*e.g.*, letter, memorandum, *etc.*); (3) all persons or entities shown as recipients on the document; (4) all persons or entities known to have been informed of the substance of the document; and (5) the date the document was generated, prepared, or dated. *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989).

*In camera* review is not a routine procedure that is available upon request. *United States v. Zolin*, 491 U.S. 554, 571 (1989) (stating that "[a] blanket rule" allowing *in camera* review on a routine basis to determine the applicability of an exception to the attorney-client privilege "would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk"). The United States Supreme Court and the Ninth Circuit have both instructed that a District Court should not conduct an *in camera* review to determine the applicability of the attorney-client privilege or an exception thereto unless there is "a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish . . . that the . . . exception does apply" or that the assertion of the privilege is groundless. *Id.* at 572. *In re Grand Jury Investigation*, 974 F.2d 1068, 1074-1075 (9th Cir. 1992).

The Supreme Court in *United States v. Zolin*, 491 U.S. 554, also set forth a number of factors to consider when determining whether to conduct an *in camera* review. These factors include "the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that [the privilege] does not apply." *Id.* at 572. *In re Grand Jury Investigation*, 974 F.2d at 1075.

1    Here, defendant served plaintiff with a 33-page privilege log on March 27, 2017.
2    [Doc. No. 70-1, at p. 5.] Defendant submitted a copy of this privilege log with the
3    parties' Joint Motion. [Doc. No. 70-1, at p. 5; Doc. No. 72-23, at pp. 1-34.] The
4    privilege log includes the type of information required to satisfy defendant's burden of
5    making a *prima facie* showing to support its privilege claims. [Doc. No. 72-23, at pp. 1-
6    34 (Exh. No. 22).]

7        In the Joint Motion, plaintiff argues that defendant's original privilege log includes
8    "many documents that do not appear to be privileged." [Doc. No. 72, at p. 13.] In
9    support of this argument, plaintiff referred the Court to a number of specific entries on
10   the original privilege log. [Doc. No. 72, at p. 13 n.4.] According to plaintiff, the cited
11   documents do not appear to be privileged for various reasons. [Doc. No. 72, at p. 13.]
12   However, on April 18, 2017, one day before the parties filed their Joint Motion,
13   defendant served plaintiff with a revised privilege log. [Doc. No. 72, at 25 n.8.]
14   Defendant explained that after considering plaintiff's arguments in the Joint Motion
15   about the common interest doctrine, it "carefully reviewed the documents at issue" and
16   revised the privilege log. [Doc. No. 72, at p. 25 n.8.] In the revised version of the
17   privilege log, defendant withdrew its privilege claims as to six different categories of
18   documents.[4] [Doc. No. 72, at p. 25 n.8.]

19       In the Joint Motion, plaintiff did not challenge any of the entries on defendant's
20   revised privilege log, and the Court is unable to locate a copy of the revised privilege log
21   in the record. As a result, there is nothing in the record as presented to indicate that
22   defendant failed to meet its burden of making a *prima facie* showing that the documents
23   on the revised privilege log are privileged. Nor is there anything in the record as

24
25   _____

26   [4]   Although defendant's privilege claims have been withdrawn as to these six
27   categories of documents, defendant has not produced these documents based on
     relevance, proportionality, and confidentiality grounds. [Doc. No. 72, at p. 25 n.8.]
28   These "confidential" documents were discussed in the preceding sections of this Order.

15cv1831-WQH(KSC)

1  presented to indicate there is a factual basis to justify the expenditure of the Court's
2  limited resources to conduct an *in camera* review of a large number of documents just to
3  verify that they are indeed privileged.  Finally, for the reasons outlined above in previous
4  sections, the confidential or privileged Korn/Ferry documents do not appear to be
5  particularly important to resolving the matters at issue in the case.  Therefore, even if
6  plaintiff made a timely request for *in camera* review, the Court would have denied the
7  request for failure to make the required showing of need.

8                                     ***Conclusion***

9          Based on the foregoing, plaintiff's request for an order compelling defendant to
10 produce all documents responsive to Request Nos. 73 through 78 is DENIED as untimely
11 and because the requested documents do not meet the relevance and proportionality
12 standards set forth in Federal Rule 26(b)(1).  Defendant's request for a protective order
13 precluding production of confidential documents in response to Document Request Nos.
14 73 through 78 is also DENIED as untimely and for failure to make a sufficient showing
15 of need.  In addition, plaintiff's alternative request for an *in camera* review is DENIED as
16 untimely and for failure to make a sufficient showing of need.  Finally, the parties'
17 requests for monetary sanctions are also DENIED.

18        IT IS SO ORDERED.
19 Dated: June 26, 2017

20
21                                          Hon. Karen S. Crawford
                                            United States Magistrate Judge
22
23
24
25
26
27
28