MICHELE M. DESOER (SBN 119667)
  mdesoer@zuberlaw.com
JEFFREY J. ZUBER (SBN 220830)
  jzuber@zuberlaw.com
HEMING XU (SBN 302461)
  hxu@zuberlaw.com
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California  90017
Telephone: (213) 596-5620
Facsimile:  (213) 596-5621

Attorneys for Plaintiff and Counterclaim-Defendant
Leadership Studies, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADERSHIP STUDIES, INC., | CASE NO. 15CV1831 WQH-KSC |
| Plaintiff, | **LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR RECONSIDERATION OF ORDER** |
| v. | |
| BLANCHARD TRAINING AND DEVELOPMENT, INC., | Date:   November 27, 2017 |
| Defendant. | Judge:  Hon. William Q. Hayes |
| | [Filed Concurrently with Declaration of Michele M. Desoer In Support of Leadership Studies, Inc.'s Opposition to Blanchard Training and Development, Incorporated's Motion for Reconsideration of Order] |
| BLANCHARD TRAINING AND DEVELOPMENT, INCORPORATED, | |
| Counterclaim-Plaintiff, | |
| v. | |
| LEADERSHIP STUDIES, INC., | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| Counterclaim-Defendant. | |

0811-1026 / 948567.1

Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

# **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     STATEMENT OF RELEVANT FACTS ......................................................... 3

III.    PROCEDURAL HISTORY .............................................................................. 5

      A.      CLS In Good Faith Proposed To Simplify Its Claim By Asserting The 1975 Work. ........................................................................................ 6

      B.      Blanchard's MSJ Insisted That Summary Judgement Was Necessary Because CLS Did *Not* Abandon The Works In The TAC. ............................................................................................................ 7

IV.     STANDARD OF REVIEW ............................................................................ 10

V.      LEGAL ARGUMENT .................................................................................... 11

      A.      Blanchard's Motion Impermissibly (a) Raises Issues That Blanchard Could Have Litigated, (b) Seeks To Judicially Estop CLS From Pursuing The 1984 Work, And (c) Directly Contradicts Blanchard's Earlier Representations To This Court. ........ 11

            1.      *Because Blanchard's MSJ Never Suggested That CLS Abandoned Its Claims To The Bell Curve Elements, It Cannot Do So Now.* ................................................................ 12

            2.      *Even If CLS Voluntarily Withdrew Its Claim To The 1984 Work, CLS May Re-allege It To Assert The Bell Curve Elements.* ............................................................................. 15

            3.      *CLS Is Not Judicially Estopped From Asserting The 1984 Work Because The Court Declined To Allow It To Pursue The 1975 Work But Held That CLS May Pursue The Derivative 1984 Work.* ......................................................... 17

            4.      *Blanchard Should Be Estopped From Bringing This Motion.* ................................................................................. 21

      B.      Reconsideration Of The Court's Denial Of Attorney's Fees Would Impermissibly Re-litigate Case Law Previously Before The Court. ................................................................................................ 22

VI.     CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*AcademyOne, Inc. v. CollegeSource, Inc.*,
No. CIV.A. 08-5707, 2010 WL 962320, at *3 (E.D. Pa. Mar. 16, 2010).......24

*Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267 (9th Cir. 2013)...............19

*ArchitectureArt LLC v. City of San Diego*, No. 15-CV-01592-BAS-NLS,
2017 WL 1346899, at *1 (S.D. Cal. Apr. 4, 2017) .........................................22

*Ausmus v. Lexington Ins. Co.*,
No. 08–CV–2342 L(LSP), 2009 WL 2058549, at *2 (S.D. Cal. July 15,
2009)..................................................................................................................10

*Biller v. Peter Rodgers Org. Ltd.*,
No. CV 05–01597 SJO (PLAx), 2008 WL 11336943, at *1 (C.D. Cal.
Nov. 18, 2008) ..................................................................................................11

*Bisson-Dath v. Sony Computer Entm't Am. Inc.*,
No. CV-08-1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24,
2012)..................................................................................................................25

*Bridgeman v. Peralta*,
No. CIV. 11-2132 WQH PCL, 2011 WL 5830427, at *1 (S.D. Cal.
Nov. 18, 2011) ..................................................................................................11

*Brighton Collectibles, Inc. v. Dynasty Designs, LLC*, No. 06-CV-1588 H
(POR), 2009 WL 10674077, at *2 (S.D. Cal. Mar. 16, 2009) ....................6, 7

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human
Res.*, 532 U.S. 598 (2001) ...............................................................................23

*Canal+ Image UK Ltd. v. Lutvak*,
792 F. Supp. 2d 675 (S.D.N.Y. 2011)..............................................................24

*Catlin Underwriting Agencies Ltd. v. San Diego Refrigerated Servs.*,
No. 08CV173 WQH (JMA), 2010 WL 2985416, at *3 (S.D. Cal. July
28, 2010)............................................................................................................11

*Catlin Underwriting Agencies Ltd. v. San Diego Refrigerated Servs., Inc.*,
469 F. App'x 529 (9th Cir. 2012)......................................................................11

*Catrino v. Town of Ocean City*, No. CIV.A.WMN-09-505, 2009 WL
3347356, at *2-*3 (D. Md. Oct. 14, 2009)......................................................22

*Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456 (S.D.N.Y.
2013)....................................................................................................................7

*Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994)...............................................................................6

ii

Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

0811-1026 / 948567.1

*Desertrain v. City of Los Angeles,*
    754 F.3d 1147 (9th Cir. 2014) ........................................................................ 19

*Duarte v. Bardales,*
    526 F.3d 563 (9th Cir.2008) ........................................................................... 11

*Ethridge v. Harbor House Rest.,*
    861 F.2d 1389 (9th Cir. 1988) ....................................................................... 18

*FDIC v. Jackson–Shaw Partners No. 46, Ltd.,*
    850 F. Supp. 839 (N.D. Cal.1994) ............................................................... 10

*Google, Inc. v. Affinity Engines, Inc.,*
    No. C 05-0598 JW, 2005 WL 2007888 (N.D. Cal. Aug. 12, 2005) .............. 16

*Hardisty v. Moore,*
    No. 11-CV-01591-BAS BLM, 2015 WL 6671557, at *10 (S.D. Cal.
    Nov. 2, 2015) ................................................................................................. 23

*Henry v. Barnhart,*
    No. 06CV2266 WQH (AJB), 2008 WL 4856459, at *1 (S.D. Cal. Nov.
    10, 2008) ........................................................................................................ 11

*In re Novatel Wireless Securities Litig.,*
    No. 08cv1689 AJB (RBB), 2012 WL 2499001, at *2 (S.D. Cal. June
    27, 2012) ........................................................................................................ 11

*In re Optical Disk Drive Antitrust Litig.,*
    801 F.3d 1072 (9th Cir. 2015) ....................................................................... 23

*Interscope Records v. Leadbetter,*
    312 Fed. Appx. 50 (9th Cir. 2009) ................................................................ 24

*Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,*
    139 F.3d 1234 (9th Cir. 1998) ....................................................................... 19

*Johnson v. State, Oregon Dep't of Human Res., Rehab. Div.,*
    141 F.3d 1361 (9th Cir. 1998) ....................................................................... 19

*Kona Enters. Inc. v. Estate of Bishop,*
    229 F.3d 877 (9th Cir. 2000) ......................................................................... 10

*Larin Corp. v. Mueller,*
    364 F. App'x 380 (9th Cir. 2010) .................................................................. 20

*Lee v. Del Mar Thoroughbred Club*, No. 12CV826-WQH-BLM, 2014 WL
    3924626, at *2 (S.D. Cal. Aug. 8, 2014) ...................................................... 10

*Lorenzo v. Qualcomm Inc.,*
    No. 08CV2124 WQH LSP, 2009 WL 2448375, at *4 (S.D. Cal. Aug.
    10, 2009) ........................................................................................................ 10

*Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
    571 F.3d 873 (9th Cir. 2009) ......................................................................... 11

Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

*Monaco v. Quest Diagnostics, Inc.*,
   No. CIV.A. 08-2500-KHV, 2010 WL 4366204 (D. Kan. Oct. 28, 2010) ......12

*New Hampshire v. Maine*,
   532 U.S. 742 (2011) ..................................................................................18

*OEM-Tech v. Video Gaming Techs., Inc.*,
   No. C 10-04368 RS, 2011 WL 13153640, at *2 (N.D. Cal. Dec. 21,
   2011)........................................................................................................15

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ...................................................................24

*Southwest Forest Indus., Inc. v. Westinghouse Elec. Corp.*,
   422 F.2d 1013 (9th Cir.1970)...................................................................16

*Sundaram v. Villanti*,
   174 Fed. App'x 368 (9th Cir. 2006).........................................................23

*Thieme v. Cobb*,
   No. 13-CV-03827-MEJ, 2016 WL 3648531, at *5 (N.D. Cal. July 8,
   2016)........................................................................................................17

*Ward v. Barnes & Noble, Inc.*,
   No. 13-CV-7851 JMF, 2015 WL 1442449 (S.D.N.Y. Mar. 30, 2015)...........12

**<u>RULES</u>**

Fed. R. Civ. P. 15.......................................................................................15

Fed. R. Civ. P. 41(a) ..................................................................................18

Fed. R. Civ. P. 56.1....................................................................................13

Federal Rule of Civil Procedure 60 ............................................................19

0811-1026 / 948567.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Blanchard Training and Development, Incorporated's ("Blanchard's") Motion for Reconsideration ("Motion") [D.E.117] of the Court's September 25, 2017 Order (the "MSJ Order") [D.E.108] does not provide a legally-valid ground for the extraordinary remedy of reconsideration, a remedy granted only under very limited circumstances. *See* § IV, *infra* (standard of review).  The Motion presents **neither** new evidence **nor** intervening changes in controlling law, but accuses the Court of committing clear error merely because Blanchard disagrees with the Court's partial denial of Blanchard's Motion for Summary Judgment ("MSJ") [D.E.63] on Claim 7 (Copyright Infringement) of Plaintiff Leadership Studies, Inc.'s ("CLS'") Third Amended Complaint ("TAC") [D.E.49].  Accordingly, Blanchard's Motion should be denied as an impermissible attempt to re-litigate issues that Blanchard either has, or could have, briefed in its original MSJ.

In fact, Blanchard's MSJ (1) rejected CLS' proposal to litigate its copyright claim through Dr. Paul Hersey's 1975 Dissertation[1] (the "1975 Work"), (2) sought a ruling *only* for works explicitly asserted in the TAC[2] (the "TAC Works") because CLS "did **not** 'unequivocally' state it was not pursuing" the TAC Works [D.E. 76, at 7:19-21 (citation omitted) (emphasis in original)], and (3) limited its motion to "the narrow issue of gaps in [CLS'] chain-of-title."  [D.E. 63-1, at 5:10-11.]  The Court agreed with Blanchard that the 1975 Work could not be used to "defeat Blanchard Inc.'s [MSJ]" [D.E. 108, at 9:6-7] but ruled that CLS has chain-of-title as to *Leader Behavior* and *The Situational Leader* (1984) (the "1984 Work").  [D.E. 108, at 8:6-

---

[1] D.E. 69-14, at 4 (Blanchard's counsel: "The [MSJ] addresses the copyright claims … alleged by the [TAC] … [CLS] would not dismiss those claims absent some payment to CLS … Since CLS will not dismiss them, we have asked the Court to do so.  As to the 1975 dissertation … [i]t is not a claim in this case.").
[2] D.E. 76, at 5:3 (stating that the MSJ "addresses the works identified in the [TAC]"); 7:3-4 (stating that the MSJ "properly focused on the copyright claim *actually pending* in the TAC"(emphasis added)).

13 (stating that the MSJ was limited to the issue of "chain-of-title"); 9:23-25 (denying in part Blanchard's MSJ).]  Notably, the 1984 Work contains the *same* elements CLS had sought to assert through the 1975 Work.  [*See* D.E. 66, at 15 (comparing the 1975 and 1984 Works).]

Having failed to dispose of CLS' copyright claim, Blanchard seeks to re-litigate the MSJ and argues that the Court erred by: (1) failing to find CLS unequivocally abandoned the TAC Works (including the 1984 Work), *even though Blanchard had insisted that CLS' refusal to abandon necessitated a ruling* as to the TAC Works; and (2) failing to grant summary judgment on the grounds of abandonment, even though Blanchard *expressly limited its MSJ to only the "chain-of-title" issue*, not abandonment.  This attempt to take a second bite at the apple under the guise of a motion for reconsideration is improper.

Because the Court's MSJ Order relied on representations by Blanchard that diametrically oppose its current arguments in its Motion, the Motion should be denied.  Moreover, given that the Court's MSJ Order did not rely on—and indeed, rejected—CLS' good faith effort to pare down its copyright claim to the 1975 Work, CLS, as a matter of law, is not estopped from asserting the *same* 1975 Work elements through the 1984 Work.

Finally, Blanchard's request that this Court reconsider its ruling as to attorney's fees is improper, given that (1) Blanchard cites to no new authority or facts, (2) the MSJ Order held that CLS does have chain-of-title as to certain TAC Works, including as to the 1984 Work, and (3) CLS engaged in good faith efforts to bring to light and efficiently litigate facts that have long been submerged in the fog of time.

In sum, Blanchard got what it *asked for*, but *not what it wanted*, when the Court relied on Blanchard's representations in the MSJ that the 1984 Work was properly before the Court for disposition.  In ruling on the 1984 Work chain-of-title on the merits, the Court accepted Blanchard's position that it had not been abandoned.

2

Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

0811-1026 / 948567.1

## II.     STATEMENT OF RELEVANT FACTS

In the 1960s, Drs. Paul Hersey and Kenneth Blanchard "worked on a theory concerning a methodology for leaders to influence others … which came to be known as Situational Leadership."  [D.E. 108, at 3:4-6 (internal quotation marks and citations omitted).]  In 1975 Dr. Hersey published his Ph.D. dissertation that called the then-theory "Situational Leadership" for the first time and added new elements to the model which were included in later derivatives.  [D.E. 69-2, at 1; D.E. 66, at 15:1-11.]  Dr. Blanchard later modified the original Situational Leadership® model and methodology, *incorporating the novel elements in Dr. Hersey's copyrighted dissertation,* and called this derivative version Situational Leadership® II, or "SLII®."  [D.E. 69-11, at 2.]  Over the course of decades, Drs. Hersey and Blanchard, and their companies published numerous bell curve graphics depicting Situational Leadership® and Blanchard's derivative Situational Leadership® II model (hereinafter, "Situational Leadership® Models").  [*See, e.g.*, D.E. 63-1, at 18-21; D.E. 66, at 15.]

Throughout CLS' and Blanchard's (the "Parties") decades-long history, until the instant litigation, neither Blanchard nor third parties questioned CLS' ownership of the Situational Leadership® Model and CLS' ability to control the creation of works derivative of the Situational Leadership® Model.  Indeed, the Parties executed a 1987 License wherein CLS "grant[ed] a perpetual royalty-free license to BLANCHARD … to use the logo, [*i.e.*, CLS' Situational Leadership® Model] excepting that … BLANCHARD *shall make no use of the logo in a trademark sense*." [D.E. 69-10, at 3 (emphasis added).]  Dr. Blanchard reiterated, approximately five years later, CLS' ownership of the Situational Leadership® Model when he stated that the Situational Leadership® approach is "clearly" the work of Dr. Hersey and CLS.  [D.E. 69-11, at 3.]  Moreover, third-party publisher Prentice-Hall, Inc. has consistently attributed the copyright of the "Situational Leadership® Model" to CLS. [*See, e.g.*, D.E. 69-12, at 6-7 (copyright notices within a Prentice-Hall, Inc.

1  publication).]

2      Nonetheless, considering the Parties' long history, the many iterations of the

3  Situational Leadership® Model, the lack of a clear written record, and the death of

4  Dr. Hersey, CLS' precise chain-of-title as to the Situational Leadership® Model –

5  including the three innovative elements CLS owns, was unclear until CLS traced its

6  clear chain of ownership back to the 1975 Work.  [*See* D.E. 69-13, at 3 & 7.]  In a

7  February 28, 2017 letter to Blanchard, CLS specifically identified the three elements

8  (the "Bell Curve Elements") that CLS owned through its title to the 1975 Work.[3]  [*Id.*

9  at 3.]  These *same* Bell Curve Elements are also present in the 1984 Work, which is

10 asserted in the TAC.  [D.E. 49, ¶ 168.]  Indeed, the Bell Curve Elements "have defined

11 the *modern bell curve models* for Situational Leadership® and Situational

12 Leadership® II."  [D.E. 69-13, at 2 (emphasis added); *see also* D.E. 66, at 15:1-11

13 (comparing the 1975 and 1984 Works).]

14      Tracing the Bell Curve Elements, through the fog of time, back from the newer

15 publications (including the 1984 Work) to the 1975 Work required a comprehensive

16 review, careful comparison, and analysis of numerous Situational Leadership®

17 Models and their accompanying copyright notices.  [D.E. 66, at 15:22-16:4.]  As a

18 result, CLS did not confirm that its title to the Situational Leadership® Model traces

19 back to the 1975 Work until shortly before its February 2017 letter, after which CLS

20 amended its discovery responses consistent with this information.  [D.E. 66, at 15:17-

21 20; D.E. 69-13, at p. 3 (February Letter)]

22

23

_____

24 [3] The Bell Curve Elements are: (1) the elevation of the bell curve above the "X" axis
   of the Situational Leadership® Model's four-quadrant grid; (2) the change from a
25 three-level Maturity (Readiness) scale to a four-level scale (the scale is displayed
   below the four-quadrant grid); and (3) the inscription of leadership style descriptors
26 within the bell curve.  D.E. 69-13, at 3.  CLS also noted that copyright "protection is
   not limited to these distinct elements" because "[t]he overall selection, combination,
27 arrangement, and layout of the creative elements, as they relate to the work as a whole,
   is also considered in determining that the work is protectable."  [*Id.*]

28

4                          Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

0811-1026 / 948567.1

### III.   PROCEDURAL HISTORY

Both before and after CLS informed Blanchard of its claim to the 1975 Work, CLS has consistently asserted the Bell Curve Elements of the Situational Leadership® Model against Blanchard.[4]   These elements are present in both the 1984 Work identified in the TAC, and the 1975 Work, which was asserted against Blanchard in CLS' February 28, 2017 Letter ("February Letter").  [D.E. 69-13, at p. 3.]

CLS originally asserted the Bell Curve Elements through the 1984 Work. **Because CLS pursued the Bell Curve Elements through the 1984 Work, Blanchard questioned the work's originality and chain of title, which required CLS to trace the Bell Curve Elements back to the 1975 Work and still litigate this earlier work**.[5]   CLS, in good faith, believed that litigating the *same* elements through the 1975 Work, thus, would benefit both parties by paring down the scope of disputed issues.  However, the Court ruled that CLS' proposal to substitute the 1975 Work for the 1984 Work was improper.  [D.E. 108, 8:26-9:7.]

Blanchard's *current* Motion seeks to foreclose CLS from asserting the Bell Curve Elements altogether.  It argues that CLS dropped the 1984 Work with prejudice even though (1) Blanchard's Motion contradicts its earlier insistence that CLS *did not* unequivocally drop the 1984 Work; (2) Blanchard's MSJ was confined to chain-of-title issues; and (3) CLS clearly owns the Bell Curve Elements, as established by its title to the 1975 and 1984 Works.  Blanchard cites to *no* evidence that CLS ever

---

[4]  *See, e.g.*, D.E. 69-13, at 3 (CLS' February 28, 2017 Letter: "As set forth in CLS' amended response to BTD's Interrogatory No. 6, served on November 28, 2016, the [Bell Curve Elements] were identified as protectable … [T]he protectable elements owned by CLS pursuant to the 1975 Work are prevalent throughout many, if not most, current iterations of the Situational Leadership® II bell curve models published by BTD."); D.E. 69-15, at 4:17-19 (March 31, 2017 Interrogatory Response "Blanchard Training prepared and exploited the 4-quadrant/bell-curve graphic works, with slight variations, that are derivative of and substantially similar to CLS' 1975 WORK.").

[5]  Indeed, despite Blanchard's insistence that its MSJ was limited to the "narrow issue of gaps" in CLS' "chain-of-title" (D.E. 63-1, at 5:10-11), the MSJ then improperly attempted to attack the originality of the 1984 Work, stating that the work's Situational Leadership® Model does not contain "original elements."  [*Id.*, at 19:23-26.]  The Court rejected this argument as improperly exceeding the scope of Blanchard's MSJ.  [D.E. 108, 9:6-13.]

evinced an intent to *drop its pursuit of the Bell Curve Elements*.

A.   **CLS In Good Faith Proposed To Simplify Its Claim By Asserting The 1975 Work.**

Early in this litigation, Blanchard moved to dismiss CLS' then-operative copyright claim, arguing that it failed to "*identify the specific original content* that is alleged to have been infringed." [D.E. 22, at 8:26-27 (internal alterations, quotation marks, and citation omitted; emphasis added).]  The Court rejected this argument, and held that CLS "need not identify with specificity every 'design, figure, and diagram' at issue."  [D.E. 22, at 12:15-20.]

Per this Court's March 4, 2016 Court Order ("MTD Order"), CLS' identification of the 1984 Work in the TAC gave Blanchard adequate notice as to CLS' copyright claim.  In discovery, CLS' *identified* the *specific infringed elements* (the Bell Curve Elements), along with the elements' *chain-of-title* (the 1975 Work). [*See* D.E. 69-13, at 2-3.]  CLS anticipated that Blanchard would require CLS to demonstrate the originality of those elements,[6] and realized that to do so required litigation of the 1975 Work, as well, because it is through that earlier work that CLS owns the Bell Curve Elements.[7]

Therefore, to eliminate more complicated chain-of-title issues, CLS first proposed to litigate the 1975 Work in lieu of the 1984 Work in its February Letter. [D.E.69-13; *see* D.E. 69-7 (1975 Work Copyright Registration in Dr. Hersey's name); D.E. 69-8 (1975 Work assignment from Dr. Hersey to CLS).] CLS construed the

---

[6] CLS believed Blanchard would ask CLS to trace ownership of the Bell Curve Elements from the 1984 Work to the 1975 Work.  Blanchard's Motion to Dismiss had complained that CLS failed to identify "specific *original* content."  D.E. 22, at 8:26-27 (emphasis added); *see also* note 5, *supra* (discussing how BTD's MSJ attacked the 1984 Work on impermissible "original[ity]" grounds).
[7] *See Brighton Collectibles, Inc. v. Dynasty Designs, LLC*, No. 06-CV-1588 H (POR), 2009 WL 10674077, at *2 (S.D. Cal. Mar. 16, 2009) ("In *Apple* [*Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994)], the *plaintiff owned the derivative work and the underlying work*. The Ninth Circuit concluded that the plaintiff … *could sue for infringement of material that appears in both the derivative work and the underlying work*. *Id.* at 1447-48." (emphases added)).

Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR RECONSIDERATION OF ORDER

0811-1026 / 948567.1

1  MTD Order as allowing it to assert the 1975 Work [D.E. 22] and recognized that the

2  prospect that CLS' undisputedly proper assertion of the Bell Curve Elements through

3  the 1984 Work would require litigation as to the 1975 Work.  [*See* D.E. 66, at 19:3-6

4  *and* D.E. 69-14, at 2-3 (relying on the MTD Order to argue that the 1975 Work was

5  properly before the Court).]  Indeed, Blanchard *was* contesting the chain of title to the

6  Bell Curve Elements in the 1984 Work. [*See* D.E. 69-13, at 2 (noting that: (1) in

7  February 2017, Blanchard was raising concerns over chain-of-title; and (2) CLS'

8  assertion of the 1975 Work would involve "no chain of ownership dispute").]

9          In short, CLS believed that litigating the Bell Curve Elements through the 1975

10  Work would have benefited both Parties by paring down the universe of potential

11  disputed issues.    CLS also believed that no amendment to the TAC was required

12  because (1) the 1984 Work was already pled at TAC ¶ 168 and incorporated the 1975

13  Work's Bell Curve Elements, and therefore, CLS could already assert the 1975

14  Work's Bell Curve Elements through the 1984 Work;[8] (2) per the MTD Order, CLS

15  was under no duty to identify in its TAC that the 1984 Work's asserted elements arose

16  from a pre-existing publication (the 1975 Work).  [*See* D.E. 22, at 12:15-20.]

17      **B.**      **Blanchard's MSJ Insisted That Summary Judgement Was**

18              **Necessary Because CLS Did *Not* Abandon The Works In The TAC.**

19          Blanchard's MSJ surprised CLS for multiple reasons. First, CLS believed that

---

20

21  [8] *See, e.g., Brighton*, 2009 WL 10674077, at *2–3 (noting that in the Second, Fourth,
    Sixth, and Ninth Circuits, (1) where a derivative work incorporates an original work,
22  (2) the pleading of a derivative work enables the plaintiff to assert the original work);
    *Apple*, 35 F.3d at 1448 (citing approvingly to *Gamma Audio & Video, Inc., v. Ean–*
23  *Chea*, 11 F.3d 1106, 1111–12 (1st Cir.1993), which (1) "allow[ed an] exclusive
    licensee to *base [an] infringement suit on derivative works*" and (2) held that "because
24  [the] derivative works were unregistered, [the] *licensee could recover statutory*
    *damages* only *if defendant's unauthorized rental* of derivative works also *infringed*
25  *licensee's rights in underlying works*[,which were registered]" (emphases added));
    *accord Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 459
26  (S.D.N.Y. 2013) ("[Plaintiff] CSI moved to amend the Complaint to add pre-existing
    versions of BankTrade. There is no doubt that [Defendant] ABN has understood from
27  the outset—and itself asserted—that prior versions of BankTrade comprised what is
    now referred to in its copyrighted form as '8.0.' *There is no need to amend the*
28  *Complaint when the current version of BankTrade, according to ABN itself, is largely*
    *based on prior versions of the software*." (citations omitted) (emphasis added)).

1    Blanchard's MSJ was unnecessary, because CLS had proposed to assert the Bell

2    Curve Elements through the 1975 Work, and Blanchard's MSJ Memorandum ignored

3    the 1975 Work.  [D.E. 63-1, *passim.*]  Second, although Blanchard refused to litigate

4    the 1975 Work because it was not expressly asserted in the TAC, Blanchard

5    nonetheless moved, and the Court ruled, on works not expressly asserted in the TAC.

6         In fact, prior to filing its Opposition to Blanchard's MSJ ("MSJ Opposition"),

7    CLS informed Blanchard that it believed the MSJ was unnecessary because CLS

8    sought to pare down its copyright claim to the 1975 Work. [D.E. 69-14, at 4 ("We just

9    received and reviewed your MSJ.  It seems to focus on the copyright to the LEAD

10   and the 1977 four quadrant bell-curve model from the MOB 3rd Ed., and not the

11   earlier 1975 dissertation. We don't see any mention of our latest meet and confer

12   efforts on this issue. I've attached my Feb. 28, 2017 letter for your review.").]   In

13   response, Blanchard insisted that, because CLS would not drop its claims as to the

14   TAC Works "absent some payment to CLS," Blanchard had "asked the Court" to

15   dismiss said claims.  [*Id.*]

16        To alleviate skepticism as to its intentions, CLS' Opposition clearly stated that,

17   if CLS could support its claim through the 1975 Work, CLS would not assert other

18   works, even if CLS completely prevailed as to Blanchard's MSJ.  [D.E. 66, at 8:26-

19   28.]  At the time, CLS believed it would be able to pursue the Bell Curve Elements

20   through the 1975 Work, and under this assumption, "voluntarily dropped" its

21   assertion of other works as a show of good faith.  [D.E. 66, at 8:27.]  However, CLS

22   ***never represented*** that should it be unable to assert the 1975 Work, CLS would

23   dismiss its copyright claim with prejudice.  Put differently, CLS never indicated it

24   would give up its pursuit of the Bell Curve Elements.   Indeed, CLS sought to avoid

25   "dismissal on the merits" as to the works Blanchard moved on—including the 1984

26   Work.  [D.E. 66, at p. 8, ll. 26-28.]

27        Directly contrary to its current Motion, Blanchard's Reply to CLS' MSJ

28   Opposition asserted that Blanchard did not believe CLS' representations that it would

8                    Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

0811-1026 / 948567.1

1  pursue the 1975 Work in lieu of other works and stressed that ***CLS never agreed in***

2  ***any way to dismiss its copyright claim with prejudice***.  [D.E. 76, at 6:22-7:24.]

3  Indeed, Blanchard's Reply insisted that CLS "did ***not*** 'unequivocally' state it was not

4  pursuing the infringement claims."  [D.E. 76, at 7:20-21 (emphasis in original).]

5  Blanchard maintained that CLS intended to keep alive its claims as to the TAC Works

6  *and* the 1975 Work.[9]  Indeed, Blanchard clearly understood, and represented before

7  the Court, that "***CLS will not dismiss any portion of its copyright claims with***

8  ***prejudice absent written agreement between the parties.***" [*Id.* at 8:7-9 (emphasis in

9  original) (quoting CLS' February Letter).]

10      In sum, Blanchard never believed that CLS had dropped its assertion of TAC

11  Works (including the 1984 Work), let alone that CLS had unilaterally agreed to

12  dismiss the TAC Works with prejudice.

13      Blanchard's MSJ moved on the following: (1) the "LEAD" publication [D.E.

14  63-1, at 9:11-12] and (2) works categorized by Blanchard as "unidentified 'designs

15  [*sic*] figures, and diagrams' contained in several works."[10]  [*Id.* at 9:12-13.]  Blanchard

16  noted that the second category contained "several works" identified in

17  "interrogatories" but "*not mentioned* in the [TAC]"; Blanchard nonetheless moved on

18  them.[11]  [D.E. 63-1, at 10:6-8 (emphasis added).]   Indeed, the only work within the

19  second category that is explicitly asserted in the TAC is *The Situational Leader* (the

20

21

_____

22  [9] D.E. 76, at 8:13-18 ("But Leadership Studies *also* [1] *put conditions* on *any dismissal of the copyright claims in this lawsuit* [*i.e.*, as to TAC Works], [2] *rejected Blanchard*

23  *Training's demands to withdraw* the copyright claim and pay a reasonable attorney's fee, *and* [3] *raised a new theory of copyright infringement* based on a 1975 work."

24  (emphasis added).
[10] These works are enumerated at D.E. 63-1, at 10:8-15 and are: (1) *Leader Behavior*,

25  (2) *Life Cycle of Leadership*, (3) *So You Want to Know Your Leadership Style?*, (4) *Management of Organizational Behavior*, and (5) *The Situational Leader*.

26  [11] CLS does not know why Blanchard would (1) claim that it was focusing on only TAC Works such that the 1975 Work was not before the Court and (2) still move on

27  works that, by Blanchard's admission, were "not mentioned in the TAC."  [*Compare* D.E. 76, at 6:22-23 ("Blanchard[] Properly Moved on the Copyright Claim in the

28  [TAC]") *with* D.E. 63-1, at 10:6-8 (moving on works "not mentioned in the TAC").

1984 Work).  The Court ruled on works in both categories[12], including works that were not explicitly asserted in the TAC, and denied Blanchard's MSJ as to *Leader Behavior* and *The Situational Leader*.  [D.E. 108, at 9:23-25.]  Blanchard then filed this Motion.  [D.E. 117.]

## IV.   <u>STANDARD OF REVIEW</u>

Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Lee v. Del Mar Thoroughbred Club*, No. 12CV826-WQH-BLM, 2014 WL 3924626, at *2 (S.D. Cal. Aug. 8, 2014) (Hayes, J.) (quoting *Kona Enters. Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).  Motions for reconsideration are not opportunities for movants to re-litigate issues that either were, or could have been, presented at an earlier proceeding.  *Lorenzo v. Qualcomm Inc.*, No. 08CV2124 WQH LSP, 2009 WL 2448375, at *4 (S.D. Cal. Aug. 10, 2009) (Hayes, J.) ("Motions for reconsideration 'are not to be used to test new legal theories that could have been presented when the original motion was pending.'" (quoting *FDIC v. Jackson–Shaw Partners No. 46, Ltd.*, 850 F. Supp. 839, 845 (N.D. Cal.1994)).  A court in this District explained:

> A motion to reconsider is *not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously un meritorious arguments.* Reconsideration motions do not give parties a "second bite at the apple." Neither are they devices permitting the unsuccessful party to "rehash" arguments previously presented. Motions to reconsider are not justified on the basis of new evidence which could have been discovered prior to the court's ruling. Finally, " '*after thoughts' or 'shifting of ground' do not constitute an appropriate basis for reconsideration*."

*Ausmus v. Lexington Ins. Co.*, No. 08–CV–2342 L(LSP), 2009 WL 2058549, at *2 (S.D. Cal. July 15, 2009).  Yet, this is exactly what Blanchard seeks to do here.

"[A] motion for reconsideration *should not be granted, absent highly unusual circumstances*, unless the district court is presented with newly discovered evidence,

---

[12] D.E. 108, at 5:8-16 (listing works that CLS bases its copyright infringement claim on and relying on the categories identified by Blanchard at D.E. 63-1 at 9-10").

0811-1026 / 948567.1

committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 880 (9th Cir. 2009) (quotation omitted; emphasis added); *accord Henry v. Barnhart*, No. 06CV2266 WQH (AJB), 2008 WL 4856459, at *1 (S.D. Cal. Nov. 10, 2008) (Hayes, J.) (quoting *Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir.2008)).

Where, as here, the movant advances neither newly discovered evidence nor intervening changes in controlling law, the "only" issue is "whether the previous order" was in "clear error." *Catlin Underwriting Agencies Ltd. v. San Diego Refrigerated Servs.*, No. 08CV173 WQH (JMA), 2010 WL 2985416, at *3 (S.D. Cal. July 28, 2010) (Hayes, J.), *aff'd sub nom. Catlin Underwriting Agencies Ltd. v. San Diego Refrigerated Servs., Inc.*, 469 F. App'x 529 (9th Cir. 2012) (internal quotation marks omitted) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir.1999)). "A clear error, or 'manifest error' is 'an error that is plain and indisputable[ ] and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Biller v. Peter Rodgers Org. Ltd.*, No. CV 05–01597 SJO (PLAx), 2008 WL 11336943, at *1 (C.D. Cal. Nov. 18, 2008) (citation omitted; brackets in original). In other words, the Court's prior decision must be "dead wrong." *In re Novatel Wireless Securities Litig.*, No. 08cv1689 AJB (RBB), 2012 WL 2499001, at *2 (S.D. Cal. June 27, 2012) (noting lack of definition in Ninth Circuit and collecting definitions from other Circuits).

"In sum, a motion for reconsideration cannot be granted merely because Plaintiff is unhappy with the judgment, frustrated by the Court's application of the facts to binding precedent or because he disagrees with the ultimate decision." *Bridgeman v. Peralta*, No. CIV. 11-2132 WQH PCL, 2011 WL 5830427, at *1 (S.D. Cal. Nov. 18, 2011) (emphasis added).

## V.   LEGAL ARGUMENT

### A.   Blanchard's Motion Impermissibly (a) Raises Issues That Blanchard Could Have Litigated, (b) Seeks To Judicially Estop CLS

1    **From Pursuing The 1984 Work, And (c) Directly Contradicts**

2    **Blanchard's Earlier Representations To This Court.**

3    Blanchard's Motion should be denied because it utterly fails to establish "clear

4    error" by this Court, the only *theoretically conceivable* basis for its Motion.

5    Blanchard identifies ***neither*** newly discovered evidence ***nor*** any change in

6    intervening law that would justify its Motion.

7    **1.   *Because Blanchard's MSJ Never Suggested That CLS Abandoned***

8    *Its Claims To The Bell Curve Elements, It Cannot Do So Now.*

9    "Motions for reconsideration are not to be used to test new legal theories that

10   could have been presented." *Lorenzo*, 2009 WL 2448375, at *4 (internal quotation

11   marks and citation omitted); *accord United States v. Uptergrove*, No.

12   1:06CV01630AWI-GSA, 2008 WL 5251777, at *7 (E.D. Cal. Dec. 17, 2008) ("Here,

13   none of Defendants' contentions were raised prior to the motion to vacate or set aside

14   judgment. These issues could have been addressed in [earlier motions] … the court

15   simply cannot grant reconsideration based on these new contentions." (emphases

16   added)).  For example, a movant cannot make entirely new arguments based on the

17   same documents in the original motion when it could have made those arguments

18   earlier.  *See, e.g.*, *Monaco v. Quest Diagnostics, Inc.*, No. CIV.A. 08-2500-KHV,

19   2010 WL 4366204 (D. Kan. Oct. 28, 2010); *Ward v. Barnes & Noble, Inc.*, No. 13-

20   CV-7851 JMF, 2015 WL 1442449 (S.D.N.Y. Mar. 30, 2015).

21   Illustratively, in *Monaco*, the defendants "ask[ed] the Court to reconsider its

22   ruling" as to defendants' summary judgment motion because Defendants "did not

23   argue" that plaintiff had "abandon[ed]" her claim.  2010 WL 4366204, at *5.

24   Defendants had premised their abandonment argument on deposition testimony that

25   was already litigated (on different grounds) during the underlying summary judgment.

26   *Monaco* held that because "[a] motion to reconsider is not an appropriate vehicle to

27   present new arguments which defendant could have presented originally," the court

28   would "not reconsider its ruling" on the aforesaid ground.  *Id.* (citation omitted).

1   The court in *Ward* rejected similar efforts.  The court addressed the defendant's

2   position as follows:

3       Defendants also contend that reconsideration [of defendants' summary

4       judgment motion] is warranted because one paragraph in Plaintiff's
        original, improperly filed Rule 56.1 statement describes the "content
        for which Plaintiff had a United States copyright" as "the text or words

5       that comprised the solutions to the various hangman puzzles." This
        argument is unavailing … *First, on their motion for summary judgment,*

6       *Defendants argued only that this statement supported their argument*
        *that the copyright did not extend to the illustrations in the various*

7       *books, not that it also established that the copyright did not extend to*
        *the books' instructions.*

8

9   2015 WL 1442449 at *3 (*emphasis* added).  Blanchard's Motion leads to the

10  same conclusion.

11      In its Motion, Blanchard argues that the MSJ Order should be "amended to

12  reflect the abandonment" of the 1984 Work [D.E. 117, at 5:18-19], and, in support of

13  this contention, quotes from CLS' Opposition.  [*Id.*, at 5:27-6:10.]  The Court should

14  not reconsider on this ground because Blanchard had two opportunities to raise the

15  abandonment issue, and each time, declined to.  Indeed, although Blanchard's Motion

16  asserts that CLS' Opposition is a clear example of abandonment, Blanchard's *Reply*

17  *to CLS' Opposition* took the diametrically opposite position.  [D.E. 76, at 7:9-8:18.]

18  In any event, CLS never stated it would stop pursuing the Bell Curve Elements in that

19  work.

20      CLS first attempted to pare down its copyright claim to the 1975 Work in

21  February 2017—a month before Blanchard's MSJ.  Blanchard: (1) ignored this

22  communication in its MSJ Memorandum because it "focused on the copyright claim

23  actually pending in the lawsuit in [the] T AC"[13]; [D.E. 76, at 7:3-4] and (2) *explicitly*

24  *declined to raise the abandonment issue*, instead limiting its MSJ to "the narrow issue

25  of gaps in [CLS'] chain-of-title."  [D.E. 63-1, at 5:10-11.]

26      CLS' Opposition reiterated its desire to pare down its copyright claim to the

27

28  [13] Blanchard nonetheless moved on works that were not expressly asserted in the
    TAC.  *See* § III.B, *supra*.

13

1975 Work.  In its Reply, Blanchard could have quoted language from CLS' Opposition—as it does in its Motion—to argue that CLS abandoned its claim as to the 1984 Work.  Blanchard did not do that.  [D.E 76, *passim*.]  Instead, Blanchard insisted that (1) CLS never even unequivocally agreed to drop its claims as to TAC Works (including the 1984 Work); and (2) CLS never agreed to dismiss such claims with prejudice, because CLS conditioned such dismissal on a written agreement and compensation.  § III.B, *supra*.  Blanchard made these arguments because it was seeking a ruling on the merits as to non-1975 Works, including the 1984 Work.  *Id.*  Indeed, Blanchard represented to the Court in its Reply that CLS was keeping alive its claims as to *both* TAC Works *and* the 1975 Work.[14]

Moreover, irrespective of what Blanchard represents, CLS has never stated it would drop its pursuit of the Bell Curve Elements.  § III.B, *supra*  CLS has only tried to efficiently litigate the Bell Curve Elements by asserting the original source as opposed to the later, derivative in the 1984 Work.  *See id.*

In light of Blanchard's earlier assertions and arguments in connection with its MSJ, it is clear that Blanchard *now* seeks a "do-over" of its MSJ, based on completely new arguments *that it could have asserted but chose not to.*  This amounts to telling this Court that it was "just kidding" in its Reply, and would like to try different, inconsistent arguments.  It cannot do so.

Accordingly, Blanchard's argument that CLS abandoned its claims with prejudice should not be considered.  Also, even though Blanchard's Motion asks the Court to dismiss CLS' copyright claim with prejudice based on CLS' purported representations, Blanchard's Reply clearly expressed that CLS *never stated that it would unilaterally dismiss, without precondition, its copyright claim as to the Bell*

---

[14] D.E. 76, at 8:13-18 (CLS "[1] *put conditions* on *any dismissal of the copyright claims in this lawsuit* [*i.e.*, as to TAC Works], [2] *rejected Blanchard['s] demands to withdraw* the copyright claim and pay a reasonable attorney's fee, *and* [3] *raised a new theory of copyright infringement* based on a 1975 work." (emphases added).

*Curve Elements with prejudice*.  [D.E. 76, at 8:7-9 (Blanchard's Reply states: "***CLS will not dismiss any portion of its copyright claims with prejudice absent written agreement between the parties***." (emphasis in original)]. Put differently, Blanchard's request is wrong on the law, wrong (and self-contradictory) on the facts, and an example of blatant overreach.

> **2.** *Even If CLS Voluntarily Withdrew Its Claim To The 1984 Work, CLS May Re-allege It To Assert The Bell Curve Elements.*

Even assuming, *arguendo*, that CLS abandoned its claim as to the 1984 Work[15], CLS, as a matter of law, can re-allege the 1984 Work.  "Although a plaintiff who fails to re-assert, in an amended complaint, a claim for relief that was previously dismissed is deemed to have waived that claim, *if the party instead voluntarily withdraws the claim, it is not waived and may be re-alleged*."  *OEM-Tech v. Video Gaming Techs., Inc.*, No. C 10-04368 RS, 2011 WL 13153640, at *2 (N.D. Cal. Dec. 21, 2011) (citations omitted; emphasis added) (surveying cases); *see also Haddock v. Nationwide Fin. Servs. Inc.*, 514 F. Supp. 2d 267, 273 (D. Conn. 2007) ("Courts in the Ninth Circuit" enable "a party" to "realleg[e] a claim that it voluntarily withdrew from an earlier complaint." (surveying cases)).

In *OEM-Tech*, the defendant opposed the re-alleging of a claim by "generally argu[ing] that permitting [plaintiff] OEM to re-allege [its] claim, nearly a year and a half into litigation, and after OEM has already enjoyed three prior opportunities to amend, is prejudicial," such that plaintiff should not be allowed to amend its complaint under Fed. R. Civ. P. 15 ("Rule 15").  2011 WL 13153640, at *3.  The Court nonetheless permitted the re-allegation.  It concluded that the defendant failed to "explain what *specific prejudice* it w[ould] suffer if OEM" was permitted to reassert

---

[15] As discussed in§§ III.B and V.A.1, *supra*, CLS never unilaterally dismissed its copyright claim as to the Bell Curve Elements (nor did Blanchard harbor such an interpretation of CLS' words until the Motion).  *See* note 14, *supra*.  CLS merely sought to litigate the Bell Curve Elements through the 1975 Work, in lieu of the 1984 Work.  § III.A, *supra*.

1   its claim.  *Id.* (emphasis added).  Moreover, it held that, because the "prior complaints
2   notified [defendant] VGT of the claim," VGT could not claim "surprise."  *Id.*

3       Indeed, courts in the Ninth Circuit have allowed re-alleging of withdrawn
4   claims even on the *eve of trial*.  As explained in *Google, Inc. v. Affinity Engines, Inc.*,
5   No. C 05-0598 JW, 2005 WL 2007888 (N.D. Cal. Aug. 12, 2005),

> [C]ourts may allow a plaintiff to reallege a voluntarily withdrawn
> claim. See e.g., Southwest Forest Indus., Inc. v. Westinghouse Elec.
> Corp., 422 F.2d 1013, 1015 (9th Cir.1970) In *Southwest Forest*, the
> plaintiff "voluntarily abandoned its warranty count" after defendant
> moved for summary judgment on that issue. *Id.* "Then, *literally on the
> eve of trial*, Southwest filed a motion to amend its complaint to reallege
> the warranty theory." *Id. Even under those circumstances, the Court
> did not deem that claim waived. See id.*

11  *Id.* at *7 (emphases added).

12      Blanchard's Motion states that CLS "voluntarily dropped" its claim as to the
13  1984 Work.  [D.E. 117, 6:10.]  Even if this were true, which it is not, the preceding
14  authorities establish that CLS may re-allege the 1984 Work.

15      Moreover, because CLS never amended the TAC to "drop" the 1984 Work, no
16  amendment to the pleadings under Rule 15 is necessary.  As a result, analysis into
17  whether Blanchard was "prejudiced" is unnecessary although the Motion seeks to
18  argue the issue of prejudice (D.E. 117, at 6:17).

19      Blanchard argues that if CLS were allowed to assert the 1984 Work, Blanchard
20  "would be prejudiced because it relied upon [CLS'] representations in its Reply
21  supporting [its MSJ] and in the manner depositions were conducted in discovery."
22  [D.E. 117, at 3:1-4.]  This argument lacks factual and legal merit.  *See generally* §
23  V.A.4, *infra.*  First, Blanchard's Reply states that CLS "did ***not*** 'unequivocally' state
24  it was not pursuing the infringement claims [including as to the 1984 Work] addressed
25  in [BTD's MSJ]."  [D.E. 76, at 7:20-21 (emphasis in original).]  Indeed, Blanchard's
26  Reply indicates that (1) CLS never represented it would drop the 1984 Work with
27  prejudice; [*Id.* at 8:7-10] and that (2) Blanchard *never relied* on such a non-existent
28  representation.  [*See id.* at 6:22-9:9.]  Moreover, Blanchard's current position that it

1  conducted depositions under the assumption that the 1975 Work is before the Court

2  contradicts Blanchard's position in the MSJ—that the 1975 Work was not before the

3  Court.   Blanchard's decision to take contradictory positions is attributable to

4  Blanchard alone.   In any event, Blanchard does not and cannot state that it was

5  prevented from asking questions related to CLS' ownership of the Bell Curve

6  Elements, which appear in the 1984 Work.

7        Finally, as in *OEM-Tech*, 2011 WL 13153640, at *3, Blanchard cannot claim

8  "surprise" that CLS is asserting the1984 Work because this publication has been

9  asserted *since the first complaint*.  [D.E. 15, ¶ 85.]  Unsurprisingly, just as in *OEM-*

10  *Tech*, Blanchard fails to mention what "specific" prejudice it would suffer if CLS

11  asserted the Bell Curve Elements through the 1984 Work.[16] *Id.*  Moreover, Blanchard

12  cannot identify any specific prejudice because (1) the 1975 and 1984 Works both

13  enjoy clear chain of title to CLS; and (2) CLS merely seeks to assert through the 1984

14  Work *the same Bell Curve Elements* it had sought to assert through the 1975 Work.

15  *See, e.g.*, *Thieme v. Cobb*, No. 13-CV-03827-MEJ, 2016 WL 3648531, at *5 (N.D.

16  Cal. July 8, 2016) ("*VanDyk has not explained how it will be prejudiced* aside from

17  the *generalized need to participate in further discovery … Even so, VanDyk does not*

18  *articulate why it believes it will need to conduct significant additional discovery …*

19  Plaintiffs' UCL claims *all appear rooted in the same facts and theories associated*

20  *with their negligence claims*. Consequently, the Court cannot find VanDyk has met

21  its burden to demonstrate prejudice." (emphases added)).

22        **3.**    *CLS Is Not Judicially Estopped From Asserting The 1984 Work*

23  *Because The Court Declined To Allow It To Pursue The 1975 Work But Held That*

24  *CLS May Pursue The Derivative 1984 Work.*

25  _____

26  [16] In fact, in discovery since February 2017, and throughout the depositions in this

27  matter, the issue of the ownership of the Bell Curve Elements was addressed at length. Declaration of Michele Desoer ¶ 2.  CLS' ownership of these elements, in turn,

28  establishes its ownership of the elements in the derivative 1984 Work.

Given CLS' ability to assert the 1984 Work, Blanchard argues that CLS is judicially estopped from doing so because, in allegedly abandoning the 1984 Work, CLS "ma[de] a strategic decision in order to gain an advantage in litigation."  [D.E. 117, at 6:2-10 (relying on judicial estoppel case law).]  This argument fails because (1) the Court never relied on CLS' representations as to the 1984 Work; and (2) CLS did not try to pare down its copyright claim for strategic advantage.[17]  *See* § III.A, *supra* (CLS offered to litigate the 1975 Work in good faith)  Indeed Blanchard fails to, and cannot, explain why this would provide CLS with "an advantage in litigation."

Judicial estoppel holds that "[w]here a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position*, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2011) (internal quotation marks and citation omitted; emphasis added) ("*Maine*").  In determining whether to judicially estop a party from asserting a position, courts look to three considerations, whether: (1) "a party's later position [is] clearly inconsistent with its earlier position"; (2) "*the party has succeeded in persuading a court to accept that party's earlier position*"; and (3) "the party seeking to assert an inconsistent position *would derive an unfair advantage or impose an unfair detriment* on the opposing party if not estopped."  *Id*. at 749-750 (emphasis added).

"Judicial estoppel applies when a party's position is tantamount to a *knowing misrepresentation to or even fraud on the court*."  *Johnson v. State, Oregon Dep't of*

---

[17] Blanchard seems to argue that because CLS did not comply with Fed. R. Civ. P. 41(a) ("Rule 41") in dropping its claims, CLS was "voluntarily dropping" its claim for strategic advantage.  This argument is legally untenable and self-contradictory. First, Rule 41 is not an appropriate vehicle for dropping a single claim of a multi-claim complaint, much less a vehicle for dropping specific asserted works of a single copyright claim.  *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988) ("[A] plaintiff may not use Rule 41(a)(1)(i) to dismiss, unilaterally, a single claim from a multi-claim complaint.").  Second, Blanchard's argument that Rule 41 is the proper vehicle for dropping claims contradicts its statement that "[a] litigant may abandon a claim by communicating his desire to do so to the district court, and doing so in a written response to a motion is sufficient to dismiss a claim without further amendment."  [D.E. 117, at 5:18-21.]

1   *Human Res., Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998) (emphasis added).

2   Thus, judicial estoppel only applies if a court has *relied on* a party's previously

3   inconsistent statement.   *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's,*

4   *London*, 139 F.3d 1234, 1239 (9th Cir. 1998) ("A majority of courts apply judicial

5   estoppel only if the court has relied on the party's previously inconsistent statement,

6   and we have recently adopted that rule."); *accord Ah Quin v. Cty. of Kauai Dep't of*

7   *Transp.*, 733 F.3d 267, 274 (9th Cir. 2013) ("The Supreme Court put it well: 'Absent

8   success in a prior proceeding, a party's later inconsistent position introduces no risk

9   of inconsistent court determinations and thus poses little threat to judicial integrity.'

10  *New Hampshire*, 532 U.S. at 750–51.").   Moreover, "[i]f incompatible positions are

11  *based not on chicanery, but only on inadvertence or mistake*, *judicial estoppel does*

12  *not apply*."  *Johnson*, 141 F.3d at 1369 (emphasis added).

13          Under these standards, CLS is not estopped as a matter of law.  First, the Court

14  *rejected CLS' attempt to assert the 1975 Work in lieu of the 1984 Work*, concluding

15  that CLS' proposal was an improper effort to amend the TAC.[18]  [D.E. 108, at 8:26-

16  9:7.]  Indeed, although the Court held that the 1975 Work was not in the pleadings

17  and therefore, not before the Court [*id.*], it nevertheless granted Blanchard's MSJ as

18  to the 1975 Work.  [*Id.* at 9:23 (granting summary judgment to Blanchard for the

19  "Dissertation."]   Under these circumstances, (1) the Court did not rely on CLS'

_____

21  [18] CLS respectfully submits that its proposal to litigate the 1975 Work in lieu of the
22  1984 Work was not an improper effort to amend the TAC because (1) the 1984 Work
23  incorporated the 1975 Work, such that (2) CLS could assert the 1975 Work through
    the already-pled 1984 Work without amending the TAC. *See* note 8, *supra* (surveying
24  cases holding that the pleading of derivative work enables a plaintiff to assert the
25  infringement of the underlying original work).  Moreover, "when issues are raised in
    opposition to a motion to summary judgment that are outside the scope of the
26  complaint, the district court should … construe[] the matter raised as a request … to
27  amend the pleadings." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th
    Cir. 2014) (internal quotation marks, alterations, and citations omitted).  CLS is filing
28  a motion to address these issues under Federal Rule of Civil Procedure 60.

representation that it desired to assert the 1975 Work and, instead, ruled that CLS could assert the 1984 Work; [D.E. 108, at 9:23-25] and (2) CLS obtained no strategic advantage whatsoever from its attempt to pare down its copyright claim. Moreover, because CLS' offer to do so was in good faith, based on the same elements as what CLS asserts through the 1984 Work, no "chicanery" was involved. Given the lack of reliance and chicanery, judicial estoppel should not apply. *See, e.g.*, *Larin Corp. v. Mueller*, 364 F. App'x 380, 382–83 (9th Cir. 2010) (holding that even "assuming there [w]as error," applying "judicial estoppel [w]as the wrong tool for the job" and was reversible error because "[n]othing in the record demonstrates that [plaintiff] Larin succeeded in persuading the [court] to accept the position that Larin had abandoned its trade dress infringement claim").

Indeed, application of the three considerations described in *Maine*, 532 U.S. at 749-50, require the same conclusion. First, CLS' present reliance on the 1984 Work is not "clearly inconsistent" with its attempt to pursue the same Bell Curve Elements through the 1975 Work. To the contrary, CLS has always litigated the similarity between its Situational Leadership® Model and Blanchard's Situational Leadership® II Model based on the Bell Curve Elements.[19] As discussed above, litigation of the derivative 1984 Work necessarily encompasses litigation of the 1975 Work as the source of its rights. Second, CLS clearly did not persuade the Court to accept is proposal. [D.E. 108, at 8:26- 9:7.] Third, *Blanchard*, not CLS, seeks to benefit from

---

[19] *See, e.g.*, *Larin*, 364 F. App'x at 382 ("[Defendant] Alltrade claims that [plaintiff] Larin should be judicially estopped from pursuing a claim for trade dress infringement because during discovery Larin shifted from a trade dress infringement claim to a false advertising claim … and Alltrade was thus prejudiced …Larin's scattered references to false advertising during discovery do not support the contention that Larin adopted disparate positions that were clearly inconsistent with one another … *[T]he essential nature of the dispute is readily apparent*. The record is replete with claims about and discovery related to the *similarities between the Larin and Alltrade boxes* … Alltrade acknowledged during the pretrial conference that the elements of false advertising and trade dress infringement overlap to some degree. Larin's self-definition of 'trade dress' during discovery muddied the waters, but in the end *did not change the essential nature of its claims*." (emphases added)).

contradictory positions.  *See* §§ V.A.1, *supra*; V.A.4, *infra* (noting that Blanchard is asking the Court to reconsider based on representations that diametrically opposed to those made in Blanchard's MSJ).  Finally, Blanchard does not identify any specific prejudice that would result from CLS' assertion of the 1984 Work.[20]  § V.A.2, *supra*.

### 4.    *Blanchard Should Be Estopped From Bringing This Motion.*

Ironically, it is Blanchard who should be estopped from bringing this Motion because, as discussed above, Blanchard is the party seeking to benefit from *its* inconsistent representations.     First, Blanchard now asserts that (1) CLS unilaterally abandoned its 1984 Work with prejudice; [D.E. 117, at 5:18-26] such that (2) the Court should dismiss with prejudice CLS' copyright claim. [*Id.* at 6:21-24]  This position clearly contradicts Blanchard's earlier statements that (A) CLS "rejected Blanchard Training's demands to withdraw its copyright claim" and instead, "raised" an *additional* "theory of copyright infringement based on [the 1975 Work]"; [D.E. 76, at 8:13-17] and (B) Blanchard's MSJ was limited to the "narrow issue" of chain of title.  [D.E. 63-1, at 5:10-11.]

Second, Blanchard persuaded the Court that its MSJ would dispose of "live" issues. Consistent with Blanchard's representations, the Court granted summary judgment as to various works based on chain-of-title issues.  [D.E. 108, at 9:19-25.]

Third, injustice would result if Blanchard could now pursue these inconsistent positions in its Motion.  Specifically, Blanchard precluded CLS from asserting the Bell Curve Elements through the 1975 Work by adopting one position.  Now, Blanchard seeks to preclude CLS from asserting the same elements through the 1984 Work by adopting a diametrically opposite position.  If not estopped, Blanchard's position would greatly prejudice CLS because CLS would be forced to forego its

---

[20]  To the extent Blanchard identifies any specific areas of additional discovery that it may need, CLS is willing to work with Blanchard to secure the information it needs. However, CLS' witnesses consistently testified that its copyright claims were centered on the Bell Curve Elements.

21                          Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

0811-1026 / 948567.1

1   copyright claim even though (1) Blanchard had originally moved on the narrow issue

2   of chain-of-title; (2) CLS *does* have chain-of-title to the Bell Curve Elements[21]; and

3   (3) if CLS had not attempted to pare down its copyright claim to the 1975 Work, the

4   Court would have simply denied summary judgment as to the 1984 Work.[22]

5   **B.   Reconsideration Of The Court's Denial Of Attorney's Fees Would**

6   **Impermissibly Re-litigate Case Law Previously Before The Court.**

7        Blanchard also asks that the Court reconsider its denial of Blanchard's request

8   for attorney's fees. [D.E. 117, at 7:1- 8:15.] In requesting reconsideration, Blanchard

9   improperly relies on case law that has already been briefed. *Compare* D.E. 117, 7:8-

10  19 (asking the Court to apply the "material alteration" test and citing to *Cadkin v.*

11  *Loose*, 569 F.3d 1142, 1149) *with* D.E. 76, at 13:15-19 (quoting *Cadkin* as to the

12  material alteration test). Blanchard identifies no new facts, nor any intervening law,

13  that would warrant reconsideration of this Court's denial of attorney fees. Therefore,

14  Blanchard's request should be denied as an impermissible attempt to re-litigate the

15  issue of attorney's fees. *See ArchitectureArt LLC v. City of San Diego*, No. 15-CV-

16  01592-BAS-NLS, 2017 WL 1346899, at *1 (S.D. Cal. Apr. 4, 2017) ("[A] motion for

17  reconsideration will be denied where the motion reflects the same arguments, facts

18  and *case law* that *were previously considered and ruled upon* by the court.") (citation

19  omitted; emphasis added).

20       Moreover, to the extent that Blanchard argues that there is "clear" error because

21  the Court did not find Blanchard to be the "prevailing" party under the "material

22  alterations" test, such an argument suffers from multiple deficits. The fact that a Court

23  _____

24  [21] *See* D.E. 69-7 (1975 Work Copyright Registration in Dr. Hersey's name); D.E. 69-

25  8 (1975 Work assignment from Dr. Hersey to CLS).

26  [22] *See, e.g.*, *Catrino v. Town of Ocean City*, No. CIV.A.WMN-09-505, 2009 WL
    3347356, at *2-*3 (D. Md. Oct. 14, 2009) (plaintiff opposed a motion to dismiss by

27  (1) abandoning an initial theory that would have survived the motion to dismiss; and
    (2) advanced, in lieu of the original theory, an "unsupportable" one; under such

28  circumstances, the Court found that dismissing the claim "due to the temporary
    confusion of counsel would do a manifest injustice").

did not explicitly apply a test does not warrant reconsideration.  *See, e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1076 (9th Cir. 2015) (upholding a denial of a motion for reconsideration even though "the district court did not *explicitly* apply the 'effect test[]'" (emphasis added)  Moreover, even if reconsidered on the merits, attorney's fees are not warranted.

First, where both parties "win," Courts have applied the "materials alteration" test to find that *neither* party is the "prevailing" party for attorney's fees purposes. *See, e.g.*, *Hardisty v. Moore*, No. 11-CV-01591-BAS BLM, 2015 WL 6671557, at *10 (S.D. Cal. Nov. 2, 2015) (holding that "where judgment was entered in favor of both parties, the Court does not find that Plaintiff is the prevailing party."); *see also Sundaram v. Villanti*, 174 Fed. App'x 368, 370 (9th Cir. 2006) (district court did not abuse its discretion in refusing to tax costs for prevailing party due to "mixed judgment" and facts of the case).  Thus, the MSJ Order was not in error, let alone "clear error," by concluding that Blanchard was not entitled to fees because its MSJ as denied in part. [D.E. 108, at 9:10-12.]

Second, Blanchard's current Motion argues CLS "voluntarily dropped" all claims except for the 1975 Work.  [D.E. 117, at 6:10.]  However, cases on which Blanchard relies clearly hold that voluntary abandonment does *not* render Blanchard a prevailing party for attorney's fees purposes; indeed voluntary abandonment is laudable.  *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) ("A defendant's voluntary change in conduct … lacks the necessary judicial imprimatur on the change" sufficient to warrant deeming the plaintiff a "prevailing party"); *Cadkin*, 569 F.3d at 1149 ("The Cadkins' voluntary dismissal 'does not alter the legal relationship of the parties because [the Trust and May–Loo] remain[] subject to the risk of refiling' following a dismissal without prejudice. We therefore hold the [defendants] are not prevailing parties and are not entitled to attorney's fees." (citation omitted)); *see also AcademyOne, Inc. v. CollegeSource, Inc.*, No. CIV.A. 08-5707, 2010 WL 962320, at *3 (E.D. Pa. Mar. 16,

23

Case No. 15CV1831 WQH-KSC
LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR
RECONSIDERATION OF ORDER

0811-1026 / 948567.1

1   2010) (denying attorney's fees because "to the extent that [plaintiff] AcademyOne

2   abandoned claims that it concluded, *after full discovery*, could not prevail, [the Court]

3   applaud[ed] that conduct rather than condemn[ed] it" (emphasis added)).

4          Thus, based on Blanchard's own claim that CLS "abandoned" the works

5   referenced in the FAC, Blanchard could, in theory, only be a "prevailing" party as to

6   the 1975 Work since that one was not referenced in the FAC.  However, Blanchard

7   moved only on the narrow issue of chain-of-title, and CLS has undisputed chain-of-

8   title as to the 1975 Work.  Nor is there any indication that the Court entered judgment

9   with prejudice as to the 1975 Work since its ruling was based on the 1975 Work's

10  omission from the TAC.  *See, e.g., Interscope Records v. Leadbetter,* 312 Fed. Appx.

11  50, 52 (9th Cir. 2009) ("dismissal without prejudice does not constitute a material

12  alteration in litigants' legal relationship" that warrants an attorney fees award).

13         Third, even if the Court were to reconsider its ruling and concluded that

14  Blanchard was a "prevailing party," attorney's fees are still not warranted in light of

15  the equities.  *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)

16  (listing factors to consider for attorney's fees: (1) frivolousness; (2) motivation; (3)

17  objective unreasonableness; (3) compensation and deterrence; (4) degree of success

18  obtained; (5) purposes of the Copyright Act; and (6) whether the chilling effect of

19  attorney's fees may be too great or impose an inequitable burden on an impecunious

20  plaintiff (internal quotation marks and citations omitted)).  CLS' copyright claims are

21  neither frivolous nor objectively unreasonable, given Blanchard's *own* consistent

22  belief that CLS has title as to (1) the Situational Leadership® Model (*see* § II, *supra*)

23  and (2) LEAD.  [*See* D.E. 69-9 (Dr. Blanchard paid licensing fees to CLS for using

24  LEAD).]  Moreover, because *both* CLS and Blanchard long-believed that CLS owned

25  the Situational Leadership® Model and LEAD, CLS has good reason to believe in the

26  merits of its copyright claim, and was entitled to the opportunity to pierce through the

27  fog of time to identify chain of title.  *See, e.g.*, *Canal+ Image UK Ltd. v. Lutvak*, 792

28  F. Supp. 2d 675, 679 (S.D.N.Y. 2011) (denying request for attorney's fees where

1   "Defendants' own actions suggest[ed] they once believed what [plaintiff] Canal+

2   argued" because (1) "Defendants entered into a licensing agreement for the very rights

3   they now contend were obviously worthless" and (2) the aforesaid agreement

4   "'appear[ed] to indicate that defendants themselves did not view plaintiff's copyright

5   claims as specious." (internal quotation marks and citation omitted)).

6       Finally, although Blanchard rehashes its theory that CLS "rushed" to assert its

7   copyright claim to disrupt a transaction [D.E. 117, at 8:5-7], CLS notes that Blanchard

8   has no factual basis for such an assertion.   [D.E.66, at 29:10-25.]   Moreover, this

9   assertion is belied by the fact that CLS has made significant sacrifices in litigating its

10  copyright and other claims which negates the notion that sanctions would "deter" CLS

11  from asserting its copyrights.  *See, e.g., Bisson-Dath v. Sony Computer Entm't Am.*

12  *Inc.*, No. CV-08-1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012)

13  ("Additionally, the amount of time and effort Plaintiffs devoted to this suit weighs

14  against a finding of bad faith. Bisson–Dath declares that Plaintiffs spent thousands of

15  hours analyzing the record and incurred substantial debt in connection with this

16  action. It is unlikely that Plaintiffs would have made such a personal sacrifice if they

17  believed their claims lacked merit.").

18  **VI.   CONCLUSION**

19      Blanchard's Motion is premised on representations that diametrically oppose

20  those made in Blanchard's MSJ.   Moreover, Blanchard impermissibly seeks to re-

21  litigate issues that it either asserted, or could have asserted and fails to demonstrate

22  clear error.  Accordingly, the Motion should be denied in its entirety.

23  Dated: November 13, 2017                    Respectfully submitted:

24                                              **ZUBER LAWLER & DEL DUCA LLP**
                                                MICHELE M. DESOER
25                                              JEFFREY J. ZUBER
                                                HEMING XU
26

27                                        By:  *s/ Michele M. Desoer*
                                              Attorneys for Plaintiff and Counterclaim-
28                                            Defendant Leadership Studies, Inc.

## PROOF OF SERVICE

**Leadership Studies, Inc. v. Blanchard Training Development**
**Case No. 15CV1831 WQH-KSC**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, CA 90017, USA.

On November 13, 2017, I served true copies of the following document(s) described as **LEADERSHIP STUDIES, INC.'S OPPOSITION TO BLANCHARD TRAINING'S MOTION FOR RECONSIDERATION OF ORDER** on the interested parties in this action as follows:

Steven M. Strauss
Dennis C. Crovella
John Paul Oleksiuk
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Tel: 858-550-6000
Fax: 858-550-6420
Email:  sms@cooley.com
        dcrovella@cooley.com
        jpo@cooley.com
Attorneys for Defendant and
Counterclaim-Plaintiff Blanchard
Training and Development,
Incorporated

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 13, 2017, at Los Angeles, California.