MICHELE DESOER (SBN 119667)
  *mdesoer@zuberlaw.com*
JEFFREY J. ZUBER (SBN 220830)
  *jzuber@zuberlaw.com*
HEMING XU (SBN 302461)
  *hxu@zuberlaw.com*
**ZUBER LAWLER & DEL DUCA LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone: (213) 596-5620
Facsimile:  (213) 596-5621

Attorneys for Plaintiff and Counterclaim-Defendant
Leadership Studies, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADERSHIP STUDIES, INC., | CASE NO. 15CV1831 WQH-KSC |
| Plaintiff, | |
| v. | **LEADERSHIP STUDIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR SUMMARY JUDGMENT [D.E. 130]** |
| BLANCHARD TRAINING AND DEVELOPMENT, INC., | |
| Defendants. | Date: January 29, 2018 |
| | Judge: Hon. William Q. Hayes |
| BLANCHARD TRAINING AND DEVELOPMENT, INCORPORATED, | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| Counterclaim-Plaintiff, | [Filed Concurrently with Notice of Motion and Motion for Reconsideration of Order and Declaration of Michele M. Desoer] |
| v. | |
| LEADERSHIP STUDIES, INC., | |
| Counterclaim-Defendant. | |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................. 1

II. STATEMENT OF RELEVANT FACTS ............................... 2

    A. The Parties Resolved, With The 1982 Agreement, A Legal Dispute And Continued To Negotiate A More Comprehensive License. ................................................................................. 3

    B. The 1987 License Finalized The Parties' Licensing Arrangement And Changed CLS' Obligation To Refrain From Suit. .......................... 4

III. PROCEDURAL HISTORY ................................................. 6

IV. STANDARD OF REVIEW .................................................. 7

V. LEGAL ARGUMENT ......................................................... 9

    A. The Court Should Reconsider Its Ruling Because Dr. Blanchard's Deposition, Taken After Briefing On BTD'S Motion, Provides New, Countervailing Evidence Probative Of An Intent To Novate. ................................................. 9

    B. In Ruling On Summary Judgment Motions, All Inferences Must Be Drawn For The Non-Movant; Here, The 1982 Agreement And 1987 License Impose Conflicting Obligations And The Parties' Conduct Suggests Novation ....................................... 11

        1. Conflicting obligations establish novation. ................ 13

        2. BTD's conduct since 1987 conflicts with the 1982 Agreement. ........................................................... 16

VI. CONCLUSION .................................................................. 18

Case No. 15CV1831 WQH-KSC

LEADERSHIP'S  MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaron & Andrew, Inc. v. Sears Holdings Mgmt. Corp.*
   No. CV 14-1196 SS, 2017 WL 3449598 (C.D. Cal. Apr. 14, 2017) ............... 9

*Abbott Labs. v. Syntron Bioresearch Inc.*
   No. 98-CV-2359 H (POR), 2001 WL 34082554 (S.D. Cal. Mar. 7,
   2001) ............................................................................................................. 8

*Already, LLC v. Nike, Inc.*
   568 U.S. 85 (2013 ....................................................................................... 10, 15

*Alves v. Players Edge, Inc.*, No. 05CV1654WQH(CAB) 2007 WL 6004919,
   (S.D. Cal. Aug. 8, 2007) ............................................................................... 8

*Amarel v. Connell*
   102 F.3d 1494 (9th Cir.1996) ....................................................................... 7

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ...................................................................................... 11

*Audigier Brand Mgmt. v. Perez,* No. CV 12-5687-CAS RZX, 2012 WL
   5470888 (C.D. Cal. Nov. 5, 2012) ................................................................ 14

*Briggs v. Merck Sharp & Dohme*
   796 F.3d 1038 (9th Cir. 2015) ...................................................................... 7

*Bui v. Northrop Grumman Sys. Corp.*, No. 15CV1397-WQH-WVG, 2016 WL
   7178921 (S.D. Cal. Dec. 9, 2016) ................................................................ 8

*De Forest Radio Tel. & Tel. Co. v. United States*
   273 U.S. 236 (1927) ...................................................................................... 10

*Dreith v. Nu Image, Inc.*
   648 F.3d 779 (9th Cir. 2011) ........................................................................ 7

*Exxon Corp. v. Oxxford Clothes, Inc.*
   109 F.3d 1070 (5th Cir. 1997) ...................................................................... 10

*Fanucchi & Limi Farms v. United Agri Prod.*
   414 F.3d 1075 (9th Cir. 2005) ........................................................... 10, 11, 16

*Gabriel Techs. Corp. v. Qualcomm Inc.*
   No. 08 CV 1992 MM (POR), 2009 WL 3326631 (S.D. Cal. Sept. 3,
   2009) ............................................................................................................. 15

*Gallagher v. City of Winlock, Wash.*
   287 F. App'x 568 (9th Cir. 2008) ................................................................. 9

ii

*Galvan v. City of Los Angeles*
   No. 214CV00495CASAJWX, 2016 WL 5334461 (C.D. Cal. Sept. 21, 2016) ......................................................................................................9, 12

*Glad-A-Way Gardens, Inc. v. Lynn Mayer's Great Lakes Glads, Inc.*
   52 F.3d 333 (9th Cir. 1995) ..............................................................................9

*Heilman v. Ridge*
   No. 13-CV-2788 JLS DHB, 2014 WL 524045 (S.D. Cal. Feb. 10, 2014) ..............................................................................................................7

*Honda v. Reed*
   156 Cal. App. 2d 536 (1958) ...........................................................................16

*Lyons v. Baughman*
   No. CIVS01412LKKKJMP, 2007 WL 1378022 (E.D. Cal. May 10, 2007) ...........................................................................................8, 9,11, 12, 13

*MDY Indus., LLC v. Blizzard Entm't, Inc.*
   629 F.3d 928 (9th Cir. 2010) ...........................................................................14

*Olympic Fin. Co. v. Thyret*
   337 F.2d 62 (9th Cir. 1964) ......................................................................13, 14

*Oppenheimer v. Los Angeles Cty. Flood Control Dist.*
   453 F.2d 895 (9th Cir. 1972) .............................................................................7

*Sharaf v. Starbuzz Tobacco, Inc.*
   No. SACV 14-00541 JVS(DFMx), 2016 WL 6275166 (C.D. Cal. Jan. 29, 2016) .........................................................................................................17

*Simmons v. Sweeney*
   13 Cal. App. 283 (1910) ..................................................................................17

*Sun Microsystems, Inc. v. Microsoft Corp.*
   188 F.3d 1115 (9th Cir. 1999) .........................................................................14

*United States v. Dieter*
   429 U.S. 6 (1976) ..............................................................................................7

**STATUTES**

28 U.S.C. § 1915 (1996) ..........................................................................................7

**RULES**

Fed. R. Civ. Proc. 59 .................................................................................................8

Fed. R. Civ. Proc. 56(d) ..........................................................................................10

Local Rule 7.1(i) ........................................................................................................8

Local Rule 7.1(i)(2) ...................................................................................................8

iii

## OTHER AUTHORITIES

4 J. McCarthy on Trademarks and Unfair Competition § 25:30 (5th ed.) ................ 14

Case No. 15CV1831 WQH-KSC
LEADERSHIP'S  MEMORANDUM OF POINTS AND AUTHORITIES

0811-1026 / 998385.1

## I.     INTRODUCTION

Plaintiff Leadership Studies, Inc. dba the Center for Leadership Studies ("CLS") moves this Court to reconsider *solely* its November 29, 2017 ruling ("November Ruling," D.E. 130) that the 1987 License Agreement ("1987 License") between CLS and Defendant Blanchard Training and Development, Incorporated ("BTD") (collectively, the "Parties") *did not*, *as a matter of law*, novate the earlier 1982 agreement (the "1982 Agreement").  CLS respectfully submits that the Court erred in ruling on this "Novation Issue" "as a matter of law" because: (1) the ruling was premature as it was based on submissions that preceded the deposition of BTD founder Dr. Kenneth Blanchard, which establishes a material dispute as to the highly fact-specific issue of novation; and (2) irrespective of Dr. Blanchard's deposition, the Court drew inferences that favored BTD, and did not make inferences that favored CLS.  In addition, although the Court indicated that it could not find an important document written by Dr. Blanchard at the time of the 1987 License, that document *was* in the record at D.E. 83-6.[1]  CLS thus requests that the Court vacate its ruling that the 1987 License was not a novation "as a matter of law," but instead rule that there are disputed issues of material fact as to whether, if the 1982 Agreement was a broad release, the 1987 License was a novation.

Dr. Blanchard's deposition establishes a material factual dispute as to the Novation Issue.  As the United States Supreme Court acknowledged long ago, a license is merely a waiver of the right to sue.  § V.A, *infra*.  BTD contends that the 1982 Agreement was a license for Situational Leadership® (the "Mark") because the agreement waives Leadership Studies Productions, Inc.'s ("LSP")[2] right to sue for

---

[1]   Due to a clerical error in CLS' Response to BTD's Statement of Undisputed Materials Facts, the Court was unable to locate D.E. 83-6.  [D.E. 130, at 15 n.6.]
[2]   LSP was the party to the 1982 Agreement.  [D.E. 65-7, Exhibit D.]  However, LSP eventually became Leadership Studies, Inc. (CLS).  [D.E. 130, at 3:22-26.]

1   infringement.[3]  § III, *infra*.  However, Dr. Blanchard repeatedly *testified* that *the 1987*

2   *License* is the source of BTD's right to use the Mark.  § II.B, *infra*.  He did not claim

3   that the 1982 Agreement provides any ongoing rights.  In fact, around the time of the

4   1987 License's execution, Dr. Blanchard informed his staff that the 1987 License

5   "finaliz[ed]" BTD's "legal use of Situational Leadership" because it granted "[a]

6   royalty free license to BTD from [CLS] to use Situational Leadership."  [D.E. 83-6.]

7          Both the language of the 1982 Agreement as compared with the 1987 License

8   and the Parties' conduct lead to inferences that establish material factual disputes.  In

9   light of long-standing jurisprudence, changes to a trademark license are commonly

10   understood to concomitantly change a licensor's promise to refrain from suit.  §

11   V.B.1, *infra*.  The Court therefore should have inferred that because the 1987 License

12   imposes licensing terms that differ from those imposed by the 1982 Agreement, the

13   1987 License imposes obligations on CLS to refrain from suit that conflict with CLS'

14   obligations under the 1982 Agreement.   Instead, the Court inferred, contrary to this

15   jurisprudence, that the 1987 License *did not alter CLS' obligation to refrain from*

16   *trademark infringement suit* and, therefore, did not conflict with the 1982 Agreement.

17          Finally, although the parties were involved in disputes *after 1987* with regard

18   to the BTD's use of the Mark, BTD never raised the 1982 Agreement as a potential

19   defense; indeed, BTD first raised this defense in response to CLS' TAC, *not* its

20   Answer to the SAC.  CLS respectfully suggests that the Court erred in failing to infer

21   from these facts that, at the very least, there are disputed issues of material fact with

22   regard to whether or not, if the 1982 Agreement was an ongoing license, the 1987

23   License novated it.   CLS respectfully suggests that the resolution of the Novation

24   Issue should either be determined in its favor or be left for the ultimate trier of fact.

25   **II.     STATEMENT OF RELEVANT FACTS**

26          Drs. Paul Hersey and Kenneth Blanchard "worked on a theory concerning a

27

28   [3]   CLS contends that the 1982 Agreement's Release Clause was limited to a
specific litigation.  [*See* D.E. 130, at 10:18-22.]

1   methodology for leaders to influence others which came to be called Situational
2   Leadership" and "founded businesses associated with the theory." [D.E. 130, at 3:16-
3   26.]  Dr. Hersey founded Management Education and Development, Inc. ("MED")
4   and LSP.  [*Id.*, at 3:20-22.]  MED initially owned the rights to the Situational
5   Leadership® Mark [D.E. 116-3 ¶ 29], but in 1985, MED merged into LSP.  [D.E. 130,
6   at 3:23-26.]  LSP was eventually re-named Leadership Studies, Inc. (CLS).  [*Id*.]  Dr.
7   Blanchard founded BTD.  [*Id.* at 3:20.]

8   **A.   The Parties Resolved, With The 1982 Agreement, A Legal Dispute**
9   **And Continued To Negotiate A More Comprehensive License.**

10      In 1982, LSP sued BTD, alleging *inter alia* that BTD infringed the Situational
11   Leadership® Mark and interfered with LSP's contractual relations with third-party
12   Video University ("VU").  [D.E. 65-5, Exhibit C ¶¶ 15-22 (the 1982 complaint).]  LSP
13   and BTD resolved this dispute with the 1982 Agreement, where (1) BTD agreed "not
14   to violate" LSP's non-compete clause with VU and (2) LSP agreed "not to pursue
15   violation of trademark action now or in the future as it refers to Situational
16   Leadership" (the "Release Clause").  [D.E. 130, at 4:10-19; *see also* D.E. 65-7,
17   Exhibit D (the 1982 Agreement).]  Evidence indicates that the Release Clause was
18   limited to the 1982 dispute [D.E. 130, at 10:18-24]; as additional support, in 1982
19   MED, *not* LSP, owned the Situational Leadership Mark [D.E. 116-3 ¶ 29], and LSP,
20   *not* MED, executed the 1982 Agreement.  However, Dr. Blanchard claimed that the
21   1982 Agreement generally precluded MED *and* LSP from suing for "the use of the
22   words" *and* "*symbol of Situational Leadership*."  [D.E. 65-7, Exhibit F.]  In short, Dr.
23   Blanchard believed that the 1982 Agreement allowed BTD to use *both* the Situational
24   Leadership® Mark *and* the four-quadrant bell curve logo that came to be associated
25   with Situational Leadership® (the "Bell Curve Logo").

26      Later, Dr. Blanchard expressed concern to MED that this agreement left the
27   Situational Leadership® Mark "open for anyone's use." [D.E. 65-7, Exhibit F.]  Dr.
28   Blanchard accordingly offered to have BTD "take the lead" in drafting an agreement

3

1  to ameliorate this concern.  [*Id.*]  The resulting agreement, several years later, was the

2  1987 License.  Dr. Blanchard, in his August 2017 deposition, elaborated upon these

3  concerns, stating *inter alia* that the 1982 Agreement did not afford BTD any right to

4  enforce the Mark.  Declaration of Michele M. Desoer ("Desoer Decl.") ¶ 7, Exh. 1, at

5  173:5-7.[4]

6      **B.    The 1987 License Finalized The Parties' Licensing Arrangement**

7         **And Changed CLS' Obligation To Refrain From Suit.**

8      In December 1987, CLS[5] and BTD executed the 1987 License, a "perpetual

9  royalty-free license" for the Situational Leadership® Mark.  [D.E. 130, at 5:13-14.];

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Thus, whether the 1982 Agreement

11 was a limited release or was viewed as a stop-gap measure to enable negotiations for

12 a more comprehensive agreement, the 1987 License documented the Parties'

13 licensing relationship and "settle[d]" any disputes[6] the Parties had at the time

14 concerning BTD's rights to use the Mark.  K. Blanchard Depo, at 201:12-23;

15 [*compare* D.E. 65-7, Exhibit F (Dr. Blanchard describes the 1982 Agreement's

16 deficiencies and offers to draft a licensing agreement) *with* D.E. 83-6 (noting that the

17 1987 License "[f]inaliz[ed]" the Parties' licensing arrangement).]  ▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21     The terms of the 1987 License minimized the risk the Mark would fall into the

22 public domain.  The license enabled BTD to enforce the Mark [D.E. 65-7, Exhibit G

23 ¶ 4] and addressed CLS' ability to bring an infringement suit against BTD by

24 explicitly discussing the scope of BTD's trademark license.  *See* § V.B.1, *infra* (where

---

25  [4]   Desoer Decl. ¶ 7, Exh. 1 will be referred to as the Deposition of Kenneth
26  Blanchard ("K. Blanchard Depo").

27  [5]   By 1987, MED had already merged into the entity that would eventually be re-
    named into Leadership Studies, Inc. (CLS).  [D.E. 130, at 3:23-26.]

28  [6]   *See, e.g.*, D.E. 116-11 (1985 draft complaint by CLS against BTD).

1   a licensee exceeds the scope of her license, the licensor has a cause of action in

2   trademark infringement).  For example, the 1987 License (1) mandated that BTD use

3   the Situational Leadership® Mark "only in association with goods and services which

4   meet or exceed a level of quality exemplified by the goods and services presently

5   offered under [the Mark]"; (2) required that BTD use the "®" symbol; and (3)

6   "extend[ed]" the trademark license to material and services produced by third parties

7   "under the direction" of BTD, something that the 1982 Agreement did not do.  [*Id.* ¶

8   2.]  Also, contrary to Dr. Blanchard's understanding of the 1982 Agreement, the 1987

9   License *prohibited* BTD from using the Bell Curve Logo "in a trademark sense." [*Id.*]

10       After the Parties executed the 1987 License, Dr. Blanchard authored an internal

11   memorandum that *the Court expressly did not consider*.[7] [D.E. 130, at 15 n.6.]  This

12   memorandum notified BTD associates of the 1987 License and *made no reference to*

13   *the 1982 Agreement*.  [D.E. 83-6.]  In this document, Dr. Blanchard stated that *prior*

14   *to the 1987 License's execution*, BTD was in "a very dangerous position" because

15   "periodically," "legal documents and threats" were "flying back and forth." [*Id.*]  The

16   memorandum noted that the 1987 License, among other things: (1) *gave BTD a*

17   *"royalty free license ... to use Situational Leadership"*; (2) gave BTD "first dibs on

18   buying out the Situational Leadership concept"; and (3) enabled BTD "to police the

19   growing use of Situational Leadership by [third parties]." [D.E. 83-6 (emphasis

20   added).]   The memorandum concluded that "[f]inalizing [BTD's] legal use of

21   Situational Leadership" made Dr. Blanchard "feel even better" because it had "been

22   a long, slow road" and thanked various senior BTD officials "for successfully

23   bringing th[e] negotiation to completion." [*Id.*]

24   ███████████████████████████████████████████████████

25

---

26   [7]   The Court noted that CLS incorrectly cited to this internal memorandum in its
     Response to BTD's Statement of Undisputed Material Facts (the "RSUMF") and
27   accordingly concluded that CLS provided "no support" for the assertion that Dr.
     Blanchard authored a memorandum after the 1987 License's execution that "did not
28   refer to the 1982 Agreement." [D.E. 130, at 15 n.6.]  The memorandum was Exhibit
     26 to the RSUMF and is located at D.E. 83-6.



**III.  PROCEDURAL HISTORY**

In April 2017, BTD filed its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with regard to CLS' trademark claims, arguing that the 1982 Agreement precluded these claims.  [D.E. 65.]  This motion preceded, by several months, the August 31, 2017 fact discovery deadline [D.E. 100 ¶ 1] and the depositions of all but one deponent, including that of Dr. Blanchard.  Desoer Decl. ¶¶ 6-7.  Seven months later, on November 29, 2017, the Court characterized BTD's Motion as one for summary judgment and denied it, holding that because the Parties disputed whether the 1982 Agreement was either "limited to [a] then-pending litigation" or was a general release as to trademark claims, BTD was "not entitled to summary judgment."  [D.E. 130, at 2:24-28; 10:18-27.]  However, the Court also ruled "as a matter of law" that the "1987 [License] did not supersede" the 1982 Agreement because: (1) the 1987 License does not expressly revoke the 1982 Agreement; (2) the 1987 License's terms do not conflict with the 1982 Agreement's; and (3) "the conduct of the parties has not been [in]consistent with the continued validity of the [1982 Agreement]."  [D.E. 130, at 15:13-17.]

The instant motion seeks only reconsideration of the Court's conclusion "as a matter of law," because CLS believes that there are, at the very least, disputed issues

1  of material fact as to whether the 1987 License was a novation.

2  **IV.   STANDARD OF REVIEW**

3  "[A] district court has the inherent power to revisit its non-final orders,"

4  including denials of summary judgments. *Dreith v. Nu Image, Inc.*, 648 F.3d 779,

5  787 (9th Cir. 2011); *Oppenheimer v. Los Angeles Cty. Flood Control Dist.*, 453 F.2d

6  895, 895 (9th Cir. 1972) ("The denial of the motion [for summary judgment] is not

7  appealable since it is not a final order."); *accord Heilman v. Ridge*, No. 13-CV-2788

8  JLS DHB, 2014 WL 524045, at *1 (S.D. Cal. Feb. 10, 2014) ("District courts also

9  have the inherent authority to entertain motions for reconsideration of interlocutory

10  orders. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir.1996) ('[I]nterlocutory

11  orders ... are subject to modification by the district judge at any time prior to final

12  judgment.').").  "Whether to grant or deny a motion for reconsideration is in the sound

13  discretion of the district court."  *Heilman*, 2014 WL 524045, at *1-*2 (granting a

14  motion for reconsideration, "whether or not" the reconsidered order was "final or

15  interlocutory" because the Court "erroneously classified one of plaintiff's prior

16  [criminal] actions as a strike" within the meaning of 28 U.S.C. § 1915 (1996) which

17  "[w]as a clear error that work[ed] a manifest injustice").

18  Indeed, both the United States Supreme Court and the Ninth Circuit emphasize

19  the benefits of motions for reconsider because: (1) such motions may obviate the need

20  for appeal; and (2) the orders issuing from such motions help clarify the record for

21  appeal. *United States v. Dieter*, 429 U.S. 6, 8 (1976). ("The fact that appeals are now

22  routed to the courts of appeals does not affect the wisdom of giving district courts the

23  opportunity promptly to correct their own alleged errors, and we must likewise be

24  wary of imposing added and unnecessary burdens on the courts of appeals."); *Briggs*

25  *v. Merck Sharp & Dohme*, 796 F.3d 1038, 1047 (9th Cir. 2015) ("Courts of appeals

26  are better able to resolve appeals quickly (and correctly) when district courts have

27  clarified the bases for their decisions or corrected any mistakes they may have made.")

28  In addition to the Court's inherent power to reconsider interlocutory orders,

1  Federal Rule of Civil Procedure 59 ("Rule 59") and Local Rule 7.1(i), also allow

2  parties to move for reconsideration of a court's order.  *See, e.g.*, *Bui v. Northrop*

3  *Grumman Sys. Corp.*, No. 15CV1397-WQH-WVG, 2016 WL 7178921, at *2-*5

4  (S.D. Cal. Dec. 9, 2016) (Hayes, J.) (granting a motion to reconsider under "Local

5  Rule 7.1(i)(2)" in light of an intervening change in the law); *Alves v. Players Edge,*

6  *Inc.*, No. 05CV1654WQH(CAB), 2007 WL 6004919, at *2 (S.D. Cal. Aug. 8, 2007)

7  (Hayes, J.) (same under Rule 59).  A motion for reconsideration may be granted where

8  "the district court is presented with newly discovered evidence, committed clear error,

9  or if there is an intervening change in the controlling law." *Alves*, 2007 WL 6004919

10  at *2 (internal quotation marks and citations omitted).

11      Motions for reconsideration may be granted where, for example, new evidence

12  revealed in a deposition is probative of a party's state of mind and renders a court's

13  prior ruling erroneous.  *See, e.g.*, *Lyons v. Baughman*, No. CIVS01412LKKKJMP,

14  2007 WL 1378022, at *4 (E.D. Cal. May 10, 2007) (concluding that a "grant of

15  summary judgment" as to a defendant was "erroneous" in light of the defendant's

16  deposition); *see also Abbott Labs. v. Syntron Bioresearch Inc.*, No. 98-CV-2359 H

17  (POR), 2001 WL 34082554, at *3 (S.D. Cal. Mar. 7, 2001) (granting in part a motion

18  to reconsider of an element of claims construction based on new declarations).

19      Moreover, reconsideration is granted where courts erroneously failed to (1)

20  consider evidence and (2) draw inferences favoring a party opposing summary

21  judgment.  *See, e.g.*, *Abbott Labs. v. Syntron Bioresearch Inc.*, No. 98-CV-2359 H

22  (POR), 2000 WL 33967724, at *11 (S.D. Cal. Sept. 28, 2000) (granting a motion to

23  reconsider a summary judgment order on the grounds of clear error because the

24  moving party "ha[d] submitted declarations" that "describe[d] more fully" the

25  evidence before the court on summary judgment); *Lyons*, 2007 WL 1378022, at *5–

26  6 (concluding that both grounds on which the court based its grant of summary

27  judgment were erroneous in light of unconsidered evidence and inferences that

28  favored the party opposing summary judgment); *Galvan v. City of Los Angeles*, No.

214CV00495CASAJWX, 2016 WL 5334461, at *2 (C.D. Cal. Sept. 21, 2016) (holding that a party would be permitted at trial "to present [circumstantial] evidence supporting his malicious prosecution claim and, specifically, the effect of investigators' allegedly misleading reports upon the prosecutor's decision to charge Galvan with murder").

## V.   **LEGAL ARGUMENT**

### A.   **The Court Should Reconsider Its Ruling Because Dr. Blanchard's Deposition, Taken After Briefing On BTD'S Motion, Provides New, Countervailing Evidence Probative Of An Intent To Novate.**

Rulings as a matter of law are particularly disfavored where "the issues are complicated or *motives and intent are important*." *Id.* (emphasis added). Thus, where months of fact discovery remain and depositions of key individuals have not taken place, courts have consistently held that rulings as a matter of law should be disfavored.[8] *See, e.g.*, *Glad-A-Way Gardens, Inc. v. Lynn Mayer's Great Lakes Glads, Inc.*, 52 F.3d 333, at *2 (9th Cir. 1995) (ruling that the district court abused its discretion where "Glad-A-Way [the non-movant] was not permitted to obtain responses to any of its discovery requests, take any depositions, or serve subpoenas on nonparties"); *Gallagher v. City of Winlock, Wash.*, 287 F. App'x 568, 577–78 (9th Cir. 2008) ("Without deposing the defendants, the plaintiffs have not had a fair opportunity to sort out the roles of the various officers … [I]t is premature to conclude as a matter of law …" (internal citations omitted)). Also, where depositions reveal information that renders a court's *previous* ruling erroneous, reconsideration of said ruling should be granted. *Lyons*, 2007 WL 1378022, at *4 (concluding that because defendant's deposition indicated he was aware of facts that may render him liable, the "grant of summary judgment" was "erroneous").

---

[8]   *See also Aaron & Andrew, Inc. v. Sears Holdings Mgmt. Corp.*, No. CV 14-1196 SS, 2017 WL 3449598, at *3 (C.D. Cal. Apr. 14, 2017) ("[M]ore than eight months remain[] until the cut-off for both discovery and dispositive motions … Deposition testimony by officers … may … be relevant to material issues in this case." (internal citation omitted)).

1    Here, the Court ruled "as a matter of law" that the 1987 License did not novate

2  the 1982 Agreement.  [D.E. 130, at 15:13-17.]  However, CLS respectfully submits

3  that this ruling was premature and should be reconsidered in light of subsequently

4  obtained evidence.  First, when the Motion was fully briefed in May 2017 [D.E. 93],

5  the record before the Court was incomplete; CLS had not, at that point, deposed key

6  BTD officers, including Dr. Blanchard.  Desoer Decl. ¶¶ 6-7.  The Court itself

7  recognized the importance of these depositions when, in June 2017, it extended the

8  discovery deadline to enable them to take place.  [D.E. 100 ¶ 100.]

9    Second, the existence of novation hinges on intent, a highly-fact specific

10  inquiry that generally should not be decided as a matter of law.  *Fanucchi & Limi*

11  *Farms v. United Agri Prod.*, 414 F.3d 1075, 1082, 1086-87 (9th Cir. 2005) (noting

12  that (1) in ascertaining whether there is a novation, "the determinative factor is the

13  intent of the parties"; and (2) "[d]etermining the parties' intent is a highly fact-specific

14  inquiry … not generally suitable for disposition on summary judgment").

15    Third, Dr. Blanchard's deposition testimony confirms that there are material

16  factual disputes as to whether the Parties intended to novate the 1982 Agreement.[9]

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████  § II, *supra*.  An intellectual property

20  license is "mere[ly a] waiver of the right to sue,"[10] and BTD contends that the 1982

21  Agreement was a broad waiver of the right to sue.  *De Forest Radio Tel. & Tel. Co.*

22  *v. United States*, 273 U.S. 236, 242 (1927); *see also Exxon Corp. v. Oxxford Clothes,*

23  *Inc.*, 109 F.3d 1070, 1078 n.9 (5th Cir. 1997) ("Courts have construed" an agreement

24  ────────────────

[9]  CLS could have moved the Court to defer a decision as to BTD's Motion until

25  depositions were completed.  *See* Fed. R. Civ. P. 56(d).  However, as discussed in §
   V.B, *infra*, CLS believed—and still believes—that there was sufficient evidence of

26  disputed material facts to enable a fact-finder to infer novation and preclude summary
   judgment on this issue.

27  [10]  *See also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013) ("[G]ranting covenants

28  not to sue may be a risky long-term strategy for a trademark holder" because of naked
   licensing concerns).

1  to "forbear[]" litigation to be a "trademark license[]".")

2  ███████████████████████████████████████████████████████

3  ██████████████████ a reasonable fact-finder could conclude that the 1982

4  Agreement – to the extent that it was more than a limited license – was extinguished.

5  ███████████████████████████████████████████████████████

6  ██████████████████████████████

7       In sum, because: (1) the Court's ruling as to the Novation Issue was based on

8  an incomplete record that preceded Dr. Blanchard's deposition; (2) the Novation Issue

9  is a highly fact-specific one not generally disposed of on summary judgment; and (3)

10  Dr. Blanchard's deposition testimony and his 1987 memorandum enable a fact-finder

11  to conclude that the 1982 Agreement was extinguished, CLS requests that this Court

12  vacate its ruling that there was no novation "as a matter of law." *See, e.g.*, *Fanucchi*,

13  414 F.3d at 1086-87 (reversing a district court's grant of summary judgment with

14  instructions to "consider the likelihood that [the contracting parties], in the

15  *circumstances* in which they found themselves, would have intended to enter into the

16  novated contract" (emphasis added)); *Lyons*, 2007 WL 1378022, at *4 (granting a

17  motion to reconsider a summary judgment order in light of deposition testimony).

18      **B.**    <u>**In Ruling On Summary Judgment Motions, All Inferences Must Be**</u>

19          <u>**Drawn For The Non-Movant; Here, The 1982 Agreement And 1987**</u>

20          <u>**License Impose Conflicting Obligations And The Parties' Conduct**</u>

21          <u>**Suggests Novation.**</u>

22       When deciding a motion for summary judgment, courts must draw all

23  inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

24  255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable

25  inferences are to be drawn in his favor."). Reconsideration is warranted where courts

26  erroneously fail to make justifiable inferences. *See, e.g.*, *Lyons*, 2007 WL 1378022,

27  at *5–6 (vacating summary judgment in favor of defendant on the issue of causation

28  because of (1) inferences a "reasonable fact-finder" could make and (2) "a genuine

dispute" of fact).   Courts grant reconsideration even when it is not "clear what inferences may be drawn from" the non-movant's proffered evidence.   *See, e.g.*, *Galvan*, 2016 WL 5334461, at *2 (C.D. Cal. Sept. 21, 2016) (permitting party opposing summary judgment to proffer circumstantial evidence).

Illustratively, *Lyons*, pertained to a "failure to protect" action wherein an African-American prison inmate alleged that prison staff falsely "told [him] that … rumors of an attack on black inmates by Hispanic inmates was unfounded and instructed plaintiff … to inform black inmates [the 'Bloods'] that no attack would occur." 2007 WL 1378022, at *1.   However, "[a]fter plaintiff complied, the Hispanic inmates attacked the blacks on the prison yard [(the '1996 riot')]." *Id.*   Later, the plaintiff suffered attacks in two different prisons "in retaliation for his having conveyed false information prior to the 1996 riot." *Id.*   Plaintiff consequently claimed that "prison officials were deliberately indifferent to his safety by failing to take steps to prevent these assaults, such as placing him in protective housing." *Id.*

In *Lyons*, "[t]he court [had] previously granted [a] defendant[]'s motion for summary judgment on the issue of causation for two reasons." 2007 WL 1378022, at *5. "First, plaintiff's … attack was at the hands of an inmate who was not present at [the prison] on the day of the riot." *Id.*   "Second, there was no evidence that even if the defendant [] had appropriately documented information about the riot, that [prison] officials would have made a different housing classification." *Id.*

The *Lyons* court later reconsidered its ruling because, "on the day of the riot, plaintiff alleges that [the inmate] attacked him after talking to a group of Bloods on the yard.   It was foreseeable that plaintiff would be subject to attack by a Blood wannabe or Blood sympathizer." 2007 WL 1378022, at *5.   Moreover, "[g]iven [the] defendant[]'s knowledge of prison yard practices, a reasonable fact-finder could infer that he should have foreseen that an attack by a non-Blood was possible." In addition, "even though there was no evidence that [prison] officials disbelieved plaintiff's recount of his involvement in the … riot, there is at least a genuine dispute that had

1  plaintiff's recount been documented with information in his central file, [prison]

2  officials might not have made the same housing classification" that allegedly enabled

3  plaintiff to be attached.  *Lyons*, 2007 WL 1378022, at *6.

4      Likewise, here, there a reasonable trier of fact could infer, based on the parties'

5  course of conduct, the negotiations leading up to the 1987 License, the terms of the

6  1987 License, Dr. Blanchard's testimony, and his 1987 memorandum, that the 1987

7  License was a novation that replaced the parties' respective obligations with regard

8  to BTD's ability to use the Mark.

9              **1.     Conflicting obligations establish novation.**

10     The 1982 Agreement and the 1987 License impose conflicting obligations on

11  the Parties, so as to enable a fact-finder to infer an intent to novate.  *Olympic Fin. Co.*

12  *v. Thyret*, 337 F.2d 62, 66 (9th Cir. 1964) (Novation may be established where "two

13  contracts [a]re so entirely inconsistent," they "could not possibly be operative at the

14  same time.").  As in *Lyons*, 2007 WL 1378022, at *5–6, CLS respectfully submits

15  that this Court erred in holding that the 1982 Agreement and the 1987 License did not

16  impose conflicting obligations because this ruling (1) *drew an inference that favors*

17  *BTD* and failed to draw inferences that favor CLS; and (2) fails to consider other

18  evidence favorable to CLS. [D.E. 130, at 14:1-6.]  At the very least, there are material

19  disputed facts concerning the continued existence of the 1982 Agreement following

20  the execution of the 1987 License.

21     The Court stated that although, as compared to the 1982 Agreement, the 1987

22  License imposes "additional obligations" on BTD's usage of the Situational

23  Leadership® Mark, the two agreements *may be* read as consistent with each other *if*

24  (1) the 1982 Agreement precludes CLS from bringing a *trademark infringement suit*

25  such that (2) any breaches by BTD of the 1987 License can be enforced by CLS *solely*

26  through a *breach of contract suit*.  [D.E. 130, at 14:1-6.]  This holding contravenes

27  well-established jurisprudence that where licensees breach their licensing terms, the

28  licensor may sue the licensor for *both* trademark infringement *and* breach of

13                          Case No. 15CV1831 WQH-KSC

1    contract.[11]   *See Audigier Brand Mgmt. v. Perez,* No. CV 12-5687-CAS RZX, 2012

2    WL 5470888, at *7 (C.D. Cal. Nov. 5, 2012) ("[A] licensor can maintain an action

3    for *trademark infringement* … when the licensee's conduct falls *outside* the scope of

4    the license." (first emphasis added; second emphasis in original) (citing *MDY*, 629

5    F.3d at 939); *accord* 4 J. McCarthy on Trademarks and Unfair Competition § 25:30

6    (5th ed.) ("[A] use by a licensee which is outside the scope of the license is both

7    trademark infringement and a breach of contract." (internal footnotes omitted)).  The

8    Court's holding thus *infers* that the Parties meant, in the 1987 License, to *only enable*

9    *CLS to sue BTD for breach of contract*, *even though the 1987 License is expressly a*

10   *trademark license and contains no language suggesting that CLS waived potential*

11   *trademark infringement claims.*  This inference was improper for two reasons.  First,

12   it favors BTD in its construction of the factual implications.  Second, it ignores the

13   far  more  plausible  inference  that  the  Parties,  consistent  with  long-standing

14   jurisprudence, and to the extent that the 1982 Agreement amounted to a broad license,

15   altered the scope of BTD's trademark license and, in doing so, altered the scope of

16   CLS' obligation to refrain from a trademark infringement suit.

17        The rights and obligations in the 1987 License differ fundamentally from

18   *BTD*'s *understanding* of what it was afforded under the 1982 Agreement; accordingly,

19   a fact-finder could conclude that the 1987 License imposes obligations on CLS to

20   refrain from suit that conflict with BTD's understanding of CLS' obligations under

21   the 1982 Agreement.  These conclusions, in turn, could lead a reasonable fact-finder

22   to conclude that, if the 1982 Agreement was a broad, ongoing license, the parties

23   extinguished it in 1987.  *See, e.g.*, *Olympic*, 337 F.2d at 66 (novation may be

---

25   [11]  *Accord MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir.

26   2010) ("We refer to contractual terms that limit a license's scope as 'conditions,' the
     *breach of which constitute copyright infringement*. We refer to all other license terms

27   as 'covenants,' the breach of which is actionable only under contract law." (emphasis
     added) (citing *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1120 (9th

28   Cir. 1999)).

1    established where provisions conflict); *Gabriel Techs. Corp. v. Qualcomm Inc.*, No.

2    08 CV 1992 MM (POR), 2009 WL 3326631, at *5 (S.D. Cal. Sept. 3, 2009) (finding

3    a novation where the terms of the new licensing agreement "were significantly

4    different" to the older one's).

5         First, Dr. Blanchard claimed that 1982 Agreement's Release Clause licensed

6    BTD *to use the Bell Curve Logo*. § II.A, *supra*. In contrast, (1) the 1987 License

7    *prohibits* BTD from using the logo as a trademark; and ██████████████████

8    ███████████████████████████████████████████████████████

9    ███████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████

11   ███████████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████

13   ███████████████████████████████████████████████████████

14   ███████████████████████

15        Also, the 1982 Agreement imposed no conditions on BTD's use of the

16   Situational Leadership mark [*see* D.E. 65-7, Exhibit D, *passim*], while the 1987

17   License explicitly *conditioned* BTD's use of the Mark on, *inter alia* (1) usage of the

18   "®" symbol and (2) maintenance of quality. [D.E. 65-7, Exhibit G ¶ 2.] These

19   changes therefore indicate that the 1987 License significantly broadened the scope of

20   CLS' ability to bring a trademark infringement suit based on any breach of the license

21   conditions in the 1987 License. As discussed in § II.A, *supra*, the Parties were

22   concerned that the 1982 Agreement would endanger the Mark and render it vulnerable

23   to falling into the public domain. Thus, it would make sense for the Parties to

24   extinguish the 1982 Agreement, so as to protect the Mark by allowing CLS to sue

25   BTD for trademark infringement should it use the Mark outside of the express

26   conditions. *See Already, LLC*, 568 U.S. at 99 (noting that covenants not to sue may

27   endanger trademarks).

28        Third, where the 1982 Agreement was silent to, and presumably allowed,

1    CLS's to sue third-parties that produced materials and goods under BTD's direction

2    [*see* D.E. 65-7, Exhibit D, *passim*], the 1987 License explicitly prohibited CLS' from

3    suing these third-parties.  [D.E. 65-7, Exhibit G ¶ 2.]

4         When construed in favor of CLS, the non-moving party, these explicit conflicts

5    between the two agreements suggests that the 1987 License extinguished any rights

6    that BTD might have under the 1982 Agreement.

7         **2.    BTD's conduct since 1987 conflicts with the 1982 Agreement.**

8         Conduct can also reflect an intent to novate.  [D.E. 130, at 13:19-20 (citing

9    *Fanucchi*, 414 F.3d at 1085).]  The Court concluded that there was no conduct that

10   evinced an intent to novate because BTD's "compliance with the 1987 [License] is

11   not evidence that the 1987 [License] replaced the 1982 Agreement because

12   compliance with the 1987 [License] is consistent with the terms of the 1982

13   Agreement."  [D.E. 130, at 15:6-9.]  However, CLS respectfully submits that the

14   Court erred by (1) misunderstanding the thrust of CLS' argument and (2) failing to

15   draw legitimate inferences that are probative of novation.  In fact, the Court's

16   construction of the Parties' respective changes of position with regard to both the

17   Mark and the logo as not being inconsistent with the 1982 Agreement would mean

18   that it would be impossible to find any agreement covering the same subject matter

19   as being a novation unless it expressly stated so.  That is not the law.  *See Honda v.*

20   *Reed*, 156 Cal. App. 2d 536, 539 (1958) ("Abandonment of a contract may be implied

21   from the acts of the parties in negotiating for a new and different contract *concerning*

22   *the same property or subject matter*." (emphasis added)); *Fanucchi*, 414 F.3d at 1082

23   ("[I]t is not necessary to meet and state either in writing or orally that the original

24   contract was rescinded. If the intent to abandon can be ascertained from the acts and

25   conduct of the parties the same result will be attained. Abandonment may be implied

26   from surrounding facts and circumstances." (internal quotation marks and citations

27   omitted)).

28        In fact, the evidence shows that BTD's conduct since 1987 has been

16                      Case No. 15CV1831 WQH-KSC

1  *inconsistent* with the survival of the 1982 Agreement.  *Until its **second** Answer in the*

2  *instant litigation*,[12] 

3

4

5

6

7

8

9

10

11

12      Given BTD's claims of the breadth of the 1982 Agreement [D.E. 65]

13

14

15

16

17                              *See, e.g.*, *Simmons v. Sweeney*, 13 Cal. App. 283, 288, (1910)

18  (finding novation where (1) "[t]he terms of … two contracts were entirely *inconsistent*

19  and could not be operative at the same time; and (2) "*the evidence for respondent*

20  *show[ed] conclusively that everything done by appellant towards effecting a sale of*

21  *the property was in pursuance of the [second] agreement*" (emphases added)); *Sharaf*

22  *v. Starbuzz Tobacco, Inc.*, No. SACV 14-00541 JVS(DFMx), 2016 WL 6275166, at

23  *5 (C.D. Cal. Jan. 29, 2016) (same).  Thus, a fact-finder could conclude, based on

24  BTD's behavior, that the 1982 Agreement was extinguished.

25

26  _____

27  [12]    BTD first raised the 1982 Agreement as an affirmative defense on November

28  23, 2016 in its Answer to CLS' Third Amended Complaint.  [*See* D.E. 52, pp.32-36, ¶¶ 29-45.

17

## VI.   **CONCLUSION**

In conclusion, CLS asks this Court to reconsider its ruling that the 1987 License did not, *as a matter of law*, novate the 1982 Agreement.  CLS respectfully submits that this ruling was premature because the Court's decision was premised on an incomplete record.  Moreover, Dr. Blanchard's deposition testimony is significantly probative of an intent to novate because it is inconsistent with the continued enforceability of the 1982 Agreement.  Finally, CLS respectfully submits that the Court erred in (1) failing to draw inferences in CLS' favor, and in (2) drawing inferences that favored BTD.  Accordingly, CLS requests that the Court vacate that portion of its ruling that held that the 1987 License did not, *as a matter of law*, novate the 1982 Agreement and leave that issue for the jury.

Dated:  December 22, 2017                        Respectfully submitted,

                                                **ZUBER LAWLER & DEL DUCA LLP**
                                                MICHELE DESOER
                                                JEFFREY J. ZUBER
                                                HEMING XU

                                        By:   *s/Michele M. Desoer*
                                                Attorneys for Plaintiff and Counterclaim-Defendant Leadership Studies, Inc.

## PROOF OF SERVICE

**Leadership Studies, Inc. v. Blanchard Training Development
Case No. 15CV1831 WQH-KSC**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, CA 90017, USA.

On December 22, 2017, I served true copies of the following document(s) described as **LEADERSHIP STUDIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON MOTION FOR SUMMARY JUDGMENT [D.E. 130]**on the interested parties in this action as follows:

Steven M. Strauss
Dennis C. Crovella
John Paul Oleksiuk
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Tel: 858-550-6000
Fax: 858-550-6420
Email:  sms@cooley.com
            dcrovella@cooley.com
            jpo@cooley.com
Attorneys for Defendant and
Counterclaim-Plaintiff Blanchard
Training and Development,
Incorporated

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 22, 2017, at Los Angeles, California.

Michele M. Desoer

0811-1026 / 998385.1